IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| XIAOXING XI, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 17-2132 |
| FBI SPECIAL AGENT ANDREW HAUGEN, *et al.*, | |
| Defendants. | |

**THE UNITED STATES' MOTION TO DISMISS
PLAINTIFFS' COMMON LAW CLAIMS AGAINST IT IN
<u>PLAINTIFFS' SECOND AMENDED COMPLAINT</u>**

Under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), the United States of America moves to dismiss the common law claims brought against it by Plaintiffs Xiaoxing Xi, Qi Li, and Joyce Xi, because this Court lacks jurisdiction over those claims, and because they fail to state a claim upon which relief may be granted. The grounds for this motion are set forth in the accompanying memorandum in support of this motion. A proposed order is attached.[1]

---

[1] Xiaoxing Xi also brings constitutional tort claims against Special Agent Andrew Haugen in his personal capacity. Special Agent Haugen has filed a separate motion to dismiss addressing those claims. Additionally, the official-capacity defendants will be filing a separate brief.

Dated: January 23, 2018             Respectfully submitted,

                                                   CHAD A. READLER
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, Jr.
Acting Director, Torts Branch

RICHARD MONTAGUE
Senior Trial Counsel

  /s/  *Paul E. Werner*
PAUL E. WERNER
(MD Bar, under LCvR 83.5(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

Attorneys for the United States
and for Special Agent Haugen

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| XIAOXING XI, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 17-2132 |
| FBI SPECIAL AGENT ANDREW HAUGEN, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
THE UNITED STATES' MOTION TO DISMISS PLAINTIFFS' COMMON LAW
CLAIMS AGAINST IT IN PLAINTIFFS' SECOND AMENDED COMPLAINT**

**INTRODUCTION**

This case is about the United States' attempt to prosecute and prevent the flow of sensitive technology to foreign powers. Plaintiffs Xiaoxing Xi, Qi Li, and Joyce Xi sue the United States for the indictment and arrest of Xiaoxing Xi on suspicion of, in Plaintiffs' own words, spying for China. They bring numerous claims under common law theories, attempting to hold the United States liable for its efforts to prosecute and thereby prevent the transfer of sensitive technologies developed by United States companies to foreign powers.

This Court should dismiss their claims because it lacks subject matter jurisdiction. Federal investigators and law enforcement officers exercised their discretion in investigating Xi, deciding to bring charges against him, and ultimately deciding to drop those charges. Indeed, the Third Circuit has long held that decisions by law enforcement officers regarding how to investigate possible crimes and whether to bring charges cannot form the basis for tort suits against the United States. In any event, each of Plaintiffs' claims fails on its own merits. The Court should therefore dismiss their complaint.

## BACKGROUND[2]

Xiaoxing Xi ("Xi") is a physics professor at Temple University who is a leading expert in the field of magnesium diboride thin film superconducting technology. Doc. No. 26, Second Am. Compl. ("SAC"), ¶¶ 1, 25. Qi Li is his wife, and Joyce Xi is his older daughter. *Id.* ¶¶ 13-14. According to Plaintiffs' complaint, Xi communicated with individuals and entities in China regarding certain technologies. *Id.* ¶ 3. They allege that FBI Special Agent Andrew Haugen and other federal law enforcement officers unlawfully surveilled Xi's communications, both under § 702 of the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1881a ("FISA"), by searching law enforcement databases in which they "examined, retained, and/or used" Xi's communications, and under "FISA orders." SAC ¶¶ 60, 64-65, 128-30. Plaintiffs aver that federal investigators improperly concluded that Xi was sharing with entities in China protected information concerning a superconducting thin film technology developed by a United States company and that Xi had leased. *Id.* ¶¶ 30-31. Xi's lease agreement with the company prohibited Xi from reproducing, selling, transferring, or otherwise distributing the technology. *Id.* Effectively, according to the complaint, the government accused Xi of "being a technological spy for China." *Id.* ¶ 1. A grand jury indicted Xi on four counts of wire fraud. He was arrested by armed FBI agents at his house in the early hours of the morning, with his wife and oldest daughter present. Their house was searched pursuant to a warrant, and Xi was questioned by the FBI. *Id.* ¶¶ 24, 32-40.

