**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

|  |  |  |
|---|---|---|
| **XIAOXING XI**, *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 17-cv-2132** |
| | : | |
| **FBI SPECIAL AGENT ANDREW HAUGEN,** | : | **JURY TRIAL DEMANDED** |
| *et al.*, | : | |
| | : | |
| | : | |
| **Defendants.** | : | |

_____

## <u>ORDER</u>

**AND NOW** this _____ day of _____, 2018, upon

consideration of Defendant Special Agent Andrew Haugen's Motion To Dismiss Plaintiff's

Constitutional Claims Against Him In Plaintiff's Second Amended Complaint (ECF 35), the

United States' Motion to Dismiss Plaintiff's Common Law Claims Against It In Plaintiff's

Second Amended Complaint (ECF 34), and plaintiffs' consolidated response to both motions, **IT**

**IS ORDERED** that the motions are **DENIED**.

**BY THE COURT:**


_____
**R. BARCLAY SURRICK, J.**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

XIAOXING XI, *et al.*,

                      **Plaintiffs,**

             **v.**

FBI SPECIAL AGENT ANDREW HAUGEN, *et al.*,

                      **Defendants.**

———————————————————————

:
:
:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION**

**No. 17-cv-2132**

**JURY TRIAL DEMANDED**

## PLAINTIFFS' CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS HAUGEN'S AND UNITED STATES' MOTIONS TO DISMISS COMPLAINT

David Rudovsky
Jonathan H. Feinberg
Susan M. Lin
KAIRYS, RUDOVSKY, MESSING,
  FEINBERG & LIN LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
215-925-4400
215-925-5365 (fax)

Patrick Toomey
Ashley Gorski
Jonathan Hafetz
AMERICAN CIVIL LIBERTIES UNION
  FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
212-549-2500
212-549-2654 (fax)

*Counsel for Plaintiffs*

April 9, 2018

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     FACTS ........................................................................................................... 3

    A.      The Indictment ................................................................................... 3

    B.      The Falsehoods Underlying The Charges Against Professor Xi ........... 5

    C.      Professor Xi's Prosecution And His Family's Harms And Losses......... 7

    D.      The Dismissal Of The Indictment And Similar Prosecutions Against Chinese
        Scientists ........................................................................................... 9

III.    STANDARD OF REVIEW ............................................................................ 9

IV.     THE *BIVENS* CLAIMS AGAINST DEFENDANT HAUGEN ....................... 10

    A.      Professor Xi May Pursue His *Bivens* Claims....................................... 10

        1.      Professor Xi's core *Bivens* claims remain intact....................... 11

        2.      This case does not extend *Bivens* to a "new context."............... 13

        3.      No special factors bar a *Bivens* remedy in this case. ................. 17

            a.      "National security" is not a special factor here............. 18

            b.      "Foreign affairs" is not a special factor here. ............... 21

            c.      Professor Xi's *Bivens* claims do not implicate classified
                information................................................................... 22

            d.      Professor Xi does not challenge a "government program.".......... 25

    B.      Defendant Haugen Is Not Entitled To Qualified Immunity................... 27

        1.      Professor Xi has alleged violations of his constitutional rights............... 27

            a.      Malicious prosecution.................................................. 28

            b.      Fabrication of evidence................................................ 33

            c.      Unconstitutional searches and seizures......................... 34

d.      Equal protection violation............................................................... 35

2.      The constitutional rights were clearly established. .................................... 37

V.     THE FTCA CLAIMS AGAINST DEFENDANT UNITED STATES ........................... 39

A.     The Discretionary Function Exception Does Not Apply ....................................... 39

B.     Plaintiffs Establish Their Common Law Tort Claims. ......................................... 41

1.      The indictment was procured through intentional, knowing, and reckless communication of materially false information to the prosecutor and the grand jury. ................................................................42

2.      Invalid warrants or court orders cannot justify an unlawful search.......... 44

3.      A Pennsylvania false light claim is actionable under the FTCA. ............. 45

4.      Professor Xi sufficiently alleges "extreme and outrageous" conduct....... 46

5.      Plaintiffs Qi Li and Joyce Xi sufficiently state a claim for negligent infliction of emotional distress................................................................. 49

VI.    CONCLUSION.......................................................................................... 51

## **TABLE OF AUTHORITIES**

**Cases**

*Al-Dahir v. United States*, No. 08-cv-4502, 2010 WL 3922177 (E.D. La. Sept. 30, 2010) ......... 44

*Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011) ..................................................................... 21, 22

*Andrews v. Scuilli*, 853 F.3d 690 (3d Cir. 2017) ..................................................................... 34, 38

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) .............................................................................. 21

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ..................................................................................... 19

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) .......................................................................... 9, 10, 36

*Bamont v. Pennsylvania Society for the Prevention of Cruelty to Animals*,
    163 F. Supp. 3d 138 (E.D. Pa. 2016) ...................................................................................... 44

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 10

*Betker v. Gomez*, 692 F.3d 854 (7th Cir. 2012) ........................................................................... 34

*Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2012) ............................................................................. 12

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*,
    403 U.S. 388 (1971) ................................................................................... 1, 10, 11, 16

*Black v. Montgomery Cnty.*, 835 F.3d 358 (3d Cir. 2016) ..................................................... 29, 33

*Boone v. City of Chicago*, No. 16-cv-11510, 2018 WL 1014509 (N.D. Ill. Feb. 22, 2018) ......... 44

*Bunch v. United States*, 880 F.3d 938 (7th Cir. 2018) ............................................................ 40, 41

*Butz v. Economou*, 438 U.S. 478 (1978) ..................................................................................... 19

*Carlson v. Green*, 446 U.S. 14 (1980) ........................................................................................ 18

*Castro v. United States*, 34 F.3d 106 (2d Cir. 1994) ................................................................... 41

*Chism v. Washington State*, 661 F.3d 380 (9th Cir. 2011) ........................................................... 34

*Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) ..................................................... 31

*Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) ..................................................... 13

*Crivellaro v. Pennsylvania Power & Light Co.*, 491 A.2d 207 (Pa. Super. 1985) ...................... 50

*Davis v. Passman*, 442 U.S. 228 (1979) .................................................. 11

*Dempsey v. Bucknell Univ.*, No. 4:11-CV-1679, 2012 WL 1569826 (M.D. Pa. May 3, 2012) ... 48

*Doe v. Philadelphia Community Health Alternatives AIDS Task Force*,
  745 A.2d 25 (Pa. Super. 2000)......................................................................... 49

*Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017)........................................... 28

*FDIC v. Meyer*, 510 U.S. 471 (1994) ....................................................... 12

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)...................................... 10, 32

*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016) ........................... 34

*George v. Rehiel*, No. 10-cv-586, 2011 WL 10621600 (E.D. Pa. Oct. 28, 2011) ...................... 46

*Gilbert v. Feld*, 788 F. Supp. 854 (E.D. Pa. 1992) .......................................... 48

*Graboff v. Colleran Firm*, 744 F.3d 128 (3d Cir. 2014)...................................... 45

*Halsey v. Pfeiffer*, 750 F.3d 273 (3d Cir. 2014)..................................... 29, 33

*Hernandez-Cuevas v. Taylor*, 723 F.3d 91 (1st Cir. 2013)........................................ 34

*Hernandez-Cuevas v. Taylor*, 836 F.3d 116 (1st Cir. 2016)........................................ 12

*Hope v. Pelzer*, 536 U.S. 730 (2002) ..................................................... 39

*Humbert v. Mayor and City Council of Baltimore City,* 866 F.3d 546 (4th Cir. 2017)............... 35

*Hunger v. Grand Cent. Sanitation*, 670 A.2d 173 (Pa. Super. 1996) ........................... 47

*Keahey v. Bethel Township*, 2012 WL 478936 (E.D. Pa. Feb. 15, 2012).................................... 10

*Kedra v. Schroeter*, 876 F.3d 424 (3d Cir. 2017) ........................................ 10

*King v. Harwood*, 852 F.3d 568 (6th Cir. 2017)........................................... 29

*Kovalev v. City of Philadelphia*, No. CV 16-6380, 2017 WL 770945
  (E.D. Pa. Feb. 28, 2017)................................................................................ 48

*Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181 (Pa. Super. 1988) (en banc) ...................... 45

*Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012) ....................................................... 25

*Leveto v. Lapina*, 258 F.3d 156 (3d Cir. 2001)............................................................... 12

*Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004) ............................................................. 12

*Limone v. United States*, 579 F.3d 79 (1st Cir. 2009)..................................................... 40

*Loumiet v. United States*, 828 F.3d 935 (D.C. Cir. 2016).............................................. 40

*Loumiet v. United States*, No. 12-1130 (CKK), 2017 WL 5900533 (D.D.C. Nov. 28, 2017)...... 14

*Love v. Cramer*, 606 A.2d 1175 (Pa. Super. 1992)......................................................... 50

*Manning v. Miller*, 355 F.3d 1028 (7th Cir. 2004) ......................................................... 12

*Martin v. Finley*, No. 3:15-CV-1620, 2017 WL 626752 (M.D. Pa. Feb. 15, 2017).................... 47

*McClean v. Gutierrez*, No. 15-275 (RGK), 2017 WL 6887309 (C.D. Cal. Sept. 28, 2017) ........ 16

*McClellan v. Smith*, 439 F.3d 137 (2d Cir. 2006).......................................................... 42

*Meeks v. Larsen*, 611 Fed. Appx. 277 (6th Cir. 2015)................................................... 12

*Millbrook v. United States*, 569 U.S. 50 (2013).............................................................. 40

*Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017)............................................................. 29

*Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017).......................................................... 28, 33

*Minneci v. Pollard*, 565 U.S. 118 (2012)....................................................................... 12

*Minscalco v. Gordon*, 916 F. Supp. 478 (E.D. Pa. 1996) ............................................... 48

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ...................................................................... 19

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015) .......................................................... 29, 38

*Mueller v. Gallina*, 311 F. Supp. 2d 606 (E.D. Mich. 2004) .......................................... 12

*National Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192 (D.C. Cir. 2001) .......... 24

*Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009) .............................................. 40

*Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000)..................................................... 40

*O'Donnell v. United States*, 891 F.2d 1079 (3d Cir. 1989) ............................................................ 45

*Olson v. Champaign Cnty.*, 784 F.3d 1093 (7th Cir. 2015) ........................................................ 32

*Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343 (E.D. Pa. 2012) .......................... 48

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ............................................... 10, 32

*Pitts v. State of Delaware*, 646 F.3d 151 (3d Cir. 2011) .......................................................... 36

*Ponzini v. Monroe Cnty.*, 897 F. Supp. 2d 282 (M.D. Pa. 2012) ............................................ 47

*Pooler v. United States*, 787 F.2d 868 (3d Cir. 1986) ................................................................ 40

*Rentas v. Ruffin*, 816 F.3d 214 (2d Cir. 2016) ......................................................................... 42

*Reynolds v. United States*, 549 F.3d 1108 (7th Cir. 2008) ....................................................... 40

*Rose v. Bartle*, 871 F.3d 331 (3d Cir. 1989) ............................................................................ 42

*Ruddy v. United States*, No. 3:11-cv-1100, 2011 WL 5834953 (M.D. Pa. Nov. 21, 2011) ........ 46

*Sanchez-Espinoza v. Reagan*, 770 F.2d 202 (D.C. Cir. 1985) .................................................. 22

*Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011) .................................................................... 39

*Schuchardt v. President of the United States*, 839 F.3d 336 (3d Cir. 2016) .............................. 31

*Scutella v. Cousins*, No. 1:15-CV-00253-BR-SPB, 2016 WL 5402718
    (W.D. Pa. Sept. 28, 2016) ................................................................................................ 47

*Sheare v. Borough of Olyphant*, No. 3:11–CV–1639, 2012 WL 2527022
    (M.D. Pa. June 29, 2012) ................................................................................................. 48

*Shipkowski v. U.S. Steel Corp.*, 585 F. Supp. 66 (E.D. Pa. 1983) ........................................... 47

*Sterling v. Borough of Minersville*, 232 F.3d 190 (3d Cir. 2000) ............................................. 39

*Sutton v. United States*, 819 F.2d 1289 (5th Cir. 1987) ........................................................... 40

*Thunder Island Amusements, Inc. v. Ewald*, 650 F. Supp. 2d 195 (N.D.N.Y. 2009) ................. 12

*Tomikel v. Com., Dept. of Transp.*, 658 A.2d 861 (Pa. Commw. 1995) .................................... 50

*Tun-Cos v. Perrotte*, No. 1:17-cv-0943-AJT-TCB, ECF 50 (E.D. Va. April 5, 2018) ............... 14

*Turkmen v. Hasty*, 789 F.3d 218 (2d Cir. 2015) ........................................................ 14

*United States v. Armstrong*, 517 U.S. 456 (1996) .................................................... 36

*United States v. Centeno,* 793 F.3d 378 (3d Cir. 2015) ............................................ 33

*United States v. Gaubert*, 499 U.S. 315 (1991) ...................................................... 39

*United States v. Washington*, 809 F.3d 193 (3d Cir. 2017) ..................................... 37

*Unus v. Kane*, 565 F.3d 103 (4th Cir. 2009) ........................................................... 12

*Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017) ........................... 16, 19, 20, 21

*Webster v. Doe*, 486 U.S. 592 (1988) ...................................................................... 24

*White v. Brommer*, 747 F. Supp. 2d 447 (E.D. Pa. 2010) ......................................... 10

*Wilkie v. Robbins*, 551 U.S. 537 (2007) .................................................................. 17

*Williams v. Guzzardi*, 875 F.2d 46 (3d Cir. 1994) .................................................. 49

*Wilson v. Libby*, 535 F.3d 697 (D.C. Cir. 2008) ...................................................... 25

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) ........................................................ 35

*Yopp v. U.S. Dep't of Justice Drug Enforcement Admin.*, No. 10-10118,
    2010 WL 3272845 (E.D. Mich. Aug. 19, 2010) ................................................ 12

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ........................................................ passim

**Statutes and Rules**

28 U.S.C. § 2679(b)(2)(A ......................................................................................... 20

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 10

Fed. R. Civ. P. 12(b)(6) .............................................................................................. 9

**Other Authorities**

James F. Pfander & David Baltmanis, *Rethinking Bivens: Legitimacy and Constitutional Adjudication*, 98 Geo. L.J. 117 (2009)..........................................................................................20

Restatement (First) of Torts § 568 (1938), cmt. (b).......................................................45

Restatement (Second) of Torts § 46, cmt. d..................................................................47

Restatement (Second) of Torts § 581A (1977)..............................................................45

## I.     INTRODUCTION

In May 2015, plaintiff Xiaoxing Xi ("Professor Xi"), a professor of physics at Temple University and a naturalized United States citizen, was indicted and arrested for allegedly sharing with entities in China information concerning a "pocket heater" belonging to a United States Company.  In essence, he was accused of being a technological spy for China.  The charges, however, were false, malicious, and entirely fabricated.  Professor Xi did not share with Chinese entities any information about the pocket heater as alleged in the Indictment.  That allegation resulted directly from the actions of the lead case agent, defendant FBI Special Agent Andrew Haugen, who intentionally, knowingly, and recklessly made false statements and representations and material omissions of facts in his reports, affidavits, and other communications with federal prosecutors, thereby initiating a malicious prosecution of Professor Xi.  The basis of the prosecution of Professor Xi was false and collapsed by its own wrongful weight, with the Indictment against Professor Xi being dismissed on the government's motion on September 18, 2015.

This action is brought against defendant Haugen (and other as-yet-unknown individuals) under the United States Constitution pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for the defendants' malicious prosecution of and fabrication of evidence regarding Professor Xi in violation of the Fourth and Fifth Amendments; unlawful search and seizure of Professor Xi's home, private papers, information, communications, and belongings in violation of the Fourth Amendment; and racial and ethnic profiling in violation of Professor Xi's Equal Protection and Due Process rights.  This action is also brought against the United States under the Federal Tort Claims Act ("FTCA") for the torts of malicious prosecution, invasion of privacy, negligent and intentional infliction of emotional

distress, and negligence committed by federal employees causing harm to Professor Xi, and plaintiff Qi Li (Professor Xi's wife), and plaintiff Joyce Xi (Professor Xi's daughter).

Defendant Haugen moves to dismiss Counts One through Three of the Second Amended Complaint (ECF 26) ("SAC"), arguing that Professor Xi's claims fall outside the scope of *Bivens* and that, even if the claims were cognizable under *Bivens*, Haugen is entitled to qualified immunity. Defendant United States moves to dismiss Counts Four through Nine of the SAC, arguing that the discretionary-function exception to the FTCA bars all of plaintiffs' common law tort claims and that, even if the discretionary-function defense does not apply, plaintiffs fail to sufficiently plead facts supporting their tort claims. Plaintiffs file this consolidated response to defendants Haugen's and United States' motions to dismiss.

As demonstrated below, defendants' arguments fail to recognize that, at its core, this case revolves around the wrongdoing of a specific FBI agent, defendant Haugen, who deliberately and recklessly provided or caused to be provided materially false information to the prosecutor, the grand jury, and the Court, thereby causing the malicious and wrongful prosecution of Professor Xi and all the harms that flowed from that prosecution. Defendant Haugen's actions constituted classic violations of Professor Xi's clearly established constitutional rights and are actionable under *Bivens*. Additionally, defendant United States is liable under the FTCA due to the actions of its employee, defendant Haugen, who does not have the discretion to act in an unconstitutional manner and whose unconstitutional conduct constituted state law torts against the plaintiffs. For the reasons set forth below, the defendants' motions should be denied and plaintiffs should be permitted to pursue their claims through discovery.

## II.    FACTS

Plaintiffs include Professor Xi, an internationally recognized expert in the field of

magnesium diboride thin film superconducting technology who is widely respected by his

academic colleagues and graduate students, SAC ¶¶ 25, 92-94; his wife, plaintiff Qi Li, also a

professor of physics, *id.* ¶ 13; and his daughter, plaintiff Joyce Xi, a 2016 graduate of Yale

University, *id.* ¶ 14.[1]  Plaintiffs live in Penn Valley, Pennsylvania with Professor Xi and Qi Li's

younger daughter (who is not a plaintiff).  *Id.* ¶ 34.  The facts related to their claims as outlined

in the Second Amended Complaint are as outlined below.

### A.    The Indictment

The Indictment charging Professor Xi with four counts of wire fraud was issued in the

Eastern District of Pennsylvania on May 14, 2015.  *Id.* ¶ 24.  The Indictment accused Professor

Xi of serving as, in essence, a "technological spy" for China; it alleged that he shared via emails

to entities in China information about a "pocket heater" belonging to an American company,

Superconductor Technologies, Inc. ("STI"), in violation of a non-disclosure agreement.  *Id.* ¶¶ 1,

26, 29.  The charges, however, were entirely false, malicious, and fabricated, and resulted

directly from the actions of the lead case agent, defendant FBI Special Agent Andrew Haugen,

who intentionally, knowingly, and recklessly made false statements and representations in

communications with prosecutors.  *Id.* ¶¶ 2, 26.

The STI pocket heater described in the Indictment was a device used for depositing

magnesium diboride thin films on flat surfaces.  *Id.* ¶ 27.  In 2006, Professor Xi signed an

---

[1]    A superconductor is a material that conducts electricity without electrical resistance when
it is cooled below a certain temperature.  Professor Xi's areas of academic and technical
expertise include the development of superconducting thin films and coatings using the chemical
compound magnesium diboride.

Agreement with STI to lease the STI pocket heater for use in his university laboratory for a period of 12 months; in the lease, he agreed not to reproduce, sell, transfer, or otherwise distribute the STI pocket heater.  *Id.* ¶¶ 29, 47.  Professor Xi complied in all respects with the Agreement.  *Id.* ¶ 47.

The Indictment, however, alleged—based on defendant Haugen's false and misleading statements—that Professor Xi violated the agreement by sharing information about the STI pocket heater with entities in China in an effort to defraud STI and enrich himself.  *Id.* ¶¶ 30-31, 42.  The allegations in the Indictment were false in every respect.  For example, the Indictment characterized the STI pocket heater as a device that "revolutionized" the field of superconducting magnesium diboride thin film growth.  *Id.* ¶¶ 28, 44.  But far from "revolutionary," the STI pocket heater was a simple modification of a technology that had been in existence since the 1990s, and information about STI's version of the heater was publicly available following a presentation at an international conference in 2003.  *Id.* ¶¶ 43-45.  Accordingly, nothing about the STI pocket heater leased to Professor Xi was considered a trade secret or protected in any fashion.  *Id.* ¶ 46.

Further, each of the four counts asserted in the Indictment charged Professor Xi with sending emails to entities in China with information about the STI pocket heater.  *Id.* ¶ 31.  But, critically, *none* of the referenced emails did so, and, in fact, Professor Xi *never* sent information about the STI pocket heater to anyone in China.  *Id.* ¶ 42.  Count One of the Indictment was based on a 2010 communication in which Professor Xi sent a message "confirming that certain technology had been delivered to a laboratory in China, and offering his personal assistance therewith."  *Id.* ¶ 49(a).  Contrary to the allegations in the Indictment, that email did not reference the STI pocket heater; instead it concerned a tubular heating device employing a

4

process which Professor Xi and his colleagues had invented and publicized in 2002 and which was entirely different from, and superior to, the process used in the STI pocket heater.  *Id.* ¶¶ 49(b)-(d).  It was, therefore, false to assert that the email referenced in Count One had anything to do with the STI pocket heater.  *Id.* ¶¶ 49(a), (f).

Counts Two through Four of the Indictment were similarly based on falsehoods.  Each of the three counts asserted that Professor Xi sent emails "offering to build a world-class thin film laboratory in China," and claimed that Professor Xi was using information he allegedly obtained from the STI pocket heater for this purpose.  *Id.* ¶ 50(a).  But none of the emails had anything to do with the STI pocket heater. Instead, they concerned the creation of a lab for basic research on oxide thin films.  *Id.* ¶ 50(b).  Oxide thin films, created with oxygen, are materially different from magnesium diboride films like those developed in the STI pocket heater, which are created with magnesium and boron.  *Id.* ¶¶ 50(d)-(e).  In addition to different composition, oxide thin films have many properties and uses other than superconductivity, and a device like the STI pocket theater would have no purpose in an oxide film research laboratory.  *Id.* ¶¶ 50(f)-(g).  As with Count One of the Indictment, it was, therefore, false to assert that the emails referenced in Counts Two through Four had anything to do with the STI pocket heater.  *Id.*

### B.     The Falsehoods Underlying The Charges Against Professor Xi

The false allegations made in the Indictment were a direct result of defendant Haugen's actions in intentionally, knowingly, and/or recklessly making false statements and representations and material omissions of facts in his reports, affidavits, and other communications with prosecutors and in his testimony before the grand jury.  *Id.* ¶ 54.  These falsehoods were present throughout the investigation, including the following:

- The false assertion that Professor Xi built a version of the STI pocket heater for an entity in China, notwithstanding defendant Haugen having learned during his investigation from the inventor of that device that the materials Professor Xi sent were "entirely different" and "not related to the STI pocket heater," but, rather, based on a process that Professor Xi had invented, *id.* ¶ 55(a);

- The false assertion that the STI pocket heater was a "revolutionary" device, notwithstanding defendant Haugen having learned that it was neither a protected device nor a trade secret, *id.* ¶ 55(b);

- The false assertion that Professor Xi sought to "orchestrate a scheme" to obtain the STI pocket heater technology, notwithstanding defendant Haugen's knowledge that, among other things, as a world-renowned expert in magnesium diboride thin film technology, Professor Xi would never need to "scheme" to obtain publicly available information about the STI pocket heater, *id.* ¶ 55(c);

- The false assertion that Professor Xi purchased a pocket heater from STI with fraudulent intent to defraud STI, notwithstanding defendant Haugen's knowledge that Professor Xi purchased the pocket heater from a different company, Shoreline Technologies, and only signed a non-disclosure agreement after STI claimed ownership of the pocket heater and requested that Professor Xi sign the agreement as the condition for him to lease the pocket heater, *id.* ¶ 55(d);

- The false assertion that Professor Xi transmitted diagrams or photographs of the STI pocket heater to colleagues at Peking University and at Tsinghua University, notwithstanding defendant Haugen's knowledge, based on schematics and emails in his

possession, that Professor Xi's communication with Chinese colleagues did not transmit diagrams or photographs of the STI pocket heater, *id.* ¶ 55(e)-(f); and

- The false assertion that Professor Xi shared samples produced by the STI pocket heater with entities in China, notwithstanding defendant Haugen's knowledge that none of the materials shared by Professor Xi with Chinese colleagues were produced using the STI pocket heater, *id.* ¶ 55(g).

These false statements were at the core of the wrongdoing in defendant Haugen's investigation: his intentional, knowing and/or reckless provision of false scientific conclusions to federal prosecutors were all made without any basis to claim that Professor Xi unlawfully communicated with persons and entities in China. *Id.* ¶ 56. Further, defendant Haugen intentionally, knowingly, and recklessly made false representations to federal prosecutors concerning the nature of Professor Xi's collaboration with colleagues in China; despite knowing that academics regularly consult with researchers around the world, including in China, and despite knowing that the federal government encourages such international collaboration, defendant Haugen informed prosecutors that Professor Xi's communications were for nefarious—and criminal—purposes. *Id.* ¶¶ 4, 57.

C.    **Professor Xi's Prosecution And His Family's Harms And Losses**

The false charges against Professor Xi had devastating effects on his family. *Id.* ¶ 76. After the May 14, 2015 filing of the Indictment under seal, in the early morning hours of May 21, 2015, federal agents went to Professor Xi's home, awakened him with loud and aggressive knocks, and, upon entry, immediately handcuffed and arrested him. *Id.* ¶ 32-33, 77. While taking Professor Xi into custody, the agents held at gunpoint plaintiff Qi Li, plaintiff Joyce Xi, and Professor Xi's younger daughter, who, at the time, was only 12 years old. *Id.* ¶¶ 34, 78.

