**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

XIAOXING XI, *et al.*,

             Plaintiffs,

    v.

FBI SPECIAL AGENT ANDREW
HAUGEN, *et al.*,

             Defendants.

Civil Action No. 17-2132

**THE UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFFS' COMMON LAW CLAIMS AGAINST IT**
**IN THE SECOND AMENDED COMPLAINT**

In its opening motion, the United States demonstrated that under the limited waiver of

sovereign immunity provided by the Federal Tort Claims Act (FTCA), the common law claims

brought by Plaintiffs Xiaoxing Xi, Qi Li, and Joyce Xi must be dismissed. The discretionary-

function exception bars all their claims, the exception to claims for libel and slander bars their

false light claim, and their other claims fail on the merits. In response, Plaintiffs rely primarily on

irrelevant case law and unpublished district court decisions. They thereby fail to rebut the United

States' showing. Their common law claims should be dismissed.

**I.**     **The Discretionary-Function Exception Bars All of Plaintiffs' Claims.**

As the United States explained in its motion, under longstanding Third Circuit precedent,

the discretionary-function exception applies to Plaintiffs' claims, which challenge the conduct,

quality, and thoroughness of an investigation. *See* Doc. 34, US MTD, at 5-9 (discussing *Pooler*

*v. United States*, 787 F.2d 868 (3d Cir. 1986), *abrogated on other grounds by Millbrook v.*

*United States*, 569 U.S. 50 (2013)). Plaintiffs' argument that their complaint alleges

constitutional violations, which therefore places their common law claims beyond the ambit of

the discretionary-function exception, relies on dicta and precedent from other circuits, ignores relevant Supreme Court case law, and threatens to swallow the exception whole through artful pleading.

**A. Plaintiffs rely on dicta and ignore relevant Supreme Court precedent.**

Plaintiffs' discussion of *Pooler* is a case in point. *Pooler*'s statement that if the complaint had included allegations of constitutional violations, the outcome regarding application of the discretionary-function exception would have been different, *see* Doc. 41, Opp'n, at 40 (quoting 787 F.2d at 871), is simply dicta. Plaintiffs cite no Third Circuit case affirmatively holding that where a plaintiff merely pleads a constitutional violation, without more, the discretionary-function exception does not apply. *See id.*[1]

Moreover, the *Pooler* court's dicta preceded the Supreme Court's decisions in *Berkovitz v. United States*, 486 U.S. 531 (1988), and *FDIC v. Meyer*, 510 U.S. 471 (1994), both of which prove incorrect the dicta in *Pooler* and other Third Circuit cases regarding the discretionary-function exception and allegations of constitutional violations. In *Berkovitz*, the Court held that the discretionary-function exception does not apply to failures to act pursuant to "specific mandatory" federal statutes or agency regulations. 486 U.S. at 544. Where a statute or regulation, however, prescribes a general course of action but leaves to agency discretion how to implement that course of action, the discretionary-function exception applies. *Id.* at 546 (holding that exception applies to regulations empowering agency to examine vaccine lots and prevent

---

[1] Plaintiffs fail to cite two other Third Circuit cases containing similar dicta. *U.S. Fid. & Guaranty Co. v. United States*, 837 F.2d 116 (3d Cir. 1988), stated in dicta a point similar to that in *Pooler*. *See id.* at 120. And *Prisco v. Talty*, 993 F.2d 21 (3d Cir. 1993), stated in dicta that where the court had already determined the violation of a clearly established right, the discretionary-function exception would not apply. *See id.* at 26 n.14. Regardless, as discussed above, neither case's dicta rebuts the United States' showing.

distribution of noncomplying lots). Thus, under *Berkovitz*, for a statute to preclude application of the discretionary-function exception, it must be both "mandatory" and "specific."

Under that precedent, allegations of general constitutional violations, without more, do not remove those acts from the discretionary-function exception, contrary to Plaintiffs' reading of *Pooler*. Rather, even assuming that under some circumstances, a constitutional violation *could* render inapplicable the discretionary-function exception, such a violation would need to be "specific," and could not be an alleged violation of broad constitutional principles such as "probable cause" and "due process."

Indeed, two of the cases upon which Plaintiffs rely, *see* Doc. 41, Opp'n, at 40, implicitly acknowledge this point. In *Nurse v. United States*, 226 F.3d 996 (9th Cir. 2000), after stating in dicta that "[i]n general," government conduct that violates a "legal mandate" cannot be discretionary, the Ninth Circuit made clear that it was not determining "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor." *Id.* at 1002 & n.2. And in *Limone v. United States*, 579 F.3d 79 (1st Cir. 2009), the First Circuit noted that the "district court determined that the FBI's conduct in this case violated the Constitution." *Id.* at 101. *See also Prisco*, 993 F.2d at 26 n.14 (noting that district court already found a clearly established violation). Similarly, the decision in *Loumiet v. United States*, 828 F.3d 935 (D.C. Cir. 2016), merely held that the district court erred in its "broad-brush approach" when it stated that as a general matter, the discretionary-function exception applies to constitutionally defective actions. *Id.* at 946. *Loumiet* left "for another day" the question of whether the exception applies to violations of constitutional rights "that are not already clear," *id.*, a question to which the *Berkovitz* court supplies an answer.

Insisting on specific constitutional curbs on official discretion before imposing FTCA liability makes sense and is hardly novel. The Constitution's broad commands often give no clear answer as to what limits they place on Executive Branch agents' exercise of discretion in carrying out their duties. And so the law protects that discretion by immunizing the agent himself from liability in all cases in which the Constitution does not clearly proscribe his actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (to defeat qualified immunity the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). *Berkovitz* makes the § 2680(a) situation roughly analogous. *See* 486 U.S. at 544. Absent constitutional specificity, an officer cannot be said to lack discretion in the sense contemplated under § 2680(a). And so here, where Plaintiffs fail to allege facts showing the violation of any circumstantially clear constitutional command, *cf.* Doc. 35, Haugen MTD, at 18-25 (addressing *Harlow* qualified immunity), the discretionary-function exception bars their claims.

The *Pooler* dicta also preceded *FDIC v. Meyer*, in which the Court explicitly held that constitutional violations are not cognizable under the FTCA's jurisdictional grant, 28 U.S.C. § 1346(b). *See* 510 U.S. at 478. But an interpretation of the FTCA whereby the discretionary-function exception does not apply to such violations would have that very effect, essentially turning the FTCA into a vehicle for obtaining review of constitutional claims. The language of 28 U.S.C. § 2680(a) suggests Congress intended no such thing. It makes irrelevant "whether or not the discretion involved be abused." *Id.* Additionally, it does not allow a claim based on an official's due care in carrying out an unconstitutional *statute*. It says the FTCA "shall not apply to—[a]ny claim based upon . . . due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." *Id.* And it suggests no reason to think Congress meant to

4

treat claims based on officials' unconstitutional performance of discretionary functions differently. Nor does it matter that the substantive law applied to determine ultimate liability would be state law. In effect, what would occur under Plaintiffs' interpretation is that the United States would be held liable (under state law of course) for tortious actions to the extent they are demonstrated (or alleged, per Plaintiffs' approach) to be unconstitutional. Rather than go that route, several district court cases in this district have recognized that *Pooler*'s dicta is not applicable, and have applied the discretionary-function exception to FTCA claims where plaintiffs alleged constitutional violations. *See Barbieri v. United States*, No. 16-cv-3748, 2017 WL 4310255, at *6 (E.D. Pa. Sept. 28, 2017) (Goldberg, J.); *Lozada v. United States*, No. 07-cv-4740, 2008 WL 2152051, at *4 (E.D. Pa. May 21, 2008) (Schiller, J.); *but see Muhammad v. United States*, 884 F. Supp. 2d 306, 313 (E.D. Pa. 2012) (McLaughlin, J.); *Garcia v. United States*, 896 F. Supp. 467, 473 (E.D. Pa. 1995) (Van Antwerpen, J.).

The other cases Plaintiffs cite, Doc. 41, Opp'n, at 40, contain dicta only, like *Pooler*, or do not address the United States' showing. *See Nguyen v. United States*, 556 F.3d 1244, 1256 (11th Cir. 2009) (dicta); *Reynolds v. United States*, 549 F.3d 1108, 1113 (7th Cir. 2008) (citing *Pooler* to explain that "challenges to the quality of an investigation or prosecution are generally barred by the discretionary-function exception," but holding that exception does not apply to violations of state law); *Sutton v. United States*, 819 F.2d 1289, 1293 (5th Cir. 1987) (dicta).

**B.  Plaintiffs' approach would obviate the discretionary-function exception.**

Moreover, under Plaintiffs' theory, a plaintiff could plead constitutional violations in a complaint raising FTCA claims, thereby vitiating the discretionary-function exception. *See Castro v. United States*, 560 F.3d 381, 394 (5th Cir. 2009) ("Under the majority's framework, by a plaintiff's artful pleading, the United States can be liable whenever the Constitution is violated

even though, under *Meyer*, the sovereign is not subject to liability for constitutional torts.")
(Smith, J., dissenting), *rev'd on reh'g en banc*, 608 F.3d 266 (5th Cir. 2010). Such an approach
does not comport with the notion of the FTCA as a "limited waiver of sovereign immunity,"
*Lomando v. United States*, 667 F.3d 363, 373 n.8 (3d Cir. 2011) (citation omitted), that does not
include a waiver for constitutional violations.

### C. *Millbrook* is irrelevant to the United States' showing.

Lastly, Plaintiffs' argument that *Pooler* was "undermin[ed]" because it was abrogated,
Doc. 41, Opp'n, at 40, is mistaken. In *Millbrook v. United States*, the Court decided that the
Third Circuit incorrectly held that the "law enforcement proviso" applied only when an officer
committed a tort while executing a search, seizure, or arrest. 569 U.S. at 57. That holding in
*Pooler* was a *separate basis* for denying the plaintiff's FTCA claims, and had no bearing on its
holding regarding the discretionary-function exception's application to challenges to the quality
of an investigation. *See* 787 F.2d at 871-72. Accordingly, *Millbrook* does not change the holding
in *Pooler*'s relevance or governing status over this case.

In short, the discretionary-function exception applies. Even assuming it is limited when a
complaint alleges sufficiently specific constitutional violations, Plaintiffs have not alleged such a
specific violation. All of Plaintiffs' claims must therefore be dismissed.

### II.    Plaintiffs' Common Law Claims Each Fail on the Merits.

Even without the discretionary-function exception, each of Plaintiffs' common law
claims fails on its own merits. Plaintiffs have failed to rebut the presumption of probable cause
that Xi's indictment established; the United States reasonably believed it had legal authority to
enter Plaintiffs' house, which disposes of their intrusion upon seclusion claim; under
Pennsylvania law, their false light claim is really a defamation claim, which the FTCA bars; they

do not plead facts establishing a claim for intentional infliction of emotional distress; nor have they pled facts supporting their negligent infliction of emotional distress claim.

### A.  Plaintiffs have failed to rebut the presumption of probable cause.

The United States' opening brief explained that the grand jury indictment of Xi created a presumption of probable cause, thereby disposing of Plaintiffs' malicious prosecution and negligence claims. *See* Doc. 34, US MTD, at 9-11. To rebut that presumption, Plaintiffs were required to produce evidence that the indictment was "procured by fraud, perjury or other corrupt means." *Id.* at 10 (quoting *Rose v. Bartle*, 781 F.2d 331, 353 (3d Cir. 1989)).

They have not done so. As more fully explained in Special Agent Haugen's reply in support of his motion to dismiss, the various portions of their complaint that Plaintiffs cite in an attempt to rebut this presumption mainly contain conclusory allegations that United States officials "knew" they were presenting incorrect information to the grand jury. *See* Haugen Reply at 12-13. And those allegations that contain additional information are insufficient to rebut the presumption of probable cause. They at most demonstrate that the United States allegedly made certain factual mistakes in the complex arena of superconducting thin-film production technologies. Because the United States' reply parallels that of Special Agent Haugen, the United States hereby incorporates by reference the arguments made in Part II.a of Special Agent Haugen's reply. *See* Haugen Reply Part II.a; *see also United States v. Kensington Hosp.*, 760 F. Supp. 1120, 1124 (E.D. Pa. 1991) (addressing arguments certain defendants incorporated by reference into their motions from other defendants' briefs).

To summarize, a plaintiff accusing law enforcement officers of intentionally misrepresenting evidence to induce a prosecution must "state more than the conclusion that '[defendants] did so intentionally.'" *Mills v. Barnard*, 869 F.3d 473, 482 (6th Cir. 2017).

Moreover, "'testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to be wrong.'" *Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016) (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014)). Rather, there must be "'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that evidence is incorrect or that the evidence is offered in bad faith.'" *Id.* Plaintiffs' allegations do not meet those standards. They have not rebutted the presumption of probable cause. This Court should therefore dismiss their malicious prosecution and negligence claims.

**B.  The United States had legal authority to conduct its searches.**

Similarly, Plaintiffs have failed to rebut the United States' showing that it had apparent authority to conduct the alleged searches of Plaintiffs' house and Xi's electronic communications. *See* Doc. 34, US MTD, at 12. In response to the Third Circuit precedent interpreting Pennsylvania law upon which the United States relied, *see id.* (citing *O'Donnell v. United States*, 891 F.2d 1079, 1082-83 (3d Cir. 1989)), Plaintiffs rely mainly on unpublished, out-of-circuit district court cases, which, of course, interpret the law of a state other than Pennsylvania. *See* Doc. 41, Opp'n, at 44 (citing *Boone v. City of Chicago*, No. 16-cv-11510, 2018 WL 1014509 (N.D. Ill. Feb. 22, 2018), and *Al-Dahir v. United States*, No. 08-cv-4502, 2010 WL 3922177 (E.D. La. Sept. 30, 2010)). Those cases therefore have minimal (if any) weight here.

The single case Plaintiffs cite applying Pennsylvania law, *Bamont v. Pennsylvania Society for the Prevention of Cruelty to Animals*, 163 F. Supp. 3d 138 (E.D. Pa. 2016), does not address the United States' showing. In *Bamont*, the state agency argued that the plaintiff's state-law invasion of privacy claim should be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), because during the search of plaintiff's house, evidence was found that led to her conviction, and

her claim "in essence attacks the facts that a search warrant was conducted at her home." *See Bamont*, 163 F. Supp. 3d at 143-45, 154. The court rejected that argument. *Id.* at 154 ("We already rejected Defendant's argument *Heck* bars this claim because she is attempting to challenge her conviction."). The state agency did not argue, as the United States does here, that the invasion of privacy claim should be dismissed because it believed it had legal authority to enter plaintiff's residence. *Id.* at 154. *Bamont* therefore offers Plaintiffs no support.

Moreover, Plaintiffs fail to adequately address *O'Donnell*. Their assertion that "the SAC alleges" that officials "deliberately or recklessly made material misstatements or omissions," Doc. 41, Opp'n, at 45 n.17, refers to the sorts of conclusory allegations that must be ignored. *See id.* at 44 (citing paragraphs of the SAC containing conclusory allegations regarding knowledge and intent). Plaintiffs concede, as they must, that under *O'Donnell*, if officers "believed [they] had the legal authority" to conduct their operations, no tort for intrusion upon seclusion lies. *Id.* at 45 n.17. Setting aside Plaintiffs' conclusory allegations to the contrary, and as explained above and in the United States' opening motion, officials believed they had the legal authority— pursuant to a grand jury indictment and a warrant—to conduct their searches. This Court should therefore dismiss Plaintiffs' intrusion upon seclusion claim.

**C.  Section 2680(h) bars Plaintiffs' false light claim, which is a defamation claim.**

Nor have Plaintiffs explained how their false light claim can proceed under the FTCA. Their assertion that their claim is not one for defamation because under "the generally accepted common law definition of defamation," liability does not attach where a statement is true, Doc. 41, Opp'n, at 45, is of no moment. "[T]his definition," *id.*, is irrelevant; the "generally accepted

common law definition of defamation" is not what matters here. Pennsylvania state law's

definition is. *See* 28 U.S.C. § 1346(b)(1); *Lomando*, 667 F.3d at 372-73.[2]

And under Pennsylvania state law, the tort of defamation *can* occur even when the

statements at issue are true. In fact, the very cases Plaintiffs cite make this clear. *See Graboff v.*

*Colleran Firm*, 744 F.3d 128, 137 (3d Cir. 2014) ("The Superior Court has drawn this broad

definition [of falsity] from defamation law, which permits recovery where a publication was true,

but implied falsehoods." (citation omitted)); *Larsen v. Phila. Newspapers*, 543 A.2d 1181, 1189

(Pa. Super. 1988) (en banc) (false light claim where media selectively excerpted and published

portions of the truth "finds support in the law of defamation"). As the Third Circuit explained in

*Graboff*, "publication of factually correct statements that convey a false impression can be

actionable as defamation . . . , or actionable as a false light invasion of privacy . . . ." 744 F.3d at

137. And lest Plaintiffs' legal sleight-of-hand leave any doubt in this case, the court concluded:

"Clearly there is little difference between these claims in dealing with the consequences of a

defendant's statements." *Id.*

Thus, for purposes of 28 U.S.C. § 2680(h), which bars claims for libel, slander, or

misrepresentation, Plaintiffs' false light claim is legally indistinguishable from a defamation

claim—that is, a claim for libel and slander. Section 2680(h) therefore bars Plaintiffs' claim. *See*

*Cadman v. United States*, 541 F. App'x 911, 913-14 (11th Cir. 2013) (noting that the Eleventh

Circuit, along with the Fifth, Ninth, and D.C. Circuits, have all held that "claims for false

light/invasion of privacy are barred by the libel and slander exception in § 2680(h)").

---

[2] Of course, when it comes to defining the tort of false light, as opposed to defamation, Plaintiffs acknowledge that Pennsylvania law governs. *See* Doc. 41, Opp'n, at 45 (discussing false light under Pennsylvania law).

The other cases Plaintiffs cite do not change this conclusion. *Ruddy v. United States*, No. 3:11-cv-1100, 2011 WL 5834953 (M.D. Pa. Nov. 21, 2011), stated that § 2680(h) bars invasion of privacy claims that "arise out of" libel or slander, but found the invasion of privacy claim there did not arise out of the alleged defamation. *Id.* at *3-4. *Ruddy* therefore supports the United States, not Plaintiffs, because here, the invasion of privacy-false light claim clearly "arises out of" the alleged defamation. And *George v. Rehiel*, No. 10-cv-586, 2011 WL 10621600 (E.D. Pa. Oct. 28, 2011), relied on a Third Circuit opinion that noted the distinction between the torts of negligence and defamation. *See id.* (citing *Quinones v. United States*, 492 F.2d 1269 (3d Cir. 1974)). But *Quinones* stated that "the root premises of negligence and defamation are conceptually distinct," *id.* at 2674, which explains why in that case the court did not apply § 2680(h) to the plaintiff's claim sounding in negligence. Here, in contrast, "the root premises" of defamation and false light are *not* "conceptually distinct," as *Graboff* makes clear. *Rehiel* therefore misapplied *Quinones*. In any event, as Plaintiffs note, *Rehiel* was vacated. Doc. 41, Opp'n, at 46. It therefore has no weight. Plaintiffs' claim is for defamation. Section 2680(h) bars that claim.

### D. Plaintiffs have not alleged conduct constituting intentional infliction of emotional distress.

Additionally, Plaintiffs have failed to explain how the allegations in their complaint fit within the "narrowly defined circumstances" for which a plaintiff can make out an intentional infliction of emotional distress claim. *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343, 359 (E.D. Pa. 2012). When stripped of all its conclusory allegations regarding intent, their complaint boils down to the following. The United States obtained a grand jury indictment of Xi for allegedly misappropriating superconducting thin film technology. Pursuant to the indictment and a warrant, armed FBI agents entered Plaintiffs' house, arrested Xi in front of the other

Plaintiffs, and searched and questioned him during his booking.[3] Four months later, Xi, through

his defense attorney, asserted purported errors in the basis for the indictment, and the indictment

was dismissed. Such conduct does not go "beyond all possible bounds of decency," nor is it

"utterly intolerable in a civilized society." *Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d

377, 397 (E.D. Pa. 2011). Indeed, if the alleged misconduct in *Pellegrino*—which included TSA

agents damaging a passenger's luggage in retaliation for requesting a private screening, and then

cooking up assault charges against her because she threatened to report them, causing her arrest

and eighteen-hour detention—does not come "even remotely close to the extreme and outrageous

conduct" required to state a claim under Pennsylvania law, *Pellegrino*, 855 F. Supp. 2d at 359,

then certainly the conduct alleged here does not meet that standard.

Plaintiffs' opposition relies primarily on unpublished district court decisions. *See* Doc.

41, Opp'n, at 48. Furthermore, the cases they cite are readily distinguishable. *Kovalev v. City of

Phila.*, No. 16-cv-6380, 2017 WL 770945 (E.D. Pa. Feb. 28, 2017), involved allegations of a

clearly fabricated charge of disorderly conduct that impinged on a citizen's First Amendment

rights, *id.* at *2, not a purportedly mistaken understanding of complicated technologies that led to

an indictment and warrant. *Sheare v. Borough of Olyphant*, No. 3:11-cv-1639, 2012 WL

2527022 (M.D. Pa. June 29, 2012), included allegations that the law enforcement officer was

"good friends" with the accuser, *id.* at *2, and noted that "the filing of false charges and false

arrest are generally not found so extreme and outrageous." *Id.* at *9 (citation omitted). And

---

[3] Plaintiffs in their opposition allege that during the arrest, agents "pointed guns in [Xi's] face."
Doc. 41, Opp'n, at 47. That allegation is not included in the second amended complaint. *See
generally* SAC. "It is axiomatic that the complaint may not be amended by the briefs in
opposition to a motion to dismiss." *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 104
(3d Cir. 2016) (quoting *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.
1988)).

*Dempsey v. Bucknell Univ.*, No. 4:11-cv-1679, 2012 WL 1569826 (M.D. Pa. May 3, 2012), included allegations that a student was fraudulently arrested twice by campus authorities and was maliciously labelled a "dangerous sexual offender." *Id.* at *24. None of those sorts of allegations are present here.

As for the two published decisions Plaintiffs cite, Doc. 41, Opp'n, at 48, those contain no substantive analysis and, being several decades old, were decided under the prior "no set of facts" pleading regime in which conclusory allegations listing the elements of a cause of action generally sufficed to state a claim. Under that regime, a motion to dismiss for failure to state a claim would be granted only if it appeared "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See Miniscalco v. Gordon*, 916 F. Supp. 478, 481 (E.D. Pa. 1996) ("[Plaintiffs] allege in a conclusory fashion that the conduct of the defendants was 'extreme and outrageous,' . . . . I cannot say that there are no facts they could prove consistent with the allegations in their complaint that would support their claim."); *Gilbert v. Feld*, 788 F. Supp. 854, 858, 862 (E.D. Pa. 1992) (reciting the "no set of facts" standard of *Conley v. Gibson* and holding, without analysis, that the complaint "sufficiently states this cause of action"). That regime has since been retired. Those cases therefore provide minimal guidance here.[4]

Regarding Plaintiffs' assertion that discovery should proceed on this claim, Doc. 41, Opp'n, at 47 n.20, as with many of their other arguments, they rely heavily on unpublished district court decisions. *See id.* The published decisions they cite either were decided under the

---

[4] In *Bell Atlantic Corp. v Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court put the "no set of facts" standard to rest, and instructed that a complaint must contain sufficient factual allegations to state a plausible claim to relief in order to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 563.

prior pleading regime, *see Shipkowski v. U.S. Steel Corp.*, 585 F. Supp. 66, 69 (E.D. Pa. 1983), or included factual allegations of misconduct leading to the most severe consequences. *See Ponzini v. Monroe Cnty.*, 897 F. Supp. 2d 282, 285-86, 290 (M.D. Pa. 2012) (denying motion to dismiss "[g]iven the nature of the claims," which alleged that state officials repeatedly ignored warnings of detainee's mental health issues which led to detainee committing suicide by "swallowing shreds of his own t-shirt"). And of course, *Pellegrino*, a published decision, granted the motion to dismiss at the pleading stage, and did not allow discovery on the emotional distress claim. *See* 855 F. Supp. 2d at 350, 359.

Lastly, Plaintiffs' invocation of familial relationships, Doc. 41, Opp'n, at 49, does not alter this analysis. The case they cite to support their invocation did not involve such a relationship, and instead contained dicta that relied on a case which itself did not involve such a relationship either. *See Williams v. Guzzardi*, 875 F.2d 46, 52 (3d Cir. 1989) (citing *Bradshaw v. General Motors*, 805 F.2d 110, 114 (3d Cir. 1986)). Additionally, individuals indicted on criminal charges are often arrested in the presence of family members. That is often unavoidable, and while sometimes regrettable, it does not make such conduct "outrageous" or "utterly intolerable in a civilized society." The Plaintiffs' claim should be dismissed.[5]

### E.  Plaintiffs fail to allege facts showing the negligent infliction of emotional distress.

Finally, in its opening motion, the United States explained that Plaintiffs' negligent infliction of emotional distress claim failed because the Plaintiffs—who are only Qi Li and Joyce

---

[5] *Bradshaw*, which *Williams* cited for its dicta, in turn relied ultimately on a case involving a familial relationship that contained horrific facts. *See Bradshaw*, 805 F.2d at 114 (citing and discussing *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970)); *see also Bartanus v. Lis*, 480 A.2d 1178, 1184 (Pa. Super. 1984) (same). In *Papieves*, a defendant killed a child in a car accident, did not inform authorities or the parents, and hid the body for two months until it was discovered. 263 A.2d at 119. In light of the "outrageous conduct" alleged, the court upheld the parents' emotional distress claim in that case. *Id.* at 121-22.

Xi for this claim—do not allege a physical impact, were not in the zone of danger, and did not perceive a tortious injury to a close relative as contemplated under Pennsylvania law. *See* Doc. 34, US MTD, at 13-14; SAC at 30. As an initial matter, Plaintiffs' opposition fails to address the case law the United States cited in its showing, and also fails to cite any case law discussing (let alone upholding) a negligent infliction of emotional distress claim in circumstances remotely similar to those alleged here. Instead, they cite a single case that held that a collision between an excavator and a mother's car carrying her child in the back seat was considered a physical impact. *See* Doc. 41, Opp'n, at 50 (citing *Tomikel v. Com., Dep't of Transp.*, 658 A.2d 861 (Pa. Cmwlth. 1995)). Given that in Pennsylvania, this tort has already been "limited by court decisions," *Doe v. Phila. Cmty. Health*, 745 A.2d 25, 27 (Pa. Super. 2000), and recognized only in "narrow circumstances," *Marchese v. Umstead*, 110 F. Supp. 2d 361, 369 (E.D. Pa. 2000), Plaintiffs' failure to provide this Court any supporting case law regarding comparable circumstances is fatal to their claim. The purported tortious injuries they claim to have perceived are not of the sort contemplated by Pennsylvania courts, as the absence of case law demonstrates.

In sum, Plaintiffs Qi Li and Joyce Xi have failed to plead facts showing negligent infliction of emotional distress. Those claims should be dismissed.

## CONCLUSION

The United States has demonstrated that the discretionary-function exception bars all of Plaintiffs' claims, which in any event each fail on their own merits. Plaintiffs' opposition relies mainly on dicta, inapposite case law, and unpublished district court cases from other courts, and fails adequately to grapple with the United States' showing. For the reasons discussed above and in the United States' opening motion, Plaintiffs' common law claims against the United States should be dismissed.

Dated: May 22, 2018                    Respectfully submitted,

                                       CHAD A. READLER
                                       Acting Assistant Attorney General
                                       Civil Division

                                       C. SALVATORE D'ALESSIO, Jr.
                                       Acting Director, Torts Branch

                                       RICHARD MONTAGUE
                                       Senior Trial Counsel

                                        /s/  *Paul E. Werner*
                                       PAUL E. WERNER
                                       (MD Bar, under LCvR 83.5(e))
                                       Trial Attorney
                                       United States Department of Justice
                                       Torts Branch, Civil Division
                                       P.O. Box 7146
                                       Washington, D.C.  20044
                                       (202) 616-4152 (phone)
                                       (202) 616-4314 (fax)
                                       E-mail: Paul.Werner@usdoj.gov

                                       Attorneys for the United States