**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| XIAOXING XI, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 17-2132 |
| FBI SPECIAL AGENT ANDREW HAUGEN, *et al.*, | |
| Defendants. | |

**DEFENDANT SPECIAL AGENT ANDREW HAUGEN'S REPLY IN SUPPORT OF HIS
MOTION TO DISMISS PLAINTIFF'S CONSTITUTIONAL CLAIMS AGAINST HIM
IN THE SECOND AMENDED COMPLAINT**

In his motion to dismiss, Defendant Special Agent Andrew Haugen established that Plaintiff Xiaoxing Xi's claims against him invite this Court to extend *Bivens* into a new context that raises multiple special factors counselling hesitation; that such an extension would contravene recent Supreme Court and Third Circuit precedent; and that, in any event, Special Agent Haugen was entitled to qualified immunity. Xi's response, which misunderstands *Bivens* jurisprudence and cites inapposite case law, fails to rebut Special Agent Haugen's showing. Xi's constitutional tort claims should be dismissed.

I. **Special Factors Counsel Hesitation in this New Context.**

a. **Xi's claims arise in a new *Bivens* context.**

Special Agent Haugen demonstrated in his opening motion that Xi's claims, which include allegations that Xi was the subject of surveillance under the Foreign Intelligence Surveillance Act ("FISA") and was indicted as a "spy for China," *see* Second Am. Compl. ("SAC") ¶¶ 1, 59-60, undoubtedly arise in a new context under recent Supreme Court and Third Circuit precedent. As Special Agent Haugen explained, none of the three Supreme Court cases

implying a *Bivens* remedy involved a context similar to the one here: the investigation (including through alleged warrantless and court-ordered FISA surveillance), indictment, search and seizure, and prosecution of a scientist for allegedly spying on behalf of a foreign nation by transferring to that nation sensitive technologies. Nor do any of the cases cited by Xi in his opposition involve such a context, for that matter.

Recognizing that no previous cases implied a *Bivens* remedy in this new context, Xi tries to cram his claims into prior Supreme Court precedents. He paints his claims in broad strokes as addressing "FBI misconduct during a law enforcement investigation." Doc. 41, Opp'n, at 11-13. That omits the clear context of his claims. True, Xi's claims include allegations of missteps by an FBI agent during an investigation. But that is not the sum total of his claims from the perspective of a special factors inquiry, Xi's assertions notwithstanding. Indeed, Xi cannot avoid the *context*—as the Supreme Court and circuit courts understand that term—in which his claims arise, namely, the indictment of a scientist as a "technological spy," SAC ¶ 1, based on information purportedly gleaned through FISA surveillance of a foreign power. Nor can Xi avoid the implications of litigating those claims through discovery and trial. That Xi dropped his *Bivens* claim for purported misuse of FISA, *see* Doc. 41, Opp'n, at 23 n.10; *compare* FAC ¶ 92, *with* SAC ¶¶ 124-35, does not obviate the fact that he alleges he was subjected both to FISA surveillance and to the misuse of FISA-obtained materials, which led to his indictment. *See* SAC ¶¶ 59-60, 64. Ignoring that background and looking solely at how Xi himself characterizes his claims is, to borrow a term from Xi, a "myopic" view of context. Doc. 41, Opp'n, at 32.

Moreover, Xi's argument that his claims are based on misconduct during an investigation that led to his prosecution, and therefore do not present a new context, *see* Doc. 41, Opp'n, at 13, 17, focuses solely on the "mechanism of injury." But that is precisely what the Supreme Court in

*Abbasi* said *not* to do. *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017). As the Court explained, such an approach "is inconsistent" with earlier precedent. *Id.* Other circuit-court decisions both before *Abbasi* and since have recognized this and have refused to expand the *Bivens* remedy into new contexts, even when the actual "mechanism of injury" was not novel. *See, e.g.*, *Hernandez v. Mesa*, 885 F.3d 811, 816-17 (5th Cir. 2018) (en banc) (refusing to imply remedy for foreign minor shot and killed by border patrol officer because of cross-border context of shooting); *Meshal v. Higginbotham*, 804 F.3d 417, 423-24 (D.C. Cir. 2015) (refusing to imply remedy against line-level FBI agent for alleged misconduct during criminal investigation because of overseas and terrorism-related context of investigation). Moreover, by focusing on the "mechanism of injury" only, Xi defines the context here at far too high a level of generality. As the D.C. Circuit explained in *Meshal*, although the plaintiff's claims did not "involve a different constitutional amendment or a new category of defendants" and could be analogized to other claims if viewed at a "sufficiently high level of generality," such an approach was nonetheless improper. *Meshal*, 804 F.3d at 424 (quoting *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009) (en banc)). When properly viewed, the D.C. Circuit held, those claims involved a new context. *Id.* Same with Xi's claims.[1]

Similarly, Xi's assertion that his claims fall within "*Bivens*' settled application" to purported Fourth and Fifth Amendment violations during a criminal investigation

---

[1] Faced with the conclusion that his claims arise in a new context, Xi resorts to relying on dicta in a dissent from another circuit and two district court decisions—both of which are on appeal—to support his erroneous interpretation of *Bivens* jurisprudence. *See* Doc. 41, Opp'n, at 13-14 (citing *Turkmen v. Hasty*, 789 F.3d 218, 265 (2d Cir. 2015) (Raggi, J., dissenting in relevant part), *rev'd in part, vacated in part sub nom. Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017); *Tun-Cos v. Perrotte*, No. 1:17-cv-943 (E.D. Va. Apr. 5, 2018), *appeal docketed*, No. 18-1451 (4th Cir.), and *Loumiet v. United States*, 292 F. Supp. 3d 222 (D.D.C. 2017), *appeal docketed*, No. 18-5020 (D.C. Cir.)).

"fundamentally misconstrues," Doc. 41, Opp'n, at 12, *Abbasi* and nearly three decades of Supreme Court precedent. As Xi would have it, *Abbasi*'s dictum that the Court's decision was "not intended to cast doubt on the continued force . . . of *Bivens* in the search-and-search context in which it arose," 137 S. Ct. at 1856, means that all search-and-seizure claims under the Fourth and Fifth Amendments against line-level agents resulting from criminal investigations are actionable under *Bivens*. In effect, Xi reads *Abbasi* to mean that "search-and-seizure" *is* the context in which *Bivens* arose.[2]

That Xi is wrong is apparent first from the Court's decision in *Hernandez v. Mesa*, 137 S. Ct. 2003 (2017) (per curiam), issued only a week after *Abbasi*. *Hernandez* involved Fourth and Fifth Amendment *Bivens* claims arising from a Border Patrol agent's cross-border shooting of a Mexican national. *Id.* at 2004. The Fourth Amendment deadly force claim asserted a seizure. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985). But that did not mean the case fell in an established context, or that the plaintiffs had a *Bivens* action. Instead, the Supreme Court vacated and remanded for the court of appeals to consider whether a *Bivens* remedy was available in light of *Abbasi*. *See Hernandez*, 137 S. Ct. at 2006-07. That would not have been necessary if, as Xi says, *Abbasi* established that "search and seizure" is the relevant context and that all *Bivens* actions arising from it are permitted.

Second, and to illustrate by further example, a military officer searched and seized by line-level military police officers in the course of a criminal investigation does not have a *Bivens*

---

[2] That statement came shortly after the Court explained that "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* Thus, the Court's subsequent clarification regarding search-and-seizure cases clearly is not a blanket statement that all claims concerning *any* search-and-seizure allegations are actionable under *Bivens* regardless of context.

4

remedy under longstanding Supreme Court precedent. *See United States v. Stanley*, 483 U.S. 669, 683-84 (1987) (barring claims against military officers); *Chappell v. Wallace*, 462 U.S. 296, 304-05 (1983) (barring equal protection claims against military officers); *see also Huckaby v. Bradley*, No. 1:16-cv-4327, 2018 WL 2002790, at *3-9 (D.N.J. Apr. 30, 2018) (dismissing deliberative indifference claim by detainee against military officers on special factors grounds). Indeed, the Court denied the equal protection claims of military officers in *Chappell*, despite the availability of that remedy to the plaintiff in *Davis*. 462 U.S. at 304-05; *accord Abbasi*, 137 S. Ct. at 1859.

Additionally, *Abbasi* cabined its dictum regarding *Bivens* to the "search-and-seizure context *in which it arose*," 137 S. Ct. at 1856 (emphasis added), a qualification Xi ignores. Xi's claims arise in a markedly different context than those in *Bivens*. Beyond the classified information, national security, and foreign affairs concerns Special Agent Haugen highlighted in his opening motion—which were not present in *Bivens* and thus make the context of this case different in a "meaningful way," *id.* at 1859—another fundamental difference exists between this case and *Bivens*. Namely, *Bivens* involved a warrantless search and arrest. *See id.* at 1860 (describing the context of the claims in *Bivens* as "handcuffing a man in his own home without a warrant"); *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 390 (1971). But here, Xi was indicted by a grand jury after a prosecutor presented it evidence. Also, Xi's arrest and the search of his home were pursuant to a warrant.

That this specific difference was not enumerated by the *Abbasi* court, and that Special Agent Haugen did not cite in his motion many of the examples of differences the Court offered, *see* Doc. 41, Opp'n, at 14-17, is of no moment. First, *Abbasi* disavowed any effort "to create an exhaustive list of differences that are meaningful enough." 137 S. Ct. at 1859. Second, nowhere

did the Court suggest that *all* listed examples must be present to make the context different in a meaningful way. Quite the contrary. As the Court stated, "even a modest extension is still an extension." *Id.* at 1864. Moreover, even where differences "are perhaps small, at least in practical terms," given the Court's "expressed caution about extending the *Bivens* remedy," the "new-context inquiry" may be "easily satisfied." *Id.* at 1865. Here it is satisfied. Xi's claims involve allegations of FISA surveillance and the improper use of classified information; they raise national security and foreign affairs concerns; and they involve an indictment, arrest, and search pursuant to a warrant. The context is new. This Court therefore must consider whether any special factors counsel hesitation. *Id.* at 1860.

### b. Multiple special factors counsel hesitation here.

In addition to his failure to rebut Special Agent Haugen's showing that Xi's claims would extend *Bivens* into a new context, Xi also fails adequately to counter Special Agent Haugen's showing that multiple special factors counsel hesitation.

#### i. Adjudication of Xi's claims necessitates inquiries into sensitive issues of national security.

First, Xi's claims implicate national security concerns, an area the Supreme Court has clearly stated presents special factors counselling hesitation. *See id.* at 1861-62. The Third Circuit, in its first special factors decision after *Abbasi*, recognized that claims implicating national security concerns raise special factors. *See Vanderklok v. United States*, 868 F.3d 189, 205-09 (3d Cir. 2017) (refusing to imply First Amendment retaliation claim against TSA agent). Xi's attempts to distinguish *Vanderklok*, Doc. 41, Opp'n, at 16, 19-20, bring into stark relief both his "high-level-of-generality" approach to context and his failure to recognize the various aspects of his claims that form their context. Although Xi is correct that *Vanderklok* addressed the plaintiff's First Amendment claim, not his Fourth Amendment claim, *see* Doc. 41, Opp'n, at 16,

6

the reasoning underlying *Vanderklok* applies here, given the allegations in Xi's complaint.[3] Specifically, *Vanderklok* found that a "special factor counseling hesitation in implying a *Bivens* action here is that Vanderklok's claims can be seen as implicating 'the Government's whole response to the September 11 attacks, thus of necessity requiring an inquiry into sensitive issues of national security.'" *Vanderklok*, 868 F.3d at 206 (quoting *Abbasi*, 137 S. Ct. at 1861).

Here, Xi's claims "can be seen as implicating" the Government's foreign intelligence surveillance program under FISA, "thus of necessity requiring an inquiry" into similarly sensitive issues. Despite Xi's protestations that his claims "do not challenge the surveillance of foreign entities or surveillance of him under FISA," Doc. 41, Opp'n, at 22-23, those claims clearly implicate the alleged use of FISA and FISA-obtained materials during the investigation. Xi cannot ignore his allegations that Special Agent Haugen "caused the interception of Professor Xi's communications," SAC ¶ 60; "caused the issuance of orders under FISA," *id.* ¶ 59; and "searched law enforcement and investigative databases for communications of Professor Xi that the government intercepted without a warrant" under FISA Section 702 and Executive Order 12,333, *id.* ¶ 64.

Try as he may, Xi simply cannot divorce his Fourth and Fifth Amendment claims from those allegations. To assess those claims in light of those allegations, the parties would, at bare minimum, need to probe—and a jury would need to evaluate—the following: (1) which, if any, of Xi's communications the Government intercepted, how it did so, and why; (2) if and how Special Agent Haugen caused the issuance of FISA orders, what information was provided to the

---

[3] On remand to the district court, the defendant in *Vanderklok* filed a motion for reconsideration on plaintiff's Fourth Amendment claim in light of *Abbasi*, which was decided after briefing and argument. *See Vanderklok v. United States*, No. 2:15-cv-370 (E.D. Pa.), ECF No. 109. The district court then dismissed the Fourth Amendment claim after plaintiff, in light of "recent precedent," opted not to oppose defendant's motion. *Id.* at ECF Nos. 110, 111.

FISA court, and why; (3) if and when he searched investigative databases purportedly containing warrantless government intercepts under FISA Section 702 or Executive Order 12,333, why he conducted those searches, and how such searches were conducted; (4) which intercepts were contained in those databases, how they were obtained, and why they were obtained; (5) which intercepts Special Agent Haugen located during his purported searches, the source for those intercepts, and how they contributed to probable cause. And that is a partial list.

Undoubtedly, such inquiries can "be seen as implicating" the Government's electronic surveillance program under FISA, including alleged Section 702 surveillance, "and/or Executive Order 12333," SAC ¶ 64, and as clearly necessitating "an inquiry into sensitive issues of national security." *Vanderklok*, 868 F.3d at 206. That is, such inquiries seek to determine how court-ordered and alleged warrantless surveillance under FISA and Executive Order 12,333 work, which subjects were purportedly the targets of such surveillance, and how the Government compiles such intercepted communications and searches them. In this respect, and as explained in Special Agent Haugen's opening motion, *see* Doc. 35, Haugen MTD, at 17-18, Xi's claims effectively challenge a government program.[4]

Xi's allegation that the end product of the surveillance process and investigation (his indictment and the search warrant) were based on faulty information is simply the final purported piece of the puzzle. But to consider the entire picture as pled in Xi's own complaint—which this Court and a jury must to adequately assess his claims—requires reviewing the entire background.

---

[4] Indeed, in his own opposition papers, Xi points to the FBI's efforts on a programmatic level to counteract Chinese espionage. *See* Doc. 42, Opp'n to Official Capacity MTD, at 12 n.11 (quoting congressional testimony of FBI director regarding espionage threats emanating from China). This further supports Special Agent Haugen's showing that Xi effectively challenges a government program.

8

That review would necessitate inquiries into sensitive issues of national security. Under Supreme Court and Third Circuit precedent, special factors counsel hesitation under such circumstances.[5]

### ii. Xi's claims raise foreign affairs concerns.

Second, Xi has failed to rebut Special Agent Haugen's showing that Xi's claims raise foreign affairs concerns. Notably, Xi in effect concedes that claims implicating foreign affairs concerns present special factors. *See* Doc. 41, Opp'n, at 21-22. He simply argues that *his* claims do not sufficiently raise foreign affairs concerns. *Id.* Yet, contrary to Xi's assertions, his claims more than "relate generally to a foreign government" in the way claims regarding "narcotics trafficking" or "corporate fraud" may "involve a foreign country" in some generic, unspecified way. *Id.* at 22. Xi's claims, as he himself has presented them, allege that Xi was specifically targeted by the FBI as a "spy *for China*." SAC ¶¶ 1, 75 (emphasis added). Moreover, Xi alleges that he was targeted because of his "race and ethnicity," *id.* ¶ 70—that is, because he is of Chinese descent. Furthermore, Xi alleges that the FBI has demonstrated a pattern of improperly targeting individuals from China. *Id.* ¶ 68. Such claims do not simply "relate generally to a foreign government." They allege that the FBI has engaged in a pattern of unlawfully targeting United States citizens who immigrated from a foreign power for allegedly spying for that foreign power. Such an assertion unmistakably implicates foreign affairs concerns.

As the *Abbasi* court explained, a special factors inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." 137 S. Ct. at 1858-59. If a factor

---

[5] Xi's reliance on *Mitchell v. Forsyth*, 472 U.S. 511 (1985), is inapposite. *See* Doc. 41, Opp'n, at 19. That case preceded the Court's approach to implying damages remedies in new contexts over the last thirty years. And the defendants did not raise special factors in *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). Therefore, that case offers no guidance here.

causes a court "to hesitate before answering that question in the affirmative," *id.*, it counsels hesitation. The foreign affairs concerns of allowing this action to proceed, as detailed above and in Special Agent Haugen's opening motion, should cause this Court to hesitate.

### iii. Xi's claims as alleged implicate classified information.

Third, as the earlier discussion about the national security implications of adjudicating Xi's claims makes clear, litigating those claims as pled would inevitably implicate the need to review any classified information that may be pertinent, to the extent such information exists. The reason for this is straightforward. Xi alleges his communications were intercepted through warrantless surveillance under FISA Section 702 "and/or" Executive Order 12,333. He claims that Special Agent Haugen, as part of his investigation, improperly reviewed those intercepts through database searches. Any intercepts obtained through such alleged surveillance, the contents of any databases containing those intercepts, and the background and reasons for why such surveillance was undertaken, would all involve classified information. Thus, litigation of Xi's claims plainly would put classified information at issue for review, to the extent it may exist.

In response to the clear implication of his claims, Xi cites inapposite case law. Indeed, none of the cases he cites regarding classified information involved an implied damages remedy such as *Bivens*. *See Webster v. Doe*, 486 U.S. 592, 597 (1988) (claim for declaratory and injunctive relief for allegedly unconstitutional revocation of security clearance); *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 196 (D.C. 2001) (petition for review pursuant to statutory scheme of designation as "foreign terrorist organization"). And although courts have congressionally prescribed methods for handling classified information, they do so in settings distinct from this one (for example, in criminal cases or when authorized by statute), not when

faced with the decision of whether to imply a damages remedy in the first place. *See Arar*, 585 F.3d at 577.

The various cases Xi cites purportedly demonstrating the availability of the remedy he seeks, *see* Doc. 41, Opp'n, at 12 & nn. 3-6, are of no moment. All those cases preceded *Abbasi*, and all but one made no mention of special factors. The one case cited in which special factors was mentioned, *Meeks v. Larsen*, 611 F. App'x 277 (6th Cir. 2015), *accepted* defendants' special factors argument on plaintiff's First and Second Amendment claims, and made no mention of special factors on his Fourth Amendment claim because defendants did not raise that defense for that claim. *See id.* at 282-87.

Lastly, even though Xi's claims do not raise *all* the special factors other cases have highlighted, Doc. 41, Opp'n, at 24-25, his claims certainly raise many of the special factors noted in those cases—namely, national security concerns, foreign affairs implications, and where purported classified information would be at issue upon judicial review. Given that special factors are considered in the aggregate, *see Chappell*, 462 U.S. at 304, the combination of the above factors are more than enough to counsel against this Court implying the damages remedy Xi seeks. His claims should be dismissed.

## II. Special Agent Haugen Is Entitled to Qualified Immunity.

Xi also has failed to adequately grapple with Special Agent Haugen's showing that he is entitled to qualified immunity.

### a. Xi's Fourth Amendment claim must be dismissed.

As Special Agent Haugen explained, the grand jury indictment of Xi constitutes "prima facie evidence of probable cause" underlying the indictment. Doc. 35, Haugen MTD, at 20

(quoting *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989)). To rebut that showing, Xi must provide evidence that the indictment was procured by fraud, perjury, or other corrupt means.[6]

Xi's conclusory allegations do not suffice. Although Xi points to paragraphs 55-57 of his second amended complaint, *see* Doc. 41, Opp'n, at 29-31, those paragraphs simply detail purported *mistakes* and *misunderstandings* Special Agent Haugen had in the course of the investigation. For the vast majority of those allegations, the only purported "evidence" Xi provides that Special Agent Haugen "knew or recklessly disregarded" the truth of the situation are Xi's assertions that (1) Special Agent Haugen was factually wrong about the meaning and substance of Xi's interactions with entities in China; and (2) his purported errors were committed knowingly or with reckless disregard for the truth. *See* SAC ¶¶ 55-57.

But blanket assertions that an investigator who purportedly got certain facts wrong did so intentionally are not sufficient to rebut the presumption of probable cause under basic pleading standards. As the Sixth Circuit stated in *Mills v. Barnard*, 869 F.3d 473 (6th Cir. 2017), a case Xi cites, Doc. 41, Opp'n, at 29, a plaintiff accusing a law enforcement officer of intentionally misrepresenting evidence to support a prosecution must "state more than the conclusion that '[defendant] did so intentionally.'" 869 F.3d at 482. Yet for the overwhelming majority of Xi's allegations, that is all he says. *See, e.g.*, SAC ¶¶ 55(c) (alleging that Special Agent Haugen "knew or recklessly disregarded" that Xi did not need to "orchestrate a scheme" to obtain certain technology); 55(e) (alleging that he "knew or recklessly disregarded" the allegedly proper interpretation of schematics attached to emails from Xi to colleagues at Peking University); 55(f)

---

[6] Xi misstates Special Agent Haugen's showing in this regard. Special Agent Haugen never stated that an indictment "provides conclusive evidence" of probable cause. Doc. 41, Opp'n, at 28. Rather, it places the burden on Xi to rebut the presumption of probable cause, which he has not done with his conclusory allegations of fraud and bad faith.

12

(alleging that he "knew or recklessly disregarded" the actual technology that was portrayed in photographs Xi sent to colleagues at Tsinghua University).

The two instances in which Xi provides additional factual information that could possibly be read as relating to Special Agent Haugen's state of mind—one involving alleged information provided by an inventor of the pocket heater, and another involving the purported legal status of the STI pocket heater, *see id.* ¶¶ 55(a)-(b)—are inconclusive, regard facts that would likely be disputed in the criminal case, and cannot rebut the presumption of probable cause here. *See Black v. Montgomery Cnty.*, 835 F.3d 358, 372 (3d Cir. 2016) ("'[T]estimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong.' There must be 'persuasive evidence supporting a conclusion that the proponents of the evidence' are aware that the evidence is incorrect or that evidence is offered in bad faith.'" (quoting *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014))). That is particularly so given the subject matter of the investigation and indictment, that is, magnesium diboride superconducting thin film technologies, a technology that is undoubtedly complex and where mistakes by an investigator may occur without awareness of the mistake or bad faith.

Indeed, the purported mistakes Xi highlights are a far cry from the basic, obvious factual errors in the various cases Xi cites, which, in part due to their obviousness, provided persuasive evidence of bad faith on the part of the officer. *See, e.g.*, *Dufort v. City of N.Y.*, 874 F.3d 338, 353 (2d Cir. 2017) (allowing claim to proceed against officers who withheld fact that witness identification of plaintiff was based solely on color of clothing); *Mills*, 869 F.3d at 473 (allowing claim to proceed against officer who withheld undisputed DNA evidence that exonerated plaintiff); *Miller v. Maddox*, 866 F.3d 386, 392 (6th Cir. 2017) (allowing claim to proceed against officer who fabricated facts that plaintiff was speeding and resisted arrest), *pet. for cert.*

13

*filed*, No. 17-1123 (U.S. Fed. 6, 2018); *King v. Harwood*, 852 F.3d 568, 574-75 (6th Cir. 2017) (allowing claim to proceed against officer who omitted conclusion that bullets found in plaintiff's home did not match bullets found in murder victim, among other exculpatory evidence), *cert. denied*, 138 S. Ct. 640 (2018); *Black*, 835 F.3d at 363 (allowing claim to proceed against officers who misrepresented condition of wire in electrical outlet to support indictment for arson and omitted obvious investigative steps); *Morse v. Fusto*, 804 F.3d 538, 543 (2d Cir. 2015) (allowing claims to proceed against officers who presented misleading information in spreadsheet of billing statements they created, thereby effectively fabricating evidence against plaintiff); *Halsey*, 750 F.3d at 289 (allowing claims to proceed against officers who falsified statements and included information plaintiff did not know in confession purportedly made by plaintiff in murder investigation). Accordingly, those cases do not provide relevant guidance here.[7]

Similarly, the other cases Xi cites, Doc. 41, Opp'n, at 31-32, either involved wholly separate circumstances, or included much more detailed factual allegations—providing persuasive evidence of bad faith—when compared to the sparse factual allegations of Xi's

---

[7] In the same vein, the cases Xi relies on, Doc. 41, Opp'n, at 34-35, regarding the purported deficiencies in the search warrant obtained in this case all involved an officer who, based on the obvious omissions and errors he or she made, "willingly and affirmatively distorted the truth" or withheld "a fact in his ken that any reasonable person would have known was the kind of thing the judge would wish to know." *Andrews v. Scuilli*, 853 F.3d 690, 698 (3d Cir. 2017) (citation and internal alterations omitted). *See, e.g., id.* at 703 (stating that three-door car was same as four-door car witness saw); *Betker v. Gomez*, 692 F.3d 854, 860-61 (7th Cir. 2012) (including statements that informant never made); *Chism v. Wash. State*, 661 F.3d 380, 387 (9th Cir. 2011) (making false statement in affidavit that plaintiff purchased and downloaded images); *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 95 (1st Cir. 2013) (identifying individual with "strikingly different" physical appearance to reported subject as the subject); *Humbert v. Mayor & City Council of Baltimore City*, 866 F.3d 546, 552 (4th Cir. 2017) (targeting rape suspect where DNA evidence excluded suspect); *Wilson v. Russo*, 212 F.3d 781, 784-85 (3d Cir. 2000) (omitting from affidavit five-inch height difference between arrestee and suspect and witness statement that arrestee was elsewhere during robbery).

14

complaint, which at most suggest that Special Agent Haugen made mistakes regarding similarities and differences between the various technologies involved in this matter. *See Schuchardt v. President of the U.S.*, 839 F.3d 336, 353 (3d Cir. 2016) ("narrow" holding that attorney had standing to seek injunctive relief against high-level officials for Fourth Amendment violations of NSA's PRISM surveillance program); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 784-85 (3d Cir. 2016) (detailing factual allegations of gender discrimination); *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1100-01 (7th Cir. 2015) (detailing factual allegations of investigation and absence of any proof against plaintiff); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 & n.6 (3d Cir. 2009) (finding sufficient factual allegations of disability discrimination where district court refused to allow plaintiff to amend complaint); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (detailing factual allegations of government employee involvement in state-created danger).

      In sum, the vast majority of Xi's factual allegations contain nothing more than a factual description of *what* Special Agent Haugen purportedly got wrong about superconducting thin-film producing technologies, coupled with a wholly conclusory allegation of *why* Special Agent Haugen erred. Those conclusory allegations must be ignored under Supreme Court and Third Circuit precedent. The remaining factual allegations regarding Special Agent Haugen's knowledge of the events are insufficient to provide persuasive evidence of bad faith on his part. Xi has failed to show a clearly established Fourth Amendment violation, and instead has at most shown a mistake by an investigator. Accordingly, this Court should dismiss Xi's Fourth Amendment claim because Special Agent Haugen is entitled to qualified immunity.

### b. Xi's fabrication of evidence claim cannot stand alone.

In addition to qualified immunity as a basis for dismissing Xi's constitutional claims, this Court should dismiss Xi's fabrication of evidence claim because, as Special Agent Haugen explained in his opening motion, Doc. 35, Haugen MTD, at 20 n.5, that claim is duplicative of Xi's Fourth Amendment claim. Xi's argument that Special Agent Haugen failed to "preserve the issue" by addressing it in a footnote, Doc. 41, Opp'n, at 33, lacks merit. For one thing, the case Xi relies upon, *United States v. Centeno*, 793 F.3d 378, 388 n.9 (3d Cir. 2015), involved appellate forfeiture. Appellate forfeiture rules are rooted in part in Federal Rule of Appellate Procedure 28, and it is far from clear that they translate to district court, where parties develop the disputed issues in the first instance. *See, e.g.*, *Araujo v. UGL Unicco-Unicco Operations*, 53 F. Supp. 3d 371, 373 (D. Mass. 2014) (holding that argument raised in footnote in motion to dismiss was preserved). Nor does inclusion in a footnote invariably amount to an argument's forfeiture even in an appellate proceeding. *See, e.g.*, *NLRB v. FedEx Freight, Inc*., 832 F.3d 432, 447 (3d Cir. 2016) ("[M]y colleagues in the Majority conclude that a one-sentence statement incorporating a two-sentence footnote—which itself only incorporates the views briefly expressed in a dissenting opinion—is adequate to preserve FedEx's arguments before the NLRB.") (Jordan, J., concurring in part and concurring in the judgment).

And even if all of that were not true, forfeiture would have no place here. Qualified immunity has been squarely raised, and it presents an issue of law. For that reason, the Supreme Court has condemned taking a blinkered view of the governing substantive law based on any deficiencies in party presentation. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994) ("A court engaging in review of a qualified immunity judgment should therefore use its 'full knowledge of its own [and other relevant] precedents.'" (citation omitted)). In *Elder*, the plaintiff in district

16

court failed to identify precedents that clearly established his right, so the Ninth Circuit refused to consider them on appeal. In reversing, the Supreme Court spoke in the context of appellate review, but logically, its instruction to apply the true state of the law extends to district courts' own qualified-immunity rulings, which are reviewed de novo. *See id*. In short, a detailed footnote was more than adequate to alert the Court and Xi that his "fabrication" claim had no independent legal significance here.

Furthermore, Special Agent Haugen developed his showing by presenting it with both argument and on-point case law from the Supreme Court and a district court. *See* Doc. 35, Haugen MTD, at 20 n.5 (citing *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *Levantino v. Skala*, 56 F. Supp. 3d 191 (E.D.N.Y. 2014)). Xi clearly understands the basis for Special Agent Haugen's argument, given the three cases he cites and the argument he presents in response. *See* Doc. 41, Opp'n, at 33-34. The disputed legal question is thus adequately sharpened for this Court to make a decision. In this posture, to accept Xi's argument that this issue is forfeited simply because it appeared in a footnote instead of the body of the motion is to elevate form over substance—literally.

Moreover, in substance, Special Agent Haugen is correct. Xi's Fourth Amendment fabrication of evidence claim is duplicative of, and therefore subsumed within, his Fourth Amendment malicious prosecution claim. The cases Xi cites in response are inapposite. Each found an independent fabrication of evidence claim for a plaintiff who faced a *trial*, at which point Fourth Amendment protections cease and "due process of law" protections continue. *See Halsey*, 750 F.3d at 291 (noting Fourth Amendment protection against seizure without probable cause "extends only until trial," but finding fabrication of evidence claim under Fourteenth Amendment for plaintiff convicted at trial); *Mills*, 869 F.3d at 485 (finding fabrication of

evidence claim for plaintiff convicted at trial); *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 270, 278 (2d Cir. 2016) (finding fabrication of evidence claim for plaintiff acquitted at trial).

Unlike those plaintiffs, Xi never faced a trial. Instead, the indictment against him was dismissed before trial, much like the plaintiff in *Levantino*. *See* 56 F. Supp. 3d at 198. Just as the fabrication of evidence claim in *Levantino* was subsumed within the plaintiff's malicious prosecution claim, *see id.* at 203-04, so too Xi's fabrication of evidence claim is subsumed within his malicious prosecution claim, and must be dismissed as duplicative.

### c. Xi has not stated a plausible equal protection claim.

Lastly, Xi has failed to rebut Special Agent Haugen's showing that Xi's equal protection claim should be dismissed. As Special Agent Haugen demonstrated in his motion, Xi's claim fails on two counts. First, Xi has failed to allege that he was treated different from others similarly situated. *See* Doc. 35, Haugen MTD, at 23-24. Second, his equal protection claim is not plausible. *Id.* at 24. In attempting to show he has met his burden of alleging sufficient facts, Xi relies on *Pitts v. State of Del.*, 646 F.3d 151 (3d Cir. 2011), a case in which—unlike Xi's complaint—the facts as pled clearly demonstrated that the black plaintiff was treated different from the white individual with whom he had an altercation. *See id.* at 157-58. Recognizing that he has not pled that he was treated different from other similarly situated individuals, Xi falls back on another argument, and asserts that he does not need to plead any difference in treatment because his claim is for selective enforcement, not selective prosecution. *See* Doc. 41, Opp'n, at 37.

Even assuming that his claim is for selective enforcement, and that such a distinction makes a difference here, Xi's claim still fails under the standard for selective enforcement

18

claims. As the Third Circuit explained in *United States v. Washington*, 869 F.3d 193 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 713 (2018), to obtain limited discovery on a selective-enforcement claim, a criminal defendant must show "some evidence of discriminatory effect," which "must contain reliable statistical evidence, or its equivalent," and "must be strong enough to support a reasonable inference of discriminatory intent and non-enforcement." *Id.* at 220-21.

Xi is a civil plaintiff, and at this stage he can meet the *Washington* standard with plausible allegations, rather than evidence. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 683 (2009) (to survive a motion to dismiss, a discrimination complaint must contain sufficient "factual content to 'nudg[e]' his claim of purposeful discrimination 'across the line from conceivable to plausible.'" (citation omitted)). But his complaint does not. Instead, it offers the conclusory, implausible allegation that Special Agent Haugen targeted him because of his race or ethnicity. Xi provides no plausible allegation of discriminatory effect, nor of any "reliable statistical evidence, or its equivalent." *Washington*, 869 F.3d at 220-21.

As for his reference to two other prosecutions of individuals of Chinese race or ethnicity, those cases, without any additional background or comparison to other scientists, do nothing to support a "reasonable inference of discriminatory intent." This is all the more so given that Xi makes no allegation that Special Agent Haugen had any involvement in those other prosecutions. In this personal-capacity lawsuit, where "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," *Iqbal*, 556 U.S. at 677, those other matters have no bearing on Special Agent Haugen's alleged intent in investigating Xi.

In short, Xi's conclusory allegation of discriminatory intent is not plausible. Nor is it supported by any evidence. His equal protection claim should therefore be dismissed.

## CONCLUSION

Xi's complaint attempts to expand *Bivens* into a new context, namely, the investigation of an alleged technology spy through FISA surveillance. Under recent Supreme Court and Third Circuit precedent, this Court should not accept that invitation. Moreover, Xi has failed to allege the violation of a clearly established constitutional right, and at most has detailed mistakes made in an investigation of an undoubtedly complicated technology. Nor has Xi raised a plausible discrimination claim. For these reasons and those explained in Special Agent Haugen's opening motion, Xi's complaint against him should be dismissed with prejudice.

Dated: May 22, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, Jr.
Acting Director, Torts Branch

RICHARD MONTAGUE
Senior Trial Counsel

  /s/  *Paul E. Werner*
PAUL E. WERNER
(MD Bar, under LCvR 83.5(e))
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C.  20044
(202) 616-4152 (phone)
(202) 616-4314 (fax)
E-mail: Paul.Werner@usdoj.gov

Attorneys for Special Agent Haugen