After his indictment, Xi hired defense counsel, who made a presentation to the United States Attorney's Office, explaining purported errors in the indictment. *Id.* ¶ 52. According to

---

[2] For the purposes of this motion to dismiss only, the Court may assume the veracity of the well-pled factual allegations in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs, Xi's communications with individuals and entities in China did not violate Xi's lease agreement; involved different technologies, including technologies he himself invented; and were within the normal course of academic collaboration. *Id.* ¶¶ 3-4, 48-51. The United States Attorney's Office later dismissed the indictment. *Id.* ¶ 52.

Plaintiffs allege, in various forms, that Special Agent Haugen, who was working on counterintelligence with a focus on China, *id.* ¶ 69, "knowingly and/or recklessly made or caused to be made false statements and representations" in his reports to federal prosecutors, *id.* ¶ 54; "knew or recklessly disregarded the fact" that Xi did not violate his lease agreement with the United States technology company, *id.* ¶ 3; and "had no scientific or other basis to allege" that Xi's communications with entities in China were "illegal or involved the illegal transmission of protected technologies." *Id.* ¶ 56. The second amended complaint asserts that federal agents lacked probable cause to surveil Xi's communications and to indict and arrest him. *Id.* ¶¶ 59, 99, 103. Instead, Plaintiffs claim, Special Agent Haugen targeted Xi because of his Chinese ethnicity. *Id.* ¶¶ 68-70. They point to two other recent, unrelated indictments of Chinese Americans that were later dismissed as support for their contention. *Id.* Plaintiffs filed an administrative claim with the FBI, and waited six months before filing this suit. *Id.* ¶ 10.

## PROCEDURAL HISTORY

Plaintiffs first filed a complaint against the United States raising six claims under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(l), 2671-2680 (2012) (FTCA): malicious prosecution (Count VI); invasion of privacy—intrusion upon seclusion (Count VII); invasion of privacy—false light (Count VIII); intentional infliction of emotional distress (Count IX); negligent infliction of emotional distress (Count X); and negligence (Count XI). Plaintiffs sought compensatory damages and also an injunction "requiring" the United States to return or destroy

3

all information obtained from Xi's electronic communications and devices that is in its custody or control. Am. Compl. at 28. The United States moved to dismiss those claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiffs then amended their complaint, adding official-capacity defendants to the claim for injunctive relief. Plaintiffs also altered their characterization of Special Agent Haugen's state of mind during the investigation. *Compare* Doc. No. 6-1., Am. Compl., ¶¶ 3-4, 48, 50, 52 (alleging that Special Agent Haugen "knew or should have known" that Xi's actions were lawful), *with* SAC ¶¶ 3-4, 53, 55, 57 (alleging that Special Agent Haugen "knew or recklessly disregarded" that Xi's actions were lawful). Additionally, Plaintiffs altered their characterization of the basis for Special Agent Haugen's understanding of the information he gleaned during the investigation. *Compare* Doc. No. 6-1., Am. Compl., ¶ 51 (alleging that Special Agent Haugen "did not have a basic understanding of the science involved" in thin film research, and that he "failed to consult with qualified scientists"), *with* SAC ¶ 56 (alleging that Special Agent Haugen "had no scientific or other basis to allege" that Xi's communications with entities in China were illegal). The United States again moves to dismiss the six claims against it under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, a district court must first determine whether the motion brings a "facial attack" or a "factual attack" on the complaint. *See Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). If the motion is a "facial attack," which "considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court," *id.* at 358, then the court applies the same standard of review used for motions to dismiss under

Federal Rule of Civil Procedure 12(b)(6). *Id.* Namely, the court "consider[s] the allegations of the complaint and documents referenced therein . . . in the light most favorable to the plaintiff." *Id.* (citing and quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). Because the United States' motion under Rule 12(b)(1) is a "facial attack" on Plaintiffs' complaint, the 12(b)(6) standard applies here.

When applying that standard, the court ignores non-factual content, such as "labels and conclusions," or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal citation omitted). The court then assumes the truth of the well-pled factual allegations, *id.*, and determines whether those factual allegations lift the assertion of misconduct across the line from "sheer possibility" to "plausibility." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Although the "plausibility standard is not akin to a 'probability requirement,'" *id.*, an inference of misconduct may be rendered implausible when the allegations of misconduct are more likely explained by lawful behavior than by unlawful behavior. *See id.* at 679-80; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).

## ARGUMENT

This Court should dismiss Plaintiffs' claims against the United States because the discretionary-function exception to the FTCA bars those claims. Moreover, each of those claims fails on the merits.

### I.   The Discretionary-Function Exception to the FTCA Bars All of Plaintiffs' FTCA Claims.

Plaintiffs' FTCA claims are based on the conduct of a criminal investigation and the decision to indict and prosecute Xi. Under longstanding Third Circuit precedent, the

5

discretionary-function exception to the FTCA bars those claims. The United States, as a sovereign, is immune from suit unless it chooses to waive its sovereign immunity. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). Through the FTCA, the United States has waived its sovereign immunity for claims for "money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1); *see also Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008).

This waiver, however, comes with exceptions. Under 28 U.S.C. § 2680(a), the United States has not waived its immunity for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function" on the part of a federal employee. *Id.* This exception, known as the "discretionary-function exception," applies "whether or not the discretion involved be abused." *Id.*

The Supreme Court has developed a two-part test to determine whether the discretionary-function exception applies to an FTCA claim. *See United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). First, a court assesses whether a "federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Id*. at 322. Because the discretionary-function exception covers only acts that "involve an element of judgment or choice," *id.*, any such statute, regulation, or policy would preclude an employee from exercising his or her "judgment or choice." Second, where an act involves "an element of judgment or choice," a court asks whether the "judgment or choice" is "of the kind that the discretionary function exception was designed to shield." *Id. See also Mitchell v. United States*, 225 F.3d 361, 363-64 (3d Cir. 2000) (citing and quoting *Gaubert*). That refers to any discretionary government decision "based on considerations of public policy." *Gaubert*, 499 U.S. at 323. After all, "the

purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort . . . ." *Id.* (citation and internal quotations omitted). Where a government agent's actions meet the test, it must be presumed he exercised protected discretion. As the Third Circuit in *Mitchell* emphasized, the "focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute." *Id.* at 325. Rather, the focus is "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Id.*

Under Third Circuit precedent, the acts Plaintiffs complain of clearly fall within the discretionary-function exception. *See Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50 (2013); *see also Baer v. United States*, 722 F.3d 168, 174-75 (3d Cir. 2013). In *Pooler*, the plaintiffs, who were arrested and prosecuted for allegedly selling marijuana on government property, claimed that the investigating officer relied on a single unreliable witness and failed to corroborate or substantiate that witness's information, thus basing the arrest and prosecution "on the unsubstantiated word of an unreliable informant." *Pooler*, 787 F.2d at 869. In applying the discretionary-function exception to their claims, the court explained that both the decision of how to investigate and whether, when, and against whom to initiate a prosecution were discretionary judgments. *See id.* at 871 ("Decision making as to investigation and enforcement . . . are discretionary judgments." (quoting *Bernitsky v. United States*, 620 F.2d 948, 955 (3d Cir. 1980))); *id.* ("Prosecutorial decisions as to whether, when and against whom to initiate prosecution are quintessential examples of governmental discretion in enforcing the criminal law . . . ." (quoting *Gray v. Bell*, 712 F.2d 490, 513 (D.C. Cir. 1983))).

*Pooler* is directly on point. Similar to the plaintiffs in *Pooler*, Plaintiffs complain that the investigating officer lacked the information needed to understand properly the evidence that he had collected. Indeed, Plaintiffs' earlier complaint alleged that Special Agent Haugen lacked "a basic understanding of the science" involved in Xi's projects, and "failed to consult with qualified scientists," Am. Compl. ¶ 51, suggesting that Special Agent Haugen did not speak with the *right* scientists, and negligently failed to conduct *enough* research to understand properly the sophisticated technology at hand. Although the second amended complaint is now the operative complaint, a mere alteration of what in any event are "labels and conclusions" regarding Special Agent Haugen's state of mind and efforts during his investigation cannot obfuscate the underlying nature of Plaintiffs' factual claims against Special Agent Haugen, which are that he simply misunderstood and misinterpreted complex facts. In other words, at bottom, Plaintiffs' claim is for negligence in the investigation, similar to the claim of the plaintiff in *Pooler*. Moreover, Plaintiffs have brought a negligence claim. *See* SAC at p.31.

Furthermore, they complain about the decision to indict Xi. *See, e.g.*, *id.* ¶¶ 87, 106. In other words, like the plaintiff in *Pooler*, they complain about *how* the investigation was conducted, and about the *decision* to indict. Just as the discretionary-function exception applied to the claims in *Pooler*, so too does it apply to Plaintiffs' claims. Accordingly, this Court should dismiss Plaintiffs' FTCA claims for lack of subject matter jurisdiction.

Indeed, the crux of Plaintiffs' complaint regarding the investigation is that Special Agent Haugen "should have known," Am. Compl. ¶¶ 3, 4, 50, 52, that the evidence did not indicate criminal conduct—that is, they complain that Special Agent Haugen should have performed a more thorough investigation. Again, as discussed above, Plaintiffs' replacement through amendment of the conclusory term "should have known" with the equally conclusory term

8

"recklessly disregarded," does not alter the thrust of their claims, which is that Special Agent Haugen's investigation was not conducted thoroughly. *Compare* Doc. No. 6-1., Am. Compl., ¶¶ 3-4, 48, 50, 52 (alleging that Special Agent Haugen "knew or should have known" that Xi's actions were lawful), *with* SAC ¶¶ 3-4, 53, 55, 57 (alleging that Special Agent Haugen "knew or recklessly disregarded" that Xi's actions were lawful). But Special Agent Haugen's decisions regarding which scientists to consult and where to obtain additional sources of information are precisely the sorts of discretionary decisions that, under Third Circuit precedent, the discretionary-function exception covers. As the court stated in *Pooler*: "when the sole complaint is addressed . . . to the quality of the investigation as judged by its outcome, the discretionary function should, and we hold, does apply." 787 F.2d at 871. Accordingly, Plaintiffs' claims against the United States must be dismissed.

## II. Plaintiffs' Common Law Claims Each Fall on the Merits.

Even if the discretionary-function exception did not remove this Court's jurisdiction over Plaintiffs' FTCA claims against the United States, each of those claims would fail on the merits. The United States had probable cause to indict Xi, which disposes of his malicious prosecution and negligence claims. FBI agents had legal authority to enter and search Plaintiffs' residence and effects, which resolves their invasion of privacy claim. Plaintiffs' false light claim is effectively a defamation claim, which the FTCA bars. And none of the alleged actions of the United States constitute the intentional or negligent infliction of emotional distress.

### A. The grand jury indictment demonstrates probable cause.

In assessing claims brought under the FTCA, courts look to the law of the state where the alleged act or omission occurred. *See* 28 U.S.C. § 1346(b)(1); *Lomando v. United States*, 667

9

F.3d 363, 372-73 (3d Cir. 2011). Because all the alleged acts or omissions here occurred in Pennsylvania, Pennsylvania state law governs Plaintiffs' FTCA claims.

Under Pennsylvania law, to succeed on his malicious prosecution claim, Xi must show an absence of probable cause to indict him. *See, e.g.*, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000) (listing among the four elements of common-law tort of malicious prosecution that "the proceeding was initiated without probable cause"). If the indictment of Xi was proper—which it was—then his negligence claim logically fails as well. The grand jury indictment of Xi created a presumption of probable cause, which Xi has failed to rebut.

A grand jury indictment "constitutes prima facie evidence of probable cause to prosecute." *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989). The only way to rebut the presumption of probable cause resulting from an indictment is to produce evidence that the indictment was "procured by fraud, perjury or other corrupt means." *Id.* (citations omitted).

Xi alleges no facts that if proven would meet that standard. Instead, Xi offers conclusory allegations that are precisely the sort that this Court must ignore under *Iqbal*. Indeed, Xi's assertion that Special Agent Haugen "intentionally, knowingly, and recklessly provided federal prosecutors with false scientific opinions and conclusions" regarding Xi's interactions with individuals and entities in China is simply a rephrasing of the standard announced in *Rose*. In other words, it is a "formulaic recitation" of the legal standard to rebut the presumption of probable cause that the grand jury indictment created.

That the United States may have been incorrect in its understanding of the evidence it collected regarding Xi's interactions with entities in China does not rebut the presumption created by the grand jury's indictment. Although "the probable-cause standard is incapable of precise definition," all understandings of the standard "require a belief of guilt that is reasonable,

10

as opposed to certain." *Wright v. City of Phila.*, 409 F.3d 595, 601-02 (3d Cir. 2005) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)). That understanding applies to malicious-prosecution claims in Pennsylvania, for which "[p]robable cause has been defined as a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense." *Miller v. Pa. R. Co.*, 89 A.2d 809, 811-12 (1952). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." *Wright*, 409 F.3d at 602 (quoting *Adams v. Williams*, 407 U.S. 143, 149 (1972)). Moreover, probable cause should be "viewed from the standpoint of an objectively reasonable police officer," *Ornelas v. United States*, 517 U.S. 690, 696 (1996), and such officers may draw "reasonable inferences" in determining whether there is probable cause that an individual committed a crime. *See United States v. Burton*, 288 F.3d 91, 99 (3d Cir. 2002).

Under this flexible reasonableness standard, allegations that United States officials "recklessly disregarded," SAC ¶¶ 3, 4, 53, 55, that certain pieces of evidence did not support inferences of criminal activity at most suggests a deficient investigation. But, as explained in the previous section, allegations of a deficient criminal investigation are precisely the sorts of allegations that the discretionary-function exception covers.

In sum, the grand jury indictment creates a presumption of probable cause. Plaintiffs' conclusory allegations do not rebut that presumption. To the extent Plaintiffs argue that the United States got the facts and science wrong, such an argument sounds more in negligence. And the discretionary-function exception clearly bars a claim for deficient investigation under Third Circuit precedent. Accordingly, this Court should dismiss Plaintiffs' malicious prosecution and negligence claims.

### B. Plaintiffs' intrusion upon seclusion claim, Count VII, fails because the United States had legal authority for the purported intrusions.

This Court must dismiss Plaintiffs' claim against the United States for intrusion upon seclusion because any such alleged intrusions occurred under apparent legal authority. Pennsylvania courts have cited the Second Restatement of Torts in defining the elements of intrusion upon seclusion. *See O'Donnell v. United States*, 891 F.2d 1079, 1082 & n.1 (3d Cir. 1989). Section 652B of the Restatement provides: "One who intentionally intrudes . . . upon the solitude or seclusion of another . . . is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652B. The Third Circuit has interpreted the "intentional intrusion" element of the tort to require that the perpetrator "believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *O'Donnell*, 891 F.2d at 1083. Accordingly, in *O'Donnell*, in which a Veterans Administration employee sent the plaintiff's psychiatric treatment summary to the plaintiff's supervisor, the Third Circuit applied Pennsylvania law to dismiss an FTCA claim for intrusion upon seclusion because the employee believed he had legal permission to send the summary. *Id.*

Under *O'Donnell* and Pennsylvania law, Plaintiffs' intrusion upon seclusion claim must fail. Based on Plaintiffs' allegations, Special Agent Haugen and any other federal law enforcement officers involved in alleged searches of Plaintiffs' residence and communications had legal authority, and certainly believed they had such authority, when they entered and searched Plaintiffs' house, and when they allegedly reviewed Plaintiffs' private communications. As Plaintiffs themselves allege, the federal law enforcement agents were acting under the legal authority of FISA, "FISA orders," and search warrants. *See* SAC ¶¶ 17, 60, 65. It follows that this Court must dismiss Plaintiffs' claim for intrusion upon seclusion.

**C. This Court lacks jurisdiction over Plaintiff Xi's false light claim, Count VIII.**

Plaintiffs' claim for invasion of privacy—false light, which is based on Xi being "falsely portrayed as a spy in national and international media," SAC ¶ 111, is effectively the same as a claim for libel, slander, or misrepresentation, none of which is actionable under the FTCA. *See* 28 U.S.C. § 2680(h) (stating that the United States has not waived sovereign immunity for claims arising out of "libel, slander, [or] misrepresentation"); *Cadman v. United States*, 541 F. App'x 911, 913-14 (11th Cir. 2013) (noting that the Eleventh Circuit, along with the Fifth, Ninth, and D.C. Circuits, have all held that "claims for false light/invasion of privacy are barred by the libel and slander exception in § 2680(h)"). Accordingly, this Court must dismiss that claim.

**D. Plaintiffs have failed to allege facts stating a claim for infliction of emotional distress.**

Plaintiffs' claims for intentional and negligent infliction of emotional distress both must be dismissed because their complaint does not allege facts that support those claims. Indeed, Pennsylvania law recognizes the tort of intentional infliction of emotional distress in "narrowly defined circumstances" in which a person "intentionally or recklessly causes . . . distress to another" through the use of "extreme and outrageous conduct" that itself goes "beyond all possible bounds of decency" and is "utterly intolerable in a civilized society." *Pellegrino v. U.S. Trans. Sec. Admin.*, 855 F. Supp. 2d 343, 359 (E.D. Pa. 2012) (quoting *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 397 (E.D. Pa. 2011)). Nothing alleged in Plaintiffs' complaint comes remotely close to meeting that standard. *See Pellegrino*, 855 F. Supp. 2d at 359 (dismissing intentional infliction of emotional distress claim where TSA agents allegedly mishandled and purposely damaged plaintiff's belongings because she requested a private screening, and then fabricated an assault charge against her, leading to her arrest and eighteen-hour detention, because she threatened to report them for their treatment towards her).

Accordingly, this Court should dismiss Plaintiffs' intentional infliction of emotional distress claim.

Similarly, this Court must dismiss the negligent infliction of emotional distress claim because Plaintiffs fail to allege any physical impact underlying the purported tort, a necessary element to state a claim. Under Pennsylvania law, the tort of negligent infliction of emotional distress has been "limited by court decisions." *Doe v. Phila. Cmty. Health Alts. AIDS Task Force*, 745 A.2d 25, 27 (Pa. Super. Ct. 2000); *see also Marchese v. Umstead*, 110 F. Supp. 2d 361, 369 (E.D. Pa. 2000) (noting that the tort had been recognized only under "narrow circumstances"). To prevail, a plaintiff must plead and prove: "(1) that the Defendant had a contractual or fiduciary duty toward him; (2) that Plaintiff suffered a physical impact; (3) that Plaintiff was in a 'zone of danger' and at risk of an immediate physical injury; or (4) that Plaintiff had a contemporaneous perception of tortious injury to a close relative." *Phila. Cmty. Health Alts.*, 745 A.2d at 27 (citations omitted). Moreover, a plaintiff pleading negligent infliction of emotional distress "must suffer *immediate* and *substantial* physical harm." *Id.* at 28.

Plaintiffs have not adequately pled any of these elements. First, neither Special Agent Haugen nor any of the other federal law enforcement agents who interacted with Plaintiffs had any contractual or fiduciary duty towards them. Plaintiffs do not allege otherwise. Second, Plaintiffs do not allege that any physical impact occurred, and the fact of Xi's arrest by FBI agents does not constitute such an impact. *See Alicea v. Schwiezer*, No. 14-cv-213, 2015 WL 4770680, at *7, 16-17 (E.D. Pa. Aug. 12, 2015) (dismissing negligent infliction of emotional distress claim where plaintiffs allegedly had "close personal relationship" with arrested plaintiff in part because they did not plead any physical impact).

14

Third, Plaintiffs do not plead that they were in a "zone of danger" and at risk of immediate physical injury. As with the physical impact element, the fact of the entry of armed federal law enforcement officers into their house, even with actions highlighting the presence of firearms, does not satisfy that element. *See Periera v. Lizzio*, No. 3:09-cv-1024, 2012 WL 1205750, at *1, 5 (M.D. Pa. Apr. 11, 2012) (dismissing negligent infliction of emotional distress claim where law enforcement officer, after forcing plaintiff to break into his own house, placed his left hand on plaintiff's chest, his right hand on top of his firearm, and said "don't move"). Lastly, Plaintiffs fail to plead that they observed a tortious injury to a close relative. As already discussed above, the arrest of Xi by armed agents does not constitute the sort of tortious injury contemplated in the "narrow circumstances" under which Pennsylvania courts have recognized claims for negligent infliction of emotional distress. In sum, Plaintiffs have not adequately pled any of the elements necessary to establish a claim for infliction of emotional distress, intentional or otherwise. This Court should dismiss those claims.

## **CONCLUSION**

The Third Circuit has clearly held that the manner of investigation and the decision to prosecute cannot form the basis for an FTCA claim against the United States. Moreover, each of Plaintiffs' claims fails on its own merits because the United States had probable cause to indict Xi, it did not invade his privacy, and it did not intentionally or negligently inflict emotional distress on Plaintiffs in a manner cognizable under Pennsylvania law. For these reasons and those discussed above, this Court should dismiss Plaintiffs' complaint against the United States.

Dated: January 23, 2018					Respectfully submitted,

											CHAD A. READLER
											Acting Assistant Attorney General
											Civil Division

											C. SALVATORE D'ALESSIO, Jr.
											Acting Director, Torts Branch

											RICHARD MONTAGUE
											Senior Trial Counsel

											  /s/  *Paul E. Werner*
											PAUL E. WERNER
											(MD Bar, under LCvR 83.5(e))
											Trial Attorney
											United States Department of Justice
											Torts Branch, Civil Division
											P.O. Box 7146
											Washington, D.C. 20044
											(202) 616-4152 (phone)
											(202) 616-4314 (fax)
											E-mail: Paul.Werner@usdoj.gov

											Attorneys for the United States
											and for Special Agent Haugen