These terrifying actions were akin to the arrest of an armed and dangerous terrorist. *Id.* ¶ 79. Later, on the same day, agents searched, without probable cause, plaintiffs' belongings, including their private papers, computers, and other electronic devices and, to plaintiffs' knowledge, maintained copies of plaintiffs' private data. *Id.* ¶¶ 85-86.

Professor Xi was taken from his home to the FBI's Philadelphia field office where he was subjected to DNA sampling, a mug shot, fingerprinting, a two-hour interrogation, and, later, a strip search. *Id.* ¶¶ 36-37. After an initial appearance, Professor Xi was required to post bond and surrender his passport. *Id.* ¶¶ 38-39. His arrest was widely publicized in several national and international publications, leaving his friends and colleagues with the false impression that he was a criminal and a spy for China. *Id.* ¶¶ 40, 75, 87. The circumstances of his arrest and prosecution, and the publicity of those events, was harmful to Professor Xi's entire family. *Id.* ¶¶ 81-86. Professor Xi was placed on administrative leave at Temple University and suspended from a position as the interim chair of the University's Physics Department; he could not participate in his research, he was prevented from talking to his graduate students, he suffered substantial financial losses, and he was emotionally traumatized. *Id*. ¶¶ 88-90, 95. Plaintiffs Qi Li and Joyce Xi likewise suffered severe emotional trauma, including distress that manifested itself in physical symptoms, and harms to their respective educational and professional pursuits. *Id.* ¶¶ 96-97. Even after charges were dismissed, *see infra* § II.D, Professor Xi, Qi Li, and Joyce Xi continue to experience the effects of the defendants' wrongful conduct, including difficulties and limitations in their professional lives and ongoing concern that the government will wrongfully accuse them of unlawful conduct. *Id.* ¶¶ 91-94, 96-97.

    **D.**    **The Dismissal Of The Indictment And Similar Prosecutions Against Chinese Scientists**

Following his arrest, Professor Xi retained counsel who conducted a simple investigation of the facts underlying the charges against Professor Xi and easily obtained information confirming that the assertions in the Indictment were flatly false. *Id.* ¶ 41. Professor Xi and his attorneys presented this information to prosecutors. *Id.* ¶ 52. Shortly thereafter, prosecutors moved to dismiss the Indictment, and, on September 18, 2015, the Court granted that motion. *Id.* ¶¶ 5, 52.

From the moment of his arrest and throughout his prosecution, Professor Xi believed that he had been falsely charged because he is racially and ethnically Chinese. *Id.* ¶ 80. Professor Xi was aware of ethnic bias and prejudice directed at him and other Chinese-American academics and scientists who were engaged in research with colleagues in China. *Id.* During just a 10-month period in 2014 and 2015, the federal government brought at least three indictments against Chinese-American scientists for alleged technological espionage, and, in each case, criminal charges were dismissed prior to trial. *Id.* ¶ 68. Defendant Haugen, who was assigned to work on Chinese counterintelligence, made false statements concerning Professor Xi based at least in part on the fact that Professor Xi was, prior to his naturalization as a U.S. citizen, a Chinese national and because he is ethnically Chinese. *Id.* ¶¶ 69-70.

**III.**    **STANDARD OF REVIEW**

Following the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), when the Court considers a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it conducts a

two-part analysis.[2]  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  First, the

Court "must accept all of the complaint's well-pleaded facts as true."  *Id.* at 210.  Second, the

Court "must then determine whether the facts alleged in the complaint are sufficient to show that

the plaintiff has a 'plausible claim for relief.'"  *Id.* at 211 (quoting *Iqbal*, 129 S. Ct. at 1950); *see

also Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017).  The "plausibility" analysis "will be

'a context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.'"  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949).  In sum, the plausibility inquiry is not

an exacting one.  *See White v. Brommer*, 747 F. Supp. 2d 447, 457 (E.D. Pa. 2010) (citing

*Fowler*, 578 F.3d at 210; *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008))

(stating that Court must determine "whether, under any reasonable reading, the plaintiff may be

entitled to relief" and noting that "a complaint may not be dismissed merely because it appears

unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits"); *see also

Keahey v. Bethel Township*, No. 11-cv-7210, 2012 WL 478936, at *3 (E.D. Pa. Feb. 15, 2012)

(stating that "nothing in [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)] or *Iqbal* has

altered some of the fundamental underpinnings of the Rule 12(b)(6) standard of review" and that

the Federal Rules of Civil Procedure "require[] only a short and plain statement of the claim

showing that the pleader is entitled to relief and need not contain detailed factual allegations").

## IV.    THE *BIVENS* CLAIMS AGAINST DEFENDANT HAUGEN

### A.    Professor Xi May Pursue His *Bivens* Claims.

Professor Xi raises quintessential civil rights claims under *Bivens v. Six Unknown Named

Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Specifically, Professor Xi alleges

---

[2]    Portions of the United States' motion are brought under Fed. R. Civ. P. 12(b)(1), but, as the United States acknowledges, the Rule 12(b)(6) standard applies to those arguments.  US-MTD at 4-5.

that defendant Haugen, the lead case agent and investigator, violated his Fourth and Fifth

Amendment rights through: malicious prosecution and fabrication of evidence, SAC ¶¶ 98–100

(Count One); impermissible racial and ethnic profiling, *id.* ¶¶ 101–02 (Count Two); and unlawful

search and seizure, *id.* ¶¶ 103–05 (Count Three).  Indeed, defendant Haugen's actions—

including knowingly and/or recklessly making false statements about Professor Xi to federal

prosecutors that caused FBI agents to storm Professor Xi's house with weapons drawn, hold

Professor's wife and daughters at gun-point, and forcibly arrest and strip-search Professor Xi—

are exactly the type of flagrant constitutional violations *Bivens* is intended to remedy and deter.

Defendant Haugen's argument that Professor Xi is precluded from seeking *Bivens* relief,

*see* Haugen Memo. in Support of Mot. to Dismiss ("Haugen-MTD") at 6-18, fails for three

reasons.  First, the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017),

reaffirms that citizens may pursue established *Bivens* claims against individual law enforcement

agents, such as the claims asserted by Professor Xi here.  Second, this case does not present a

new context.  And third, there are no special factors counseling hesitation against providing a

*Bivens* remedy.

1. Professor Xi's core *Bivens* claims remain intact.

The claims asserted by Professor Xi fall within the heartland of *Bivens*.  In *Bivens*, the

Supreme Court held that individuals may seek a damages remedy for unlawful search and seizure

by federal agents in violation of the Fourth Amendment.  403 U.S. 388.  And, in *Davis v.

Passman*, 442 U.S. 228 (1979), the Court held that individuals may seek damages for unlawful

discrimination in violation of the Due Process Clause of the Fifth Amendment.  Since *Bivens*,

courts have consistently recognized that individuals may pursue a cause of action against federal

11

agents for Fourth Amendment search and seizure,[3] Fourth Amendment malicious prosecution,[4] Fifth Amendment fabrication of evidence,[5] and Fifth Amendment impermissible discrimination claims.[6]

Defendant Haugen fundamentally misconstrues the Supreme Court's *Bivens* jurisprudence. *See* Haugen-MTD at 6-8 (citing cases). While the Court has declined to extend *Bivens* to *other contexts*, it has never questioned *Bivens*' settled application to Fourth and Fifth Amendment claims of FBI misconduct during a law enforcement investigation.[7]

The government relies heavily on *Abbasi*. But the Supreme Court stressed that it "must be understood" that its opinion in *Abbasi* was "not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose." 137 S. Ct. at 1856. Rather, the Court said, "[t]he settled law of *Bivens* in this common and recurrent sphere of law enforcement, and the undoubted reliance upon it as a fixed principle in the law, are

---

[3]      *See, e.g.*, *Unus v. Kane*, 565 F.3d 103, 122–23 (4th Cir. 2009); *Leveto v. Lapina*, 258 F.3d 156, 159–60 (3d Cir. 2001); *Yopp v. U.S. Dep't of Justice Drug Enforcement Admin.*, No. 10-10118, 2010 WL 3272845, at *6 (E.D. Mich. Aug. 19, 2010); *Thunder Island Amusements, Inc. v. Ewald*, 650 F. Supp. 2d 195, 203 (N.D.N.Y. 2009); *Mueller v. Gallina*, 311 F. Supp. 2d 606, 607–09 (E.D. Mich. 2004).

[4]      *See, e.g.*, *Hernandez-Cuevas v. Taylor*, 836 F.3d 116, 124-25 (1st Cir. 2016); *Meeks v. Larsen*, 611 Fed. Appx. 277, 282-83 (6th Cir. 2015).

[5]      *See, e.g.*, *Limone v. Condon*, 372 F.3d 39, 44-45 (1st Cir. 2004); *Manning v. Miller*, 355 F.3d 1028, 1030-31 & n.1 (7th Cir. 2004).

[6]      *See, e.g.*, *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

[7]      Every *Bivens* case Defendant Haugen cites, Haugen-MTD 6-7, involved a different category of defendant and/or different constitutional violation. *See Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017) (First Amendment suit against TSA agent concerning airport security); *Minneci v. Pollard*, 565 U.S. 118 (2012) (suit against guards at private prison); *Wilkie v. Robbins*, 551 U.S. 537 (2007) (suit against Bureau of Land Management officials for alleged interference with property rights); *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001) (suit against private prison corporation); *FDIC v. Meyer*, 510 U.S. 471 (1994) (suit against federal agency).

powerful reasons to retain it in that sphere." *Id.* at 1857; *see also Correctional Services Corp. v. Malesko*, 534 U.S. 61, 70 (2001) ("The purpose of *Bivens* is to deter individual federal officers from committing constitutional violations."). *Abbasi*, in short, affirms the "fixed principle" of *Bivens* as a remedy when, as here, a federal agent runs roughshod over a citizen's Fourth and Fifth Amendment rights in a criminal investigation. As described below, this case does not present a "new context" for *Bivens* purposes; but, *even if* it did, there are no special factors counseling hesitation against a remedy.

2.     This case does not extend *Bivens* to a "new context."

Where a *Bivens* case does not present a new context, that is the end of the analysis and the court does not need to proceed to determine whether there are special factors counseling hesitation against a remedy. Defendant Haugen argues that Professor Xi "seek[s] to extend *Bivens* into a new context" because the investigation here involved surveillance (including warrantless surveillance) and because the false arrest and malicious prosecution involved "a scientist . . . allegedly spying on behalf of a foreign power by transferring to it sensitive United States technologies." Haugen-MTD at 11. But nothing about Defendant Haugen's misconduct makes the context "new" for purposes of *Bivens*. To the contrary, the facts here underscore why *Bivens* remains an essential safeguard to prevent federal agents from overreaching and violating a citizen's basic constitutional rights.

In *Abbasi*, the Supreme Court concluded that a challenge to "high-level executive policy created in the wake of a major terrorist attack on American soil" did present a new context. 137 S. Ct. at 1860. But the Court could not have been clearer that it was not disturbing the core of *Bivens*: claims against a line agent for an unlawful search and seizure and other Fourth and Fifth Amendment violations. *See id.* at 1856–57; *see also Turkmen v. Hasty*, 789 F.3d 218, 265 (2d

Cir. 2015) (Raggi, J., dissenting in relevant part) (observing that "the typical *Bivens* scenario" is "errant conduct by a rogue official"), *rev'd in part, vacated in part sub nom. Abbasi*, 137 Sup. Ct. 1843; *Tun-Cos v. Perrotte*, No. 1:17-cv-0943-AJT-TCB, ECF 50 at 12-15 (E.D. Va. April 5, 2018) (rejecting, post-*Abbasi*, that "special factors" required dismissal of plaintiffs' Fourth Amendment unlawful seizure and search and Fifth Amendment equal protection claims against Immigration and Customs Enforcement agents where claims were "not challenging an entity's policy" but were asserting "straightforward violations of their Fourth and Fifth Amendment rights based on the Defendants' conduct" and where agents' "conduct raises the same issues and concerns as in *Bivens*"); *Loumiet v. United States*, No. 12-1130 (CKK), 2017 WL 5900533, at *6 (D.D.C. Nov. 28, 2017) (affirming, post-*Abbasi*, that "the purpose of *Bivens* is to deter misconduct by individual officers" and finding that *Bivens* action was "properly focused on specific activities of individual officers").

  *Abbasi* listed examples of ways in which the "context" of a case might be new.  None of those examples applies here.  *First*, the Court observed that the "rank of the officers involved" might make a context new.  *Abbasi*, 137 S. Ct. at 1860.  Professor Xi's *Bivens* claims do not involve any high-ranking or even supervisory officials; those claims concern only a line FBI agent, just like the defendants in *Bivens* itself.

  *Second*, the Court noted that the "constitutional right at issue" might make the context new.  *Id.*  But here, the right is the same as in *Bivens* (Fourth Amendment violations committed during a criminal investigation, including unlawful search and seizure) and *Davis* (Fifth Amendment equal protection violation).

  *Third*, the Court stated that the "generality or specificity of the official action" might make the context new.  *Abbasi*, 137 S. Ct. at 1860.  Professor Xi is not challenging a policy or

other general official action through *Bivens*.  Rather, Professor Xi's *Bivens* claims against defendant Haugen target that agent's specific misconduct: malicious prosecution; fabrication of evidence; unlawful search of his home and offices; and unlawful search and seizure of his property and personal information.

*Fourth* and *fifth*, the Court noted that judges should look at the "statutory or other legal mandate under which the officer was operating" and "the extent of judicial guidance" available to officers regarding "how an officer should respond" to the situation.  *Id.*  That factor plainly does not apply here, as all FBI agents are necessarily aware that the law prohibits them from engaging in malicious prosecution, falsifying or fabricating evidence, and unlawful searches and seizures.

*Sixth*, the Court stated that an additional factor was "the risk of disruptive intrusion by the Judiciary into the functioning of other branches."  *Id.* at 1860.  Unlike the claims in *Abbasi*, Professor Xi's *Bivens* claims against defendant Haugen do not remotely present any such intrusion.  Those claims do not require an inquiry into the workings of the Executive branch.  Nor do they challenge the FBI's policies or broader efforts regarding the transfer of "sensitive United States technologies" to a foreign power.  Haugen-MTD at 11.  Rather, this damages action seeks to hold defendant Haugen accountable for *his individual actions*—actions that included fabricating evidence against and initiating a malicious prosecution of a respected university professor and American citizen.  Holding defendant Haugen accountable is no more intrusive than holding the individual agents accountable in *Bivens*—or than holding federal agents responsible in any of the civil rights actions against individual officers pending in federal courts at any given time.  Indeed, under defendant Haugen's extreme position, even a case with

15

facts virtually identical to *Bivens* itself would present such an unwarranted intrusion by challenging the federal government's anti-narcotics efforts.  *See Bivens*, 403 U.S. at 389.

     *Finally*, the Court observed that a new context could arise from other "special factors." *Abbasi*, 137 S. Ct. at 1860.  Here, defendant Haugen argues that Professor Xi's *Bivens* claims, and defendant Haugen's response to them, could potentially involve classified information. Haugen MTD at 11. But Defendant Haugen has not articulated any basis for concluding that classified information would, in fact, bear on Professor Xi's *Bivens* claims challenging the deliberate and/or reckless falsification and material omission of information provided to federal prosecutors.  Further, if the mere potential involvement of classified information rendered the context "new," that could immunize wide swaths of law enforcement violations of Fourth and Fifth Amendment rights.

     The Third Circuit's decision in *Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017), on which defendant Haugen mistakenly relies, Haugen-MTD at 10, underscores why this case does not present a "new context."  In *Vanderklok*, the Third Circuit held that a First Amendment retaliation suit against airport security screeners presented a new context.  868 F.3d at 199-200. Unlike this case, *Vanderklok* involved the extension of *Bivens* to a new constitutional claim under Supreme Court precedent (First Amendment retaliation claim), and to a new "category of defendants" (Transportation Security Administration ("TSA") airport security screeners), *id.*—a distinct category from law enforcement agents, *id.* at 203–04. This case, by contrast, involves both the identical constitutional provisions recognized in *Bivens* and *Davis* (the Fourth and Fifth Amendments, respectively) and the identical category of defendants (law enforcement agents). *Abbasi* reaffirms *Bivens*' continued availability in these circumstances.  *See, e.g.*, *McClean v. Gutierrez*, No. 15-275 (RGK), 2017 WL 6887309, at \*19 (C.D. Cal. Sept. 28, 2017) ("excessive

force claim" against prison officials remains "a quintessential civil rights claim" for which *Bivens* provides a remedy).

In short, Professor Xi's *Bivens* claims address a single FBI agent's misconduct in deliberately and/or recklessly falsifying information that caused the malicious prosecution of Professor Xi and that caused Professor Xi (and his family) to suffer an unlawful search and seizure. These claims do not differ "in a meaningful way" from those in *Bivens*. *Abbasi*, 137 S. Ct. at 1859. To the contrary, they target the type of flagrant violations in the "common and recurrent sphere of law enforcement" that *Bivens* was intended—and remains available—to remedy and to deter. *Id.* at 1857. This is not a new context, and that ends the inquiry.[8]

        3.      <u>No special factors bar a *Bivens* remedy in this case.</u>

If, however, the Court determines that this case presents a new context, it must then determine whether there is any "alternative, existing process" capable of protecting the constitutional interests at stake, and, even in the absence of such alternative process, whether special factors counsel hesitation before authorizing a *Bivens* remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).

Defendant Haugen does not dispute the absence of any alternative process capable of protecting the constitutional interests at stake. Although Professor Xi also seeks redress under

---

[8]      The Supreme Court divided the claims in *Abbasi* into challenges arising from high-level policies and a separate claim alleging that a prison warden permitted abuse apart from those policies. As to the latter, the Court concluded that the context was new, but remanded to the court of appeals to perform the special factors analysis in the first instance. The Court relied heavily on the availability of remedies to address the constitutional violations—which, as described below, are not available here. *See Abbasi*, 137 S. Ct. at 1865. Further, unlike in *Abbasi*, here there is no statute like the Prison Litigation Reform Act of 1995, which, the Supreme Court concluded, "made comprehensive changes to the way prisoner abuse claims must be brought in federal court," and which shows that "Congress had specific occasion to consider" the availability of a remedy for the kind of abuse at issue. *Id.*

the Federal Tort Claims Act ("FTCA"), the FTCA is not a substitute for *Bivens*. Rather, the

Supreme Court has explained, the FTCA and *Bivens* are "parallel" and "complementary" sources

of liability, with *Bivens* providing a "more effective" remedy than that available under the

FTCA. *Carlson v. Green*, 446 U.S. 14, 19-20 (1980).

Defendant Haugen nevertheless argues that special factors counsel hesitation because

Professor Xi's *Bivens* claims implicate national security, foreign affairs, and classified

information, and challenge an Executive branch program. Haugen-MTD at 12-18. This

argument is without merit, and defendant Haugen's reliance on *Abbasi* and *Vanderklok* is

misplaced. Thus, even if the context were new (which it is not), no special factors warrant

denying Professor Xi a *Bivens* remedy.

a.      *"National security" is not a special factor here.*

Defendant Haugen contends that Professor Xi's *Bivens* claims are precluded because they

require the Court to inquire "into the national-security realm." Haugen-MTD at 12. But

defendant Haugen presents nothing to show that his gross misconduct—which included multiple

false assertions that led to the indictment and seizure of an innocent American and other

constitutional violations—remotely implicate national security. This case did not involve

"spying" on behalf of a foreign power, let alone terrorism. Rather, it involved an FBI agent's

deliberate and/or reckless falsification of evidence to manufacture a basis for prosecuting a

respected scientist and that agent's disregarding of evidence that this scientist was engaged in

normal academic collaborations.

This Court should reject defendant Haugen's overbroad—and self-serving—invocation of

"national security" to shield his lawless actions. The Court in *Abbasi* went out of its way to warn

against such sweeping reliance on "national security," stressing that "national-security concerns

18

must not become a talisman to ward off inconvenient claims—a 'label' used to 'cover a multitude of sins.'" *Abbasi*, 137 S. Ct. at 1862 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 523 (1985)).  A case, in short, must *actually* involve such considerations for them to be relevant.

That this analysis is case-specific is underscored by *Mitchell*, 472 U.S. 511, in which the Court rejected the argument for absolute immunity that "the national security functions of the Attorney General are so sensitive, so vital to the protection of our Nation's well-being, that we cannot tolerate any risk that in performing those functions he will be chilled by the possibility of personal liability . . . ." *Id.* at 520.  Although the Court upheld the assertion of qualified immunity in *Mitchell*, it indicated that a *Bivens* remedy is available against even the Attorney General.  *Id.* at 523 n.7, 535; *see also Butz v. Economou*, 438 U.S. 478, 501 (1978) ("[T]he cause of action recognized in *Bivens*  . . . would  . . . be drained of meaning if federal officials were entitled to absolute immunity for their constitutional transgressions."); *cf. Ashcroft v. al-Kidd*, 563 U.S. 731, 734 (2011) (in *Bivens* suit that, like *Abbasi*, involved counterterrorism efforts in the wake of the September 11 attacks, the government did not challenge the availability of *Bivens* and the Court did not address it).

The Third Circuit did not create a sweeping "national security" exception to *Bivens* in *Vanderklok*—nor could it given the Supreme Court's explicit warning in *Abbasi*.  Rather, the Third Circuit addressed the specific—and distinct—question whether an individual could pursue a *Bivens* action against a TSA airport screening agent.  868 F.3d at 207.  Such employees, the court explained, are tasked with "assisting in a critical aspect of national security—securing our nation's airports." *Id.*; *see also id.* at 209 (tethering decision to the specific "dangers associated with airport security").  Nothing in *Vanderklok* supports precluding a *Bivens* action against an

FBI agent who falsifies evidence to secure a criminal indictment against a citizen and then broadly invokes "national security" to cover up his misconduct.

The Third Circuit also relied heavily in *Vanderklok* on the fact that "Congress chose to limit the scope of judicial review of TSA actions." *Id.* at 208 ("In creating the TSA, Congress restricted judicial review to affirming, amending, modifying, or setting aside orders of the agency."). Congress, however, has not restricted remedies against FBI agents for Fourth and Fifth Amendment violations. To the contrary, Congress has repeatedly preserved the *Bivens* remedy for constitutional violations by federal agents against U.S. citizens. In 1974, when Congress amended the FTCA, it deliberately preserved *Bivens* suits by rejecting proposed legislation that would have substituted the government for individual officers in suits alleging violations of the U.S. Constitution. *See Carlson*, 446 U.S. at 19–20 & n.5 (finding it "crystal clear" that Congress intended to maintain *Bivens* actions against individual officials for constitutional violations). In 1988, Congress went one step further and expressly preserved the right of individuals to sue federal officers for "a violation of the Constitution of the United States." 28 U.S.C. § 2679(b)(2)(A) (preserving *Bivens* in enacting the Westfall Act to preempt non-federal remedies against federal employees acting within the scope of their employment). On each occasion, Congress deliberately rejected Justice Department proposals to eliminate *Bivens*. See James F. Pfander & David Baltmanis, *Rethinking Bivens: Legitimacy and Constitutional Adjudication*, 98 Geo. L.J. 117, 132–35 & n.100 (2009). Instead, "[b]y accepting *Bivens* and making it the exclusive mode for vindicating constitutional rights, Congress . . . joined the Court in recognizing the importance of the *Bivens* remedy in our scheme of government accountability law." *Id.* at 136.

Further, the Third Circuit stressed the "practical concern with establishing a court-crafted remedy" for First Amendment violations by TSA employees, who "typically are not law enforcement officers and do not act as such." *Vanderklok*, 868 F.3d at 208. "As a result," the court explained, "line TSA employees are not trained on issues of probable cause, reasonable suspicion, and other constitutional doctrines that govern law enforcement officers." *Id.* Here, in direct contrast, the defendant is an FBI agent and, as such, is necessarily trained on those bread-and-butter constitutional doctrines. This case, accordingly, does not present any practical concerns with maintaining the bedrock remedy against federal law enforcement agents that has existed since *Bivens*.

> b.   *"Foreign affairs" is not a special factor here.*

Defendant Haugen also argues that "foreign affairs" is a special factor counseling hesitation. Haugen-MTD at 13-14. Defendant Haugen, however, essentially repeats the same arguments on "foreign affairs" as he makes on "national security," claiming that those two special factors are essentially coextensive. Thus, defendant Haugen's argument here boils down to the same untenable assertion: that Professor Xi is barred from seeking a *Bivens* remedy because defendant Haugen falsified, misrepresented, and fabricated evidence to wrongly accuse him of being "a technological spy for China." *Id.* at 14 (quoting SAC ¶ 1).

None of the cases defendant Haugen cites supports his sweeping invocation of a "foreign affairs" special factor. *See* Haugen-MTD at 14 (citing cases). *Arar v. Ashcroft*, 585 F.3d 559, 574-76 (2d Cir. 2009), concerned an action by a foreign national targeting policy decisions regarding the "extraordinary rendition" of terrorism suspects to foreign countries. *Ali v. Rumsfeld*, 649 F.3d 762, 764–65 (D.C. Cir. 2011), similarly concerned an action by foreign nationals for activity occurring abroad and also directly challenged military officials for actions

during wartime.  In each case, the court found that allowing a *Bivens* action to proceed could, in fact, obstruct foreign policy as designed and implemented at the highest levels of the U.S. government.  *See Arar*, 585 F.3d at 576 (danger of foreign citizens using the federal courts "to obstruct the foreign policy of our government") (quoting *Sanchez-Espinoza v. Reagan*, 770 F.2d 202, 209 (D.C. Cir. 1985)); *Ali*, 649 F.3d at 774 (same).[9]  None of these cases precludes, let alone casts doubt on, a *Bivens* action against an FBI agent for falsifying and fabricating information in a criminal investigation against a U.S. citizen in the United States merely because those falsifications and fabrications may relate generally to a foreign government.  Were that so, law enforcement agents could freely lie to prosecutors and judges to manufacture prosecutions against citizens in the United States in cases ranging from narcotics trafficking to corporate fraud merely because those false allegations potentially involve a foreign country.  This Court should reject defendant Haugen's brazen attempt to eviscerate *Bivens* as a remedy for U.S. citizens lawfully residing in this country.

<blockquote>
c.    *Professor Xi's* Bivens *claims do not implicate classified information.*
</blockquote>

Defendant Haugen further attempts to preclude Professor Xi's *Bivens* claims by arguing that they implicate classified information.  Defendant Haugen mischaracterizes both Professor Xi's claims and the law.

Professor Xi's *Bivens* claims against defendant Haugen, as set forth in Counts One, Two, and Three of the SAC, do not challenge the surveillance of foreign entities or surveillance of him

---

[9]    *Sanchez-Espinoza* involved a challenge by Nicaraguan citizens, none of whom resided in the United States, against the President, the CIA director, the then-current as well as former secretaries of state and the then-secretary of defense for their policy of financing, training, and arming Nicaraguan rebels. 770 F.2d at 205–06 & n.1. That Defendant Haugen traces his "foreign affairs" argument to this case underscores just how misplaced that argument is here.

under FISA or other authorities.[10]  Rather, those claims assert that defendant Haugen fabricated evidence and falsely informed federal prosecutors that Professor Xi's normal academic collaboration was undertaken for a nefarious purpose, despite knowing that he had no basis to claim Professor Xi's communications with persons or entities in China were unlawful.  SAC ¶¶ 55–57.  While those deliberate and/or reckless falsifications caused the issuance of orders under FISA, Professor Xi does not challenge those orders under *Bivens*, nor does he seek monetary damages in relation to unlawful surveillance.  Professor Xi's *Bivens* claims for damages instead challenge the deliberate and/or reckless falsifications themselves—and solely to the extent they caused his malicious and wrongful prosecution, SAC ¶¶ 98–100, the search without probable cause of his home, office, and belongings, *id.* ¶¶ 103–04, and the unlawful seizure of his private information and property, *id.* ¶ 104. Professor Xi also challenges defendant Haugen's investigation and initiation of a prosecution against him based on impermissible racial and ethnic factors.  *Id.* ¶¶ 106–07.  The thrust of these claims is that defendant Haugen deliberately and/or recklessly provided prosecutors with false information (and/or disregarded material information) to secure the indictment of an innocent person. None of these quintessential Fourth and Fifth Amendment claims of law enforcement misconduct implicates classified information or challenges government surveillance; rather, as in other *Bivens* suits alleging FBI misconduct, resolution of these claims turns on publicly available information contained in the criminal indictment and search warrant.

---

[10]      As set forth in the SAC, Professor Xi's *Bivens* claims challenge classic law-enforcement misconduct: defendant Haugen's malicious prosecution and fabrication of evidence (Count One); his investigation and initiation of prosecution against Professor Xi based on impermissible racial and ethnic factors (Count Two); and his unlawful search of Professor Xi's home, offices, and belongings (Count Three).  Professor Xi's challenge to unlawful surveillance is not brought under *Bivens* and is confined to the official capacity defendants identified in Count Ten. *See* SAC ¶¶ 124–35.

Indeed, defendant Haugen provides no basis for concluding that Professor Xi's *Bivens* claims would, in fact, implicate classified information.  Instead, he merely speculates that Professor Xi's claims "would invariably lead to litigation over classified information," Haugen-MTD at 16.  This Court should reject such unsupported speculation as a ground for dismissing Professor Xi's *Bivens* claims.

Further, *even if* these claims might, at some point, potentially implicate classified information, that would in no way warrant dismissal at the pleading stage.  Courts have ample tools at their disposal to address classified or other sensitive information, and routinely employ those tools in litigation.  *See, e.g.*, Federal Judicial Center, *National Security Case Studies: Special Case Management Challenges* (June 25, 2013) (describing various tools courts use).  Such information, for example, is commonly submitted to courts under seal, and courts can issue decisions without disclosing that information.  *See, e.g.*, *National Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 202 (D.C. Cir. 2001) ("We acknowledge that in reviewing the whole record, we have included the classified material.  As we noted above  . . . we will not and cannot disclose the contents of the record.").  Indeed, the Supreme Court has expressly recognized the ability of district judges to manage classified information in litigation raising far more sensitive considerations than this case could ever remotely implicate.  *See Webster v. Doe*, 486 U.S. 592, 604 (1988) ("[T]he district court has the latitude to control any discovery process which may be instituted so as to balance respondent's need for access to proof which would support a colorable constitutional claim against the extraordinary needs of the CIA for confidentiality and the protection of its methods, sources, and mission.").

Notably, all of the cases cited by defendant Haugen, Haugen-MTD at 15-16, involved *other contexts* than federal law enforcement and *other factors* besides classified information.  *See*

24

*Lebron v. Rumsfeld*, 670 F.3d 540, 548 (4th Cir. 2012) (suit by "enemy combatants held in military detention" during wartime would intrude on military affairs); *Arar*, 585 F.3d at 574 (judicial intrusion into extraordinary rendition of noncitizen terrorism suspects to foreign countries would "affect diplomacy, foreign policy, and the security of the nation"); *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008) (suit by former CIA agent over disclosure of her former covert status would "inevitably require judicial intrusion into matters of national security and sensitive intelligence information"). Professor Xi's *Bivens* claims do not involve terrorism, military affairs, the treatment of covert intelligence agents, or any other special factors that have previously counseled against a *Bivens* remedy.

In short, this Court should reject defendant Haugen's effort to pretermit Professor Xi's *Bivens* claims and shield his egregious misconduct—the reckless and/or deliberate falsification of evidence that caused the wrongful prosecution and abusive treatment of an innocent American citizen.

> d.     *Professor Xi does not challenge a "government program."*

Finally, defendant Haugen contends that Professor Xi "effectively challenges a government program." Haugen-MTD at 17-18. Specifically, he claims that Professor Xi "challenges the FBI's alleged surveillance of foreign entities and its alleged use of information gleaned from its surveillance to prosecute—and thereby deter—the suspected transfer of sensitive United States technologies to foreign entities and countries." *Id.* at 17. Defendant Haugen is plainly wrong.

As explained above, Professor Xi's *Bivens* claims challenge only defendant Haugen's falsification and fabrication of evidence *about him*—misconduct that led to Professor Xi's wrongful prosecution and unlawful search and seizure. His separate claim challenging unlawful

surveillance, which seeks the expungement of his private information, is not brought under *Bivens* and is confined to the official capacity defendants in Count Ten of the SAC. *See supra* § IV.A.3.c.[11]  Further, those surveillance claims challenge the misuse of legal authorities against Professor Xi himself to surreptitiously obtain his communications.  Thus, even Professor Xi's non-*Bivens* claims against other defendants in their official capacity challenge unlawful surveillance directed against Professor Xi personally and do not challenge surveillance policy generally.

Professor Xi's *Bivens* claims are thus entirely unlike the claims in *Abbasi*, which challenged "major elements of the Government's *whole response to the September 11 attacks*." 137 S. Ct. at 1861 (emphasis added); *see also id.* at 1860 (plaintiffs challenged "a high-level executive policy created in the wake of a major terrorist attack on American soil); *id.* at 1862 (plaintiffs challenged "large-scale policy decisions concerning the conditions of confinement imposed on hundreds of prisoners").

Defendant Haugen cannot evade liability for abusing Professor Xi's constitutional rights by mischaracterizing the allegations against him and the governing law. Professor Xi's *Bivens* claims against defendant Haugen target that agent's unconstitutional conduct, which led to Professor Xi's wrongful prosecution and unlawful search and seizure.  Those claims fall squarely within *Bivens*. *See Abbasi*, 137 S. Ct. at 1857 (under "settled law," *Bivens* remains a remedy for unconstitutional conduct by federal agents in the "common and recurrent sphere of law enforcement").  Under defendant Haugen's extreme view, virtually any future challenge to FBI misconduct could be characterized as a challenge to a government "program" or "policy."  An

---

[11]     The specifics of Professor Xi's surveillance claims are more fully addressed in his separately filed response to the official capacity defendants' motion to dismiss.

FBI agent's falsification of evidence in a federal narcotics case, for example, would become a challenge to federal drug enforcement policy writ large, rather than to the misconduct by a specific agent.  The Court should reject this radical attempt to eviscerate *Bivens*.[12]

**B.     Defendant Haugen Is Not Entitled To Qualified Immunity.**

Defendant Haugen's defense of qualified immunity on plaintiffs' federal constitutional claims presents two issues for the Court: first, whether the Second Amended Complaint pleads facts plausibly showing that Professor Xi was subjected to a malicious prosecution, that defendant Haugen fabricated evidence against Professor Xi, that all plaintiffs were subjected to unlawful searches of their houses, offices, and persons, and that defendant Haugen impermissibly targeted Professor Xi based on his race and ethnicity; and, second, whether these constitutional violations were clearly established at the relevant time.  As we demonstrate below, defendant Haugen's arguments on both issues are seriously misplaced as a matter of fact and law and should be rejected.

**1.      Professor Xi has alleged violations of his constitutional rights.**

In the face of explicit factual allegations showing that defendant Haugen engaged in actions that intentionally, knowingly, or recklessly caused Professor Xi to suffer a malicious prosecution, including use of fabricated evidence, and further caused all the plaintiffs to suffer illegal searches and seizures, defendant Haugen argues (1) that the SAC contains no facts that plausibly allege these harms, (2) alternatively, that the SAC alleges negligent conduct only, and

---

[12]     Defendant Haugen points to Professor Xi's allegation noting the prior dismissal of at least three federal criminal indictments of Chinese-American scientists prior to trial.  Haugen-MTD at 17 (citing SAC ¶ 68).  But this allegation in no way evinces an intent to challenge a government program.  Rather, it supports the plausibility of Professor Xi's claim that Defendant Haugen investigated and initiated a prosecution against Professor Xi based on impermissible racial and ethnic factors. *See* SAC ¶¶ 101-02; *infra* § IV.B.1.d.

(3) that there is no free-standing claim for fabrication of evidence.  In doing so, defendant Haugen fails to adhere to the cardinal principle under Rule 12(b)(6) that all facts alleged by the plaintiffs are presumed to be true and must be considered in the light most favorable to the plaintiffs.  *See supra* § III.

a.   *Malicious prosecution*

Defendant Haugen argues that the claim of malicious prosecution should be dismissed on the ground that the issuance of an Indictment by the Grand Jury provides conclusive evidence there was probable cause for the prosecution.  Haugen-MTD at 19-22.  He asserts that Professor Xi has failed to allege specific facts plausibly showing that defendant Haugen intentionally, knowingly, or recklessly provided false information to the prosecution to secure the Indictment.[13]  He makes no argument—nor could he consistent with clearly established law—that if such facts are properly pleaded, Professor Xi does not state a claim for malicious prosecution.

The courts have uniformly held that where a law enforcement agent intentionally, knowingly, or recklessly provides materially false information to a prosecutor who then uses that evidence to establish probable cause for a prosecution (by arrest, indictment, or preliminary hearing), the Fourth Amendment provides a claim for malicious prosecution.  *See Dufort v. City of New York*, 874 F.3d 338, 351 (2d Cir. 2017) (claim of malicious prosecution sustained where officer placed plaintiff in defective lineup and withheld the suspect nature of an "identification"

---

[13]     A Fourth Amendment malicious prosecution claim requires proof that the defendant law enforcement agent (1) caused (2) a seizure of the plaintiff pursuant to legal process, (3) without probable cause, and (4) that the criminal proceedings terminated in plaintiff's favor.  *Halsey v. Pfeiffer*, 750 F.3d 273, 296-297 (3d Cir. 2014).  Defendant Haugen argues only the presence of probable cause, thus conceding the appropriate pleading as to the other three elements of the claim.

from prosecutors); *Mills v. Barnard*, 869 F.3d 473, 484 (6th Cir. 2017) (falsification of scientific evidence relating to hair analysis states claim for malicious prosecution; factual allegations more than conclusory in nature); *Miller v. Maddox*, 866 F.3d 386, 389, 588 (6th Cir. 2017) (plaintiff need only show that officer "influenced[] or participated in the prosecution decision"; officer who provides false information is liable for malicious prosecution and issuance of indictment secured on the basis of that information does not provide defense); *King v. Harwood*, 852 F.3d 568, 583-84 (6th Cir. 2017) (same); *Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016) (false and omitted allegations in affidavit of probable cause regarding scientific facts as to point of origin of fire negated probable cause for arrest); *Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015) (omissions in evidence presented to prosecutor in support of accusations of financial fraud were material and thereby false, and led to a prosecution without probable cause); *Halsey v. Pfeiffer*, 750 F.3d 273, 289 (3d Cir. 2014) (falsifying confession states claim for malicious prosecution).

　　To avoid the clear implications of these settled principles, defendant Haugen, without citation or discussion of these cases, argues that Professor Xi makes only conclusory allegations insufficient to state a claim.  This argument fails in the face of the allegations in the SAC that are highly specific, detailed, and plausible.  These allegations show that Haugen intentionally, knowingly, or recklessly caused the indictment of Professor Xi, an innocent person, and other constitutional violations, by presenting false statements and representations to prosecutors.  Specifically, the SAC, ¶¶ 55-57, sets forth the following intentional, knowing and/or reckless false statements and representations and material omissions by defendant Haugen:

- The false assertion that Professor Xi built a version of the STI pocket heater for an entity in China, notwithstanding defendant Haugen having learned during his investigation from

29

the inventor of that device that the materials Professor Xi sent were "entirely different" and "not related to the STI pocket heater," but, rather, based on a process that Professor Xi had invented, *id.* ¶ 55(a);

- The false assertion that the STI pocket heater was a "revolutionary" device, notwithstanding defendant Haugen having learned that it was not a protected device or trade secret, *id.* ¶ 55(b);

- The false assertion that Professor Xi sought to "orchestrate a scheme" to obtain the STI pocket heater technology, notwithstanding defendant Haugen's knowledge that, among other things, as a world-renowned expert in magnesium diboride thin film technology, Professor Xi would never need to "scheme" to obtain publicly available information about the STI pocket heater, *id.* ¶ 55(c);

- The false assertion that Professor Xi purchased a pocket heater from STI with fraudulent intent to defraud STI, notwithstanding defendant Haugen's knowledge that Professor Xi purchased the pocket heater from a different company, Shoreline Technologies, and only signed a non-disclosure agreement after STI claimed ownership of the pocket heater and requested that Professor Xi sign the agreement as the condition for him to lease the pocket heater, *id.* ¶ 55(d);

- The false assertion that Professor Xi transmitted diagrams or photographs of the STI pocket heater to colleagues at Peking University and at Tsinghua University, notwithstanding defendant Haugen's knowledge, based on schematics in his possession, that any information sent by Professor Xi's communications with Chinese colleagues did not transmit diagrams or photographs of the STI pocket heater, *id.* ¶ 55(e)-(f);

30

- The false assertion that Professor Xi shared samples produced by the STI pocket heater with entities in China, notwithstanding defendant Haugen's knowledge that any materials sent by Professor Xi were produced using other technologies, *id.* ¶ 55(g); and

- The false assertion that Professor Xi's normal academic collaborations in China were for a nefarious purpose, notwithstanding that defendant Haugen knew that Professor Xi collaborated broadly with scientists around the world, including scientists from China, and that these interactions with Chinese colleagues were legitimate and normal academic collaborations, *id.* ¶ 57.

Remarkably, defendant Haugen does not even acknowledge these allegations, much less attempt to show any insufficiency in the pleadings; rather, and ironically, *he* makes an entirely conclusory argument as to the lack of specificity:

> Xi alleges no facts that if proven would meet either standard. Instead, Xi offers conclusory allegations that are precisely the sort that this Court must ignore under *Iqbal*. Indeed, Xi's assertion that Special Agent Haugen "intentionally, knowingly, and recklessly provided federal prosecutors with false scientific opinions and conclusions" regarding Xi's interactions with individuals and entities in China is simply a rephrasing of the standards announced in *Rose* and *Yusuf*. In other words, it is a "formulaic recitation" of the legal standard to rebut the presumption of probable cause that the grand jury indictment and the search warrant created.

Haugen-MTD at 21.

The Third Circuit has consistently sustained complaints on factual allegations less specific than those alleged in the SAC. *See Schuchardt v. President of the United States*, 839 F.3d 336, 353 (3d Cir. 2016) (standing to sue for illegal NSA surveillance established by allegation that popular media had reported that the NSA program monitored all users of certain websites and technologies used by plaintiffs); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 791 (3d Cir. 2016) (claim that plaintiff was discriminated against on basis of gender sustained on

allegations that she was the only driver not rehired, was the sole woman driver, and was qualified to drive); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009) (claim under Rehabilitation Act sustained on allegations that following injury on job, employer "regarded her as disabled" and she was not transferred to a position that could accommodate her disability); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (sustaining complaint of failure to protect since facts alleged are more than a simple "blanket assertion" of entitlement to relief); *see also Olson v. Champaign Cnty.*, 784 F.3d 1093, 1101-02 (7th Cir. 2015) (specific allegations that police investigation failed to produce evidence of wrongdoing and that warrant was based on false statements sufficient to state Fourth Amendment claim).

Defendant Haugen also asserts that the facts alleged amount to nothing more than negligent conduct, stating that Professor Xi "in effect argues that Special Agent Haugen *simply got the science wrong* regarding the thin film superconducting technology produced by the American company and the thin film superconducting projects Xi communicated and proposed to entities in China."  Haugen-MTD at 21 (emphasis added).  Further, according to defendant Haugen, because the science of thin film superconducting technologies is "sophisticated, complex and highly specialized," the allegation that he had "no scientific or other basis to allege unlawful conduct on the part of plaintiff Xi," could not show more than negligent conduct.  *Id.*

This reading of the SAC is myopic.  Defendant Haugen ignores the specific allegations that he knew that his allegations were false, or were made with reckless disregard of the truth. There is no support for the proposition that law enforcement agents who make false representations regarding "scientific" evidence are afforded a safe harbor from accountability. To the contrary, where an agent is acting in a field in which he has no expertise and where his representations regarding the conduct of the suspect will lead to a prosecution not supported by

32

probable cause, he must take all steps necessary to ensure that these representations are made with a reliable factual basis and that material information is not omitted. *Cf. Mills*, 869 F.3d at 483 (sustaining claim against law enforcement technician for false reporting of DNA analysis).[14]

In sum, Professor Xi has alleged facts with sufficient detail and particularity that plausibly show that defendant Haugen engaged in a malicious prosecution. The motion to dismiss on this claim should be denied.

b.    *Fabrication of evidence*

In a footnote only, Haugen-MTD at 20 n.5, defendant Haugen argues that there is no independent claim under the Due Process Clause of the Fifth Amendment for fabrication of evidence and that this claim is subsumed in the Fourth Amendment malicious prosecution cause of action. This passing and undeveloped argument does not preserve the issue. *See United States v. Centeno,* 793 F.3d 378, 388 n.9 (3d Cir. 2015) ("Because these issues were 'not squarely argued' and were at most 'raised in passing (such as, in a footnote),' they are waived."). In any event, defendant Haugen ignores controlling authority to the contrary. In *Black*, 835 F.3d at 369, the Third Circuit expressly ruled that a "stand-alone fabrication of evidence claim can proceed [even] if there is no conviction," notwithstanding an independent Fourth Amendment claim of malicious prosecution. The court had previously made the same point for a person convicted at a criminal trial. *See Halsey*, 750 F.3d at 288-96 (stating that this rule had been adopted by every court of appeals to have considered the question)*; see also Mills*, 869 F.3d at

---

[14]     It is telling that defendant Haugen seeks to bolster his argument with reference to the allegations in the First Amended Complaint ("FAC"), while acknowledging as he must, that the SAC is "the operative complaint." Haugen-MTD at 21. The FAC stated a claim for malicious prosecution, but even if it did not, the FAC is entirely superseded by the SAC.

486; *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 278 (2d Cir. 2016).  Professor Xi

states a valid claim under the Fifth Amendment for the fabrication of evidence.

c.     *Unconstitutional searches and seizures*

All plaintiffs claim a violation of their Fourth Amendment rights to be free from searches

and seizures conducted without probable cause.  This claim arises from the searches of the

plaintiffs' home, and of Professor Xi's person and academic office.  Defendant Haugen makes

the same argument on this claim as he did on malicious prosecution: that there was probable

cause (here by reason of the search warrants) and, therefore, no liability.  But the factual

allegations of the SAC make clear that the assertions in the search warrant applications were

fatally flawed for the same reasons that the assertions in the Indictment were invalid: both were

the result of defendant Haugen's intentionally, knowingly or recklessly false representations.

SAC ¶ 67.

Accordingly, the same analysis as set forth in the malicious prosecution argument

controls on this issue and requires denial of the motion to dismiss.  Materially false, misleading,

or fabricated allegations in a warrant application render searches conducted pursuant to a warrant

unconstitutional under the Fourth Amendment.  *See Andrews v. Scuilli*, 853 F.3d 690, 698 (3d

Cir. 2017) (officer's omissions and misleading assertions in affidavit were material to finding of

probable cause and therefore violated Fourth Amendment rights of plaintiff); *Betker v. Gomez*,

692 F.3d 854, 860 (7th Cir. 2012) (knowing or reckless false statement in support of no-knock

search warrant); *Chism v. Washington State*, 661 F.3d 380, 392 (9th Cir. 2011) (materially false

statements and omissions in search warrant application); *Hernandez-Cuevas v. Taylor*, 723 F.3d

91, 104 (1st Cir. 2013) (complaint plausibly alleged knowingly or recklessly false statements in

warrant affidavit); *Humbert v. Mayor and City Council of Baltimore City,* 866 F.3d 546, 557-58

(4th Cir. 2017) (officers' failure to inform prosecutor that victim could not positively identify

plaintiff and that DNA testing cleared him resulted in materially false warrant application);

*Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (knowing, deliberate, or recklessly false

statements or material omissions invalidate arrest warrant).  Plaintiffs state a valid Fourth

Amendment claim for these unlawful searches.

d.      *Equal protection violation*

Defendant Haugen also seeks dismissal of Professor Xi's Fifth Amendment equal

protection claim, arguing that the facts alleged are conclusory and not plausible.  The argument

should be rejected as Professor Xi has provided plausible grounds to allow this issue to proceed

to discovery, including facts that demonstrate bias on the part of defendant Haugen.

The specific paragraphs in the SAC alleging discrimination based on race and ethnicity,

¶¶ 68-69, must be evaluated not only with respect to the other criminal cases cited therein where

criminal indictments against *three other Chinese-American scientists* were dismissed pre-trial

based on a failure of proof, but also with respect to the extraordinary misconduct alleged as to

defendant Haugen's investigation.  As discussed above, defendant Haugen deliberately provided

false and fabricated evidence to the prosecutor in order to secure an indictment against Professor

Xi in a case in which there was *no* evidence of unlawful conduct.  The investigation was

predicated on the notion that Professor Xi, as a Chinese-American scientist conducting research

on cutting edge matters in his field of expertise, must have been doing so for an illicit purpose.

At this juncture in the proceedings, there is nothing else to explain why defendant Haugen would

so thoroughly and blatantly misrepresent the evidence and fail to undertake the most basic

investigative steps that would have avoided the false allegations in the indictment and precluded

Professor Xi's prosecution.  Thus, there are not only allegations of racial or ethnic hostility to

35

plaintiff, but conduct entirely consistent with that hostility and discriminatory intent, and a larger pattern of conduct with other Chinese-American scientists.

Professor Xi has the burden to allege facts sufficient to show intentional discrimination, but the law is also clear that circumstantial evidence is sufficient to show discriminatory intent at trial, much less at the motion to dismiss stage.  In *Pitts v. State of Delaware*, 646 F.3d 151 (3d Cir. 2011), the Third Circuit affirmed a jury verdict finding an equal protection violation where the defendant police officer arrested plaintiff in circumstances that suggested racial bias.  In *Pitts*, the defendant officer responded to a call concerning a fight between two men, one black and one white.  The officer arrested the black man (plaintiff Pitts) at the scene, and later also filed an affidavit of probable cause for the arrest of the white man.  The Court sustained the intentional race bias claim on the grounds that the officer (1) inaccurately reported critical facts regarding the incident, (2) did not properly investigate the case before arresting the plaintiff, (3) filed charges not supported by the evidence, and (4) provided far more details against Pitts than the other participant.  Here, defendant Haugen engaged in even more serious misconduct, as he fabricated evidence and provided knowingly false information to prosecutors.  In *Pitts*, there was a dispute regarding who instigated the fight and who may have been engaged in criminal conduct, while in the case at bar there was no evidence supporting criminal charges against Professor Xi.

Defendant Haugen relies on *United States v. Armstrong*, 517 U.S. 456 (1996), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), but neither case is dispositive.  *Armstrong* is a *selective prosecution*, not a *selective enforcement* case and therefore the strong presumption of

prosecutorial privileges and presumption of constitutional actions does not apply.[15]  Moreover,

the fact that Professor Xi at this point in the case, without discovery, cannot point to a similar

case where a person of a different race or ethnicity was not investigated is not fatal to his claim.

By the very nature of the allegations, there would not be such a case since the impetus—indeed

the driving theory—for the investigation was defendant Haugen's belief that Professor Xi, a

Chinese-American scientist, must be sharing information and ideas with colleagues in China in

violation of the law *because* of his Chinese ethnicity.  Further, in *Iqbal,* unlike in this case, it

would have been possible for the plaintiffs to show that other inmates in the federal jail or prison

system who were suspected of terrorist activity were not subjected to the conditions of

confinement alleged in that case.  After all, terrorists come from all different races and ethnic

backgrounds.  Here, by contrast, in a case where there was no valid evidence of criminal

conduct, and where Professor Xi alleges ethnic discrimination in the context of scientific

dialogues and research by Chinese-American scientists with Chinese scientists, one could not

reasonably expect to find a comparative prosecutorial investigation of a person of a different race

or ethnicity.

### 2.    The constitutional rights were clearly established.

In a one-page *pro forma* argument, defendant Haugen asserts that even if his conduct

violated the Fourth or Fifth Amendments, he is entitled to immunity from suit on the ground that

the rights asserted by the plaintiffs were not clearly established.  Once again, defendant Haugen

---

[15]    The Third Circuit distinguished between selective prosecution and selective enforcement claims in *United States v. Washington*, 809 F.3d 193, 219-221 (3d Cir. 2017), where the Court held that pretrial discovery on a selective enforcement claim could be appropriate when a criminal defendant makes a proffer that supports "a reasonable inference of discriminatory intent and non-enforcement," that such proffer may be based on "patterns of prosecutorial decisions," and that, prior to discovery, the defendant need not show similarly situated persons of a different race were not arrested by law enforcement.

relies on general and conclusory arguments, and once again he ignores the consistent and unbroken line of cases that makes clear that a law enforcement officer who intentionally, knowingly, or recklessly provides false, misleading, or fabricated evidence to support a criminal prosecution or to secure a search warrant has no qualified immunity from suit.  *See, e.g., Andrews*, 853 F.3d at 705 ("We need not dwell on [the question of whether the rights at issue were clearly established at the time] . . . the right to be free from arrest except on probable cause, was clearly established at the time . . . the right to be free from prosecutions on criminal charges that lack probable cause was also known and clearly established at the time") (internal quotation marks and citations omitted); *Miller*, 866 F.3d at 395 (arrest and detention based on false pretenses violates clearly established law); *Dufort*, 876 F.3d at 354 (same); *Humbert*, 866 F.3d at 556-57, 561-62 (no reasonable basis for officer to believe that there was probable cause for an arrest based on the "emotional" reaction of a witness to suspect's photo without an actual identification; "allegations of falsity or material omissions" sufficient to defeat immunity argument).

Finally, qualified immunity is not a defense simply because the precise facts that establish the malicious prosecution, fabrication of evidence, or arrests or searches without probable cause in a particular case are different from those in previously decided cases.  As the court in *Morse,* 804 F.3d at 550, stated:

> Although there is no prior decision of ours precisely equating the fraudulent omission of factual information from a document with the affirmative perpetration of a falsehood, *Ricciuti* and its progeny, including *Zahrey*, clearly establish that 'qualified immunity is unavailable on a claim for denial of the right to a fair trial where that claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find.'. . .  As discussed in detail above, because there is no plausible legal distinction between misstatements and omissions that we can perceive in this context, we conclude that it was not

> 'objectively legally reasonable' for the defendants in this case to
> believe that it was permissible for them to knowingly make
> material omissions in the creation of the billing summaries, thereby
> knowingly altering evidence during a criminal investigation.

*See also, Hope v. Pelzer,* 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their

conduct violates established law even in novel factual circumstances."); *Schneyder v. Smith*, 653

F.3d 313, 330 (3d Cir. 2011); *Sterling v. Borough of Minersville*, 232 F.3d 190, 197 (3d Cir.

2000).  Claims of malicious prosecution, fabrication of evidence, or falsification of facts in

support of warrants will invariably present unique facts, but the unifying theme that defeats

qualified immunity in these cases is proof of the defendants' intentional, knowing, or reckless

material representations.  Given Professor Xi's extensive pleading demonstrating such conduct,

defendant Haugen is not protected by qualified immunity.

## V.      THE FTCA CLAIMS AGAINST DEFENDANT UNITED STATES

The United States moves to dismiss the claims under the FTCA on the grounds (1) that

the discretionary function exception defeats all claims, and (2) that several of the specific claims

based on state law tort analogues are not cognizable under the FTCA.  The United States'

arguments are wholly without merit.

### A.      The Discretionary Function Exception Does Not Apply

The United States argues that the conduct of defendant Haugen was discretionary in

nature and, therefore, is exempted from liability under the FTCA.  United States Memo. in

Support of Mot. to Dismiss ("US-MTD") at 5-9.  In support, the government argues that under

*United States v. Gaubert*, 499 U.S. 315 (1991), a court must consider public policy and the

nature of the governmental activity (here, law enforcement officers investigating criminal

conduct) and that these types of investigations are almost always discretionary in nature.   But

courts have made clear that whatever the scope of discretion with respect to investigations

generally, there is no discretion to violate the Constitution and unconstitutional conduct is

actionable under the FTCA.  *See Loumiet v. United States*, 828 F.3d 935, 945 (D.C. Cir. 2016);

*Limone v. United States*, 579 F.3d 79, 102 (1st Cir. 2009); *Nguyen v. United States*, 556 F.3d

1244, 1256 (11th Cir. 2009); *see also Reynolds v. United States*, 549 F.3d 1108, 1113 (7th Cir.

2008) (where state law makes it illegal to provide false information to a prosecutor, there is no

discretion to do so and no defense under FTCA); *Nurse v. United States*, 226 F.3d 996, 1002 (9th

Cir. 2000) (government concedes that claims of false imprisonment and invasion of privacy are

actionable); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987).

The United States ignores this line of cases and argues that the Third Circuit has applied

the discretionary function defense in similar circumstances, citing *Pooler v. United States*, 787

F.2d 868 (3d Cir. 1986), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50

(2013).  This argument is disingenuous on two levels.  First, the court in *Pooler* specifically

noted that the plaintiff had not alleged a constitutional claim and stated that "if the complaint

were that agents of the government in the course of an investigation had violated the

constitutional rights or federal statutes, *the outcome would be different since federal officials do

not possess discretion to commit such violations*." 787 F.2d at 871 (emphasis added).  Second, as

noted, the ruling in *Pooler* that the FTCA provides grounds for recovery for intentional torts by

law enforcement officials only where they are empowered to engage in searches, seizure of

evidence, or making an arrest was squarely rejected by the Supreme Court in *Millbrook*, 569

U.S. 50 (2013).  There, the Court gave a broad reading to the law enforcement intentional tort

cause of action under the FTCA, thus undermining even further the government's claim to a

discretionary function defense in these cases.  *See also Bunch v. United States*, 880 F.3d 938,

945 (7th Cir. 2018) ("broad reading of law enforcement proviso" supported by *Millbrook*).

Under these settled principles, since plaintiffs allege violations of the Fourth and Fifth

Amendments in connection with the conduct underlying their specific FTCA claims for relief,

the discretionary function exception to liability is inapplicable.  The government's arguments

that no constitutional violations are stated are the same as made by defendant Haugen: no

plausible factual allegations; mere negligence; and the defense of probable cause.  Plaintiffs have

shown those arguments to be meritless, *see supra* § IV.B.1.a, and they should be rejected with

respect to plaintiffs' FTCA claims as well.[16]  Moreover, the discretionary function exception is

an affirmative defense under the intentional tort provisions of the FTCA, and any factual

disputes preclude summary judgment or a motion to dismiss.  *See Bunch v. United States*, 980

F.3d 938 (7th Cir. 2018).

### B.        Plaintiffs Establish Their Common Law Tort Claims.

The United States argues that each of plaintiffs' common law claims should be dismissed

on the merits.  On Counts Four and Nine, the malicious prosecution and negligence counts, the

government seeks dismissal on a single basis—that the Indictment demonstrates probable cause.

This argument fails for the same reason that it fails on Professor Xi's constitutional claim: that

the indictment was procured on the basis of deliberately or recklessly false material

misstatements and omissions.  Likewise, the government's argument as to Count Five, the

intrusion upon seclusion count, relies on the sole contention that search warrants and court orders

authorized the intrusions on plaintiffs' privacy.  This argument fails, too, because the search

warrants and court orders were obtained through Haugen's deliberately or recklessly false

material misrepresentations and omissions.

---

[16]        There is no qualified immunity defense to claims under the FTCA.  *Castro v. United States*, 34 F.3d 106 (2d Cir. 1994).

The United States seeks dismissal of Count Six, the false light claim, arguing only lack of jurisdiction under the FTCA with regard to claims of defamation.  This argument fails because a Pennsylvania false light claim is distinct from the common law defamation claims that are exempt under the FTCA.  Finally, the government argues that in Counts Seven and Eight, the intentional and negligent infliction of emotional distress claims, plaintiffs have failed to plead sufficient facts to state a claim.  This argument ignores relevant case law finding that the conduct alleged was both extreme and outrageous and that plaintiffs Qi Li and Joyce Xi contemporaneously observed the torts being committed upon Professor Xi.  In short, none of the United States' arguments provides a basis for dismissal of any of plaintiffs' FTCA claims.

1.   The indictment was procured through intentional, knowing, and reckless communication of materially false information to the prosecutor and the grand jury.

Defendant United States moves for the dismissal of Count Four, the FTCA malicious prosecution count, and Count Nine, the FTCA negligence count, on the sole basis that the Indictment demonstrates probable cause.  US-MTD at 9-11.  Yet, as the government concedes, any presumption of probable cause based on the Indictment is rebutted if the Indictment was "procured by fraud, perjury or other corrupt means."  *Id.* at 10 (citing *Rose v. Bartle*, 871 F.3d 331, 353 (3d Cir. 1989)); *see also Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (presumption of probable cause rebutted if indictment was obtained "'by wrongful acts on the part of the police,' including 'fraud, perjury, [or] the suppression of evidence'" (quoting *McClellan v. Smith*, 439 F.3d 137, 145 (2d Cir. 2006))).

As the United States' argument here is essentially the same as defendant Haugen's argument to dismiss the constitutional malicious prosecution claim, Professor Xi incorporates his arguments made above.  *See supra* § IV.B.1.a.  The SAC alleges specific false representations

42

and material omissions of fact that defendant Haugen intentionally, knowingly, and recklessly communicated to the prosecutor and which caused the prosecutor to seek the Indictment.  SAC ¶¶ 54-58.  Haugen repeated these false representations when he testified before the grand jury, and these false representations were included in the Indictment. SAC ¶¶ 26, 28, 30, 49, 50 & 54.  For example, Haugen knew that diagrams of devices Professor Xi discussed with scientists in China and sent via email to China were not of the STI pocket heater, but were of separate and unrelated devices of Professor Xi's own invention.  SAC ¶¶ 55(a), 55(e).  Indeed, an inventor of the STI pocket heater told Haugen that the diagrams in question "were not related to the STI pocket heater but, rather, the HPCVD process Professor Xi invented."  *Id.* ¶ 55(a).  Yet, Haugen represented the opposite to the prosecutor and to the grand jury.  *Id.* ¶¶ 54-55.  Haugen's misrepresentations were then repeated in the indictment returned by the grand jury.  *Id.* ¶¶ 30, 49.

The United States characterizes Haugen's misrepresentations as mere mistakes rather than intentional, knowing, and/or reckless misrepresentations.  US-MTD at 10-11.  But, like defendant Haugen, the United States fails to accept the SAC's allegations as true: (1) that Haugen knew the devices discussed and the diagrams sent were not of the STI pocket heater and (2) that, despite this knowledge, Haugen intentionally informed the prosecutor and the grand jury that the devices and diagrams Professor Xi discussed in his emails were of the STI pocket heater.  SAC ¶ 54-55.  The SAC contains several other examples of specific false representations made by Haugen, which were communicated to the prosecutor, which were part of Haugen's false testimony before the grand jury, and which led to the procurement of the Indictment.  *Id.* ¶¶ 54-55.  These paragraphs identify both the person who presented false information as well as the substance of the false information.

With these factual assertions, the SAC sufficiently alleges that the Indictment was obtained through Haugen's presentation of knowingly false representations to the prosecutor, as evidenced by his false testimony to the grand jury.  These allegations, therefore, suffice to rebut any presumption of probable cause arising from the return of the Indictment.  The United States' motion to dismiss Counts Four and Nine of the SAC should be denied.

2.      Invalid warrants or court orders cannot justify an unlawful search.

The United States' only argument in support of its request to dismiss Count Five, the intrusion upon seclusion claim, is that defendant Haugen's searches were under the lawful authority of search warrants or court orders.  Like the prior argument, this argument ignores allegations in the SAC that the search warrants and court orders were obtained through Haugen's "deliberate and/or reckless falsifications and withholding of evidence" or through Haugen's making or causing to be made "known and/or reckless false statement and representations and material omissions of facts" in the applications or affidavits for court orders or warrants.  SAC ¶¶ 59, 67.  When a defendant executes a search pursuant to an invalid warrant issued on the basis of deliberate or reckless misrepresentations, the defendant has committed a tort under state law. *Bamont v. Pennsylvania Society for the Prevention of Cruelty to Animals*, 163 F. Supp. 3d 138, 145-46, 153-54 (E.D. Pa. 2016) (where plaintiff pled that search warrant affidavit was based on deliberate or reckless misstatements and omissions of fact, tort claims for trespass and intrusion upon seclusion would not be dismissed); *see also Boone v. City of Chicago*, No. 16-cv-11510, 2018 WL 1014509, at *2 (N.D. Ill. Feb. 22, 2018) (where officer intentionally or recklessly uses false information to procure an invalid search warrant and then proceeds to detain the occupants of the residence to be searched, a valid state tort claim for false arrest has been stated); *Al-Dahir v. United States*, No. 08-cv-4502, 2010 WL 3922177, at *3 (E.D. La. Sept. 30, 2010) (allowing

44

state claims for abuse of process and false imprisonment to proceed where plaintiffs allege that search warrant at issue was obtained as a result of the knowing submission of false information).[17]

          3.     <u>A Pennsylvania false light claim is actionable under the FTCA.</u>

Under Pennsylvania law, a false light invasion of privacy claim is distinct from the common law claims of libel and slander, and therefore Count Six remains actionable under the FTCA. Under the generally accepted common law definition of defamation, there can be no liability where the statements at issue are true.[18] "One who publishes a defamatory statement of fact is not subject to liability for defamation if the statement is true." Restatement (Second) of Torts § 581A (1977). Under this definition, there is no liability for the common law tort of defamation for causing the dissemination of press releases describing the true fact that Professor Xi had been indicted for charges relating to being a technological spy for China. SAC ¶ 75.

However, in Pennsylvania, liability for false light invasion of privacy may be imposed even when the published material is literally true. *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014). If truthful material is presented "in a fashion which renders [it] susceptible to inferences casting [the plaintiff] in a false light," a false-light claim can succeed. *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1189 (Pa. Super. 1988) (en banc). Other district courts in the

---

[17]     The United States' reliance on *O'Donnell v. United States*, 891 F.2d 1079 (3d Cir. 1989), US-MTD at 12, is misplaced. There was no dispute in that case that the Veterans Administration believed it had the legal authority to release plaintiffs' psychiatric records. 891 F.2d at 1084. Here, however, the SAC alleges that Haugen deliberately or recklessly made material misstatements or omissions of fact in obtaining court orders and search warrants for the search of plaintiffs' communications, properties, and belongings.

[18]     Libel and slander are the two forms of defamation. *See* Restatement (First) of Torts § 568 (1938), cmt. (b).

Third Circuit have distinguished claims of false light from claims of libel and slander, finding

that Pennsylvania false light claims are actionable under the FTCA.  *See Ruddy v. United States*,

No. 3:11-cv-1100, 2011 WL 5834953, at *3-4 (M.D. Pa. Nov. 21, 2011) (holding that the

libel/slander exception did not bar plaintiff's false light claim, but dismissing the claim for lack

of specificity and granting leave to amend); *George v. Rehiel*, No. 10-cv-586, 2011 WL

10621600, at * 5 (E.D. Pa. Oct. 28, 2011) *vacated on other grounds and remanded,* 738 F.3d 562

(3d Cir. 2013) ("For purposes of the FTCA, the tort of false light does not arise out of the tort of

defamation.").[19]

Professor Xi's false-light claim is based on the dissemination of truthful information

(e.g., the fact that he was arrested and indicted for being a spy for China) that nonetheless cast

him in a false light because he was *not* in fact a spy for China.  Since the dissemination of this

truthful information could not have given rise to an action for libel or slander (under their

common law definitions), the false-light claim is distinct from a defamation claim and remains

actionable under the FTCA.  The motion to dismiss Count Five should be denied.

### 4.    Professor Xi sufficiently alleges "extreme and outrageous" conduct.

Defendant United States moves for dismissal of Count Seven, the intentional infliction of

emotional distress claim, arguing in a single paragraph that the conduct alleged in the complaint

fails to rise to "extreme and outrageous conduct" that goes "beyond all possible bounds of

decency" and is "utterly intolerable in a civilized society."  US-MTD at 13.  The United States

ignores specific and detailed allegations which, at the motion to dismiss stage, are more than

---

[19]    While the Third Circuit reversed the district court's denial of qualified immunity on the
*Bivens* claims in *George*, other claims, including the FTCA claims, proceeded.

sufficient to plead outrageous conduct.[20]  Defendant Haugen and other agents went to Professor

Xi's house early in the morning with guns drawn and a battering ram ready.  SAC ¶¶ 33-34.

They woke him with loud and aggressive knocks, pointed guns in his face, and arrested him.  *Id.*

¶¶ 32-33, 78.  While taking Professor Xi into custody, the agents held at gunpoint plaintiff Qi Li,

plaintiff Joyce Xi, and Professor Xi's younger daughter, who, at the time, was only 12 years old.

*Id.* ¶¶ 34, 78.  Professor Xi was taken from his home to the FBI's Philadelphia field office where

he was subjected to a strip search, DNA sampling, a mug shot, fingerprinting, and a two-hour

interrogation.  *Id.* ¶¶ 36-37.  All of these actions were taken pursuant to criminal charges that

were based on deliberately or recklessly false statements by Haugen, who was motivated by

Professor Xi's race and ethnicity.  *Id.* ¶¶ 54, 69-70.  These allegations are sufficient to "arouse

[an average member of the community's] resentment against the actor, and lead him to exclaim,

'Outrageous!'" *Hunger v. Grand Cent. Sanitation*, 670 A.2d 173, 177 (Pa. Super. 1996) (quoting

Restatement (Second) of Torts § 46, cmt. d).

---

[20]     At the motion-to-dismiss stage, even potentially questionable claims for intentional
infliction of emotional distress should be sustained and allowed to proceed to discovery. *See
Martin v. Finley*, No. 3:15-CV-1620, 2017 WL 626752, at *6 (M.D. Pa. Feb. 15, 2017)
("[W]hile there is a serious question in the Court's mind as to whether Plaintiff can establish the
exacting requirement of [an intentional infliction of emotional distress] claim, such an issue is
better resolved on summary judgment."); *Scutella v. Cousins*, No. 1:15-CV-00253-BR-SPB,
2016 WL 5402718, at *3 (W.D. Pa. Sept. 28, 2016) (holding that the "[p]laintiff's claim for
intentional infliction of emotional distress, though extremely tenuous, must proceed" where the
plaintiff alleged that defendant police officers impounded his car and conspired to mislead him
into filing a false police report in order to retaliate against him for filing a civil rights lawsuit);
*Ponzini v. Monroe Cnty.*, 897 F. Supp. 2d 282, 290 (M.D. Pa. 2012) (denying motion to dismiss
intentional infliction of emotional distress claim against prison medical staff who denied
plaintiffs' relative access to needed psychiatric medicine, despite "serious reservations about the
validity of th[e] claim[,]" because it was "adequately pleaded, [] supported by sufficient factual
allegations . . . and should properly proceed to discovery"); *Shipkowski v. U.S. Steel Corp.*, 585
F. Supp. 66, 67 (E.D. Pa. 1983) (refusing to dismiss intentional infliction of emotional distress
claim against employer who dismissed employee for stealing four paint brushes because "[t]he
issue before the court is not . . . whether plaintiff will ultimately prevail, but whether, he is
entitled to offer evidence in support of his claim.").

Where one "knowingly institut[es] false criminal charges," he has engaged in outrageous conduct. *Kovalev v. City of Philadelphia*, No. CV 16-6380, 2017 WL 770945, at *11 (E.D. Pa. Feb. 28, 2017).  In *Kovalev*, a municipal employee fabricated an accusation to law enforcement that the plaintiff was acting in a disorderly manner, leading to his exclusion from areas of a public government building.  *Id.*  Even though no criminal charges were actually filed, the court sustained the plaintiff's claim for intentional infliction of emotional distress. *Id.*; *see also Sheare v. Borough of Olyphant*, No. 3:11–CV–1639, 2012 WL 2527022, at *9 (M.D. Pa. June 29, 2012) (holding that allegations that defendant officer arrested plaintiff without probable cause on charges he knew were false supported intentional infliction of emotional distress claim); *Dempsey v. Bucknell Univ.*, No. 4:11-CV-1679, 2012 WL 1569826, at *24 (M.D. Pa. May 3, 2012) (holding that campus safety officers' arresting plaintiff on assault and other charges after learning that allegations were false satisfied "extreme and outrageous" standard); *Minscalco v. Gordon*, 916 F. Supp. 478, 480-81 (E.D. Pa. 1996) (allowing intentional infliction of emotional distress claim against constable who allegedly altered an Order of Execution enabling him to seize the plaintiff's personal property); *Gilbert v. Feld*, 788 F. Supp. 854, 857, 862 (E.D. Pa. 1992) (allowing intentional infliction of emotional distress claim to proceed against a detective who signed an affidavit of probable cause which he knew contained false and misleading statements).

The United States relies on a single case, *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343 (E.D. Pa. 2012), where TSA agents were alleged to have purposely damaged the plaintiff's belongings (because she requested a private screening) and then fabricated an assault charge against her because she threatened to report their misconduct, leading to her arrest and detention. *Id.* at 350-53. The court ruled that the allegations did not rise to the required level of

48

extreme and outrageous conduct. *Id.* at 359.  Professor Xi's allegations, by contrast, show far more invasive and indefensible conduct.  First, FBI agents invaded Professor Xi's home, while in *Pellegrino*, where TSA officers were performing their normal duties at an airport, there was no comparable invasion of the plaintiff's privacy.  Second, the FBI agents who arrested Professor Xi had guns drawn and a battering ram at the ready, while there were no weapons involved in the allegations in *Pellegrino*.  Third, the FBI agents forced Professor Xi's wife and daughters (one only twelve years old at the time) out of their bedrooms at gunpoint; in *Pellegrino*, there was no familial relationship involved.  *See Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1994) (noting that Pennsylvania courts have been particularly amenable to intentional infliction of emotional distress claims "when they involve the special relationship between . . . a parent and child").  Finally, Professor Xi's complaint involves specific, credible allegations of ethnic and racial discrimination.   The government's arguments thus provide no basis for dismissal of Professor Xi's intentional infliction of emotional distress claim.

5.   Plaintiffs Qi Li and Joyce Xi sufficiently state a claim for negligent infliction of emotional distress.

The United States argues that plaintiffs Qi Li and Joyce Xi fail to plead the elements of negligent infliction of emotional distress.  US-MTD at 14.  But the SAC properly alleges all that is necessary to support this claim: that plaintiffs Qi Li and Joyce Xi (1) "had a contemporaneous perception of tortious injury to a close relative" and (2) that they suffered "immediate and substantial physical harm."  *Doe v. Philadelphia Community Health Alternatives AIDS Task Force*, 745 A.2d 25, 27-28 (Pa. Super. 2000).

With regards to the first element, Qi Li and Joyce Xi were present in the home when federal agents arrested Professor Xi on false charges.  They observed their husband/father being held at gunpoint, being handcuffed, and being physically removed from their home.  They

observed Professor Xi as he suffered through the process of defending himself against a malicious prosecution instigated by deliberately or recklessly false representations.  In arguing that these allegations do not constitute a "tortious injury," the United States fails to provide any authority requiring that the injury observed by Qi Li and Joyce Xi require a physical impact.  Nor could it do so.  Even if such physical impact were required, however, the actions of holding Professor Xi at gunpoint, handcuffing him, and physically leading him out of his home constitute physical impact, however slight.  *Tomikel v. Com., Dept. of Transp.*, 658 A.2d 861, 864 (Pa. Commw. 1995) ("Where it is definitely established that injury and suffering were proximately caused by an act of negligence, and any degree of physical impact, however slight, can be shown, recovery for such injuries and suffering is a matter for the jury's determination.").

Additionally, all three plaintiffs adequately allege that they suffered physical harm. Plaintiffs allege depression, anxiety, difficulty sleeping, nightmares, loss of appetite, physical and mental exhaustion, weight loss, physical pain caused by emotional distress which required physical therapy, and other injuries.  SAC ¶¶ 76, 95-97.  Pennsylvania courts have held that such injuries are sufficient to warrant recovery.  *See Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. 1992) (physical manifestations of emotional harm such as "symptoms of severe depression, nightmares, stress and anxiety" sufficient to establish physical injury for claim of negligent infliction of emotional distress); *Crivellaro v. Pennsylvania Power & Light Co.*, 491 A.2d 207, 210 (Pa. Super. 1985) (cause of action for negligent infliction of emotional distress stated where plaintiff averred "headaches, shaking, hyperventilation, nightmares, shortness of breath, lack of control over the bowels, and tightening of the muscles in the neck, back, and chest").

For these reasons, plaintiffs Qi Li and Joyce Xi have sufficiently alleged that they contemporaneously observed a tortious injury to Professor Xi and that they suffered physical harm as a result.  The government's request to dismiss this claim should be denied.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs Xiaoxing Xi, Qi Li, and Joyce Xi respectfully request that the Court deny the motions to dismiss of defendant Haugen and United States.

Respectfully submitted,

/s/ David Rudovsky
David Rudovsky
Jonathan H. Feinberg
Susan M. Lin
KAIRYS, RUDOVSKY, MESSING, FEINBERG
   & LIN LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
(215) 925-5365 (fax)

Patrick Toomey
Ashley Gorski
Jonathan Hafetz
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
(212) 549-2654 (fax)
ptoomey@aclu.org

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Susan M. Lin, hereby certify that on April 9, 2018 the foregoing Plaintiffs'

Consolidated Response in Opposition to Defendants Haugen's and United States'

Motions to Dismiss Complaint was filed via the Court's ECF system and, as such, was

served on the below counsel:

> Paul E. Werner
> Trial Attorney
> United States Department of Justice
> Civil Division, Tort Branch
> P.O. Box 7146
> Washington, D.C. 20044
> Paul.Werner@usdoj.gov
>
> Elizabeth Tulis
> Trial Attorney
> United States Department of Justice
> Civil Division, Federal Programs Branch
> P.O. Box 883
> Washington, D.C. 20044
> Elizabeth.Tulis@usdoj.gov

> /s/ Susan M. Lin_____
>
> Susan M. Lin