## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| XIAOXING XI, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 17-2132 |
| | : | |
| FBI SPECIAL AGENT ANDREW | : | |
| HAUGEN, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS PLAINTIFFS' CLAIMS AGAINST OFFICIAL CAPACITY DEFENDANTS CHRISTOPHER A. WRAY, JEFFERSON B. SESSIONS III, AND PAUL M. NAKASONE**

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

ANTHONY J. COPPOLINO
Deputy Director
Civil Division, Federal Programs Branch

ELIZABETH TULIS
(NY Bar, under LCvR 83.5(e))
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
(202) 514-9237 (phone)
(202) 616-8470 (fax)
E-mail: elizabeth.tulis@usdoj.gov

The Government respectfully submits this reply memorandum in further support of its motion to dismiss the claims against the Official Capacity Defendants.[1] Plaintiffs' opposition to the Government's motion relies heavily on mischaracterizations of the complaint and extra-complaint factual allegations. *See, e.g.*, Pls. Opp. at 6, 9, 21 (invoking allegations appearing in press articles not cited in the complaint).[2] Regardless, Plaintiffs still fail to show that they have alleged any injury-in-fact that would support standing for prospective relief. Moreover, Plaintiffs fail to identify allegations in the complaint that would allow the reasonable inference that any criminal warrant or FISA order was issued without probable cause, on the basis of a false affidavit. Nor does Plaintiff Xiaoxing Xi ("Xi") identify allegations that would allow the reasonable inference that his communications were subject to surveillance conducted under Section 702 of the Foreign Intelligence Surveillance Act ("FISA") or Executive Order ("EO") 12,333, or, even if they were, that such surveillance violated the Fourth Amendment. Finally, Xi likewise has not plausibly alleged that the Government would have violated his Fourth Amendment rights by "querying" information allegedly acquired under the authority of Section 702 or EO 12,333. Accordingly, the claims against the Official Capacity Defendants should be dismissed pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] On May 4, 2018, Gen. Paul M. Nakasone, U.S. Army, was appointed as Director of the National Security Agency. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he is automatically substituted for defendant Adm. Michael S. Rogers.

[2] "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (citation omitted). The Court should therefore disregard Plaintiffs' extra-complaint allegations.

## ARGUMENT

### I.   Plaintiffs Lack Standing.

As set forth in the Government's opening memorandum, Plaintiffs lack standing for the injunctive and declaratory relief they seek because they allege no legally cognizable injury-in-fact that would be redressed by such relief.

Plaintiffs do not dispute that prospective relief—declaratory or injunctive—is unavailable where a plaintiff alleges only past injuries. Instead, Plaintiffs assert that they have standing because of current "retention and searching" of their information by the Government. Pls. Opp. at 11, 13, 14, 15. But mere retention of information, even if acquired through an unlawful search or seizure, does not effect a legally cognizable injury, and the complaint does not allege—let alone plausibly allege—any ongoing searches or seizures to which Plaintiffs are subject.

As explained in the Government's opening memorandum, the mere retention of copies of documents or information that were acquired through an unlawful search or seizure, is not, by itself, an injury-in-fact. Gov't Mem. at 16-17. The law is clear that because a Fourth Amendment violation is complete at the time of the unlawful search or seizure, the Government's alleged continued possession of copies of information obtained through such a search or seizure is not a Fourth Amendment injury.[3] *See United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (seizure occurs only where there is some meaningful

---

[3] To the extent the district courts in *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012), and *United States v. Jefferson*, 571 F. Supp. 2d 696 (E.D. Va. 2008), suggested otherwise, the Government respectfully submits that these courts' analyses are in conflict with governing Supreme Court precedent and they are, in any case, not binding authority. Moreover, the premise of Plaintiffs' argument—that their information was acquired through an unlawful search or seizure—is not plausibly alleged. *See infra* Parts II-III.

interference with [Plaintiffs'] possessory interests in [their] property"); *United States v. Calandra*, 414 U.S. 338, 354 (1974) (Fourth Amendment violation is "fully accomplished by the original search"). Nor does possession of an individual's private information effect some other legally cognizable injury, absent further dissemination or misuse of the information. *See, e.g.*, *Laird v. Tatum*, 408 U.S. 1, 13 (1972) (fear of future misuse of information not sufficient to confer standing).[4] While Plaintiffs cite a few cases in which courts, without further analysis of injury-in-fact, suggested that plaintiffs had standing to seek expungement of records of allegedly unlawfully acquired information, *see Tabbaa v. Chertoff*, 509 F.3d 89, 96 n.2 (2d Cir. 2007); *Mayfield v. United* States, 599 F.3d 964, 971 (9th Cir. 2010); *Doe v. U.S. Air Force*, 812 F.2d 738, 740 (D.C. Cir. 1987),[5] the cases cited by Plaintiffs that offered any substantive analysis of the issue found that the Government's retention of particular records supported standing only where such retention was linked to a separate injury—*i.e.*, something beyond the mere fact that the Government possessed the

---

[4] Plaintiffs argue that *Laird* is distinguishable because "[t]he challengers in that case did not allege that the surveillance itself was unlawful." Pls. Opp. at 15 n.12. But because any Fourth Amendment violation was "fully accomplished" by the original alleged unlawful search, *Calandra*, 414 U.S. at 354, Plaintiffs cannot harness their claim of a present injury to such past alleged unlawful action. Moreover, Plaintiffs mischaracterize *Laird*: the plaintiffs in that case argued that the alleged surveillance *of them* was unlawful under the First Amendment. *See Laird*, 408 U.S. at 2 ("Respondents brought this class action in the District Court seeking declaratory and injunctive relief on their claim that their rights were being invaded by the Department of the Army's alleged 'surveillance of lawful and peaceful civilian political activity.'").

[5] Plaintiffs also cite *United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016) (en banc). In that case, however, the Second Circuit did not examine the question of whether the Government's retention of copies of the plaintiff's records provided standing to seek an expungement remedy. Rather, the court declined to reach the question of whether the plaintiff had a valid Fourth Amendment claim based on the Government's retention of mirrored hard drives. *See id.* In addition, *Fox v. Dist. of Columbia*, 851 F. Supp. 2d 20, 29 (D.D.C. 2012), did not involve a claim for expungement of "illegally obtained information," Pls. Opp. at 16, but rather a request for expungement of an arrest record that the court determined was moot, 851 F. Supp. 2d at 25 nn. 5 & 6.

information. *See, e.g.*, *Paton v. LaPrade*, 524 F.2d 862, 868 (3d Cir. 1975) (plaintiff alleged that retention of FBI file could endanger her future educational and employment opportunities); *Menard v. Saxbe*, 498 F.2d 1017, 1023-24 (D.C. Cir. 1974) (plaintiff had standing to seek expungement of arrest record because "[t]he disabilities flowing from a record of arrest have been well documented"); *Hedgepeth ex rel. Hedgepeth v. Washington Metro. Area Transit Auth.*, 386 F.3d 1148, 1152 (D.C. Cir. 2004) (plaintiff had standing to seek expungement of arrest record because "[s]uch an order would relieve [the plaintiff] of the burden of having to respond affirmatively to the familiar question, 'Ever been arrested?' on application, employment, and security forms"). Indeed, any other holding would be inconsistent with the Supreme Court's insistence that standing requires an injury-in-fact that is "distinct and palpable." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).[6]

Plaintiffs do not seriously argue otherwise. Instead, they attempt to construct an injury-in-fact out of a new allegation—that the Government is currently "searching" their data and communications. Pls. Opp at 11, 13, 14, 15. But no such allegation appears in the complaint. Indeed, the repeated references in Plaintiffs' brief to purported ongoing searches are uniformly unsupported by citation to any paragraphs in Plaintiffs' pleading, or to

---

[6] In a "Notice of Supplemental Authority" filed on May 18, 2017 (ECF No. 44), Plaintiffs also direct the Court's attention to *Alasaad v. Nielsen*, No. 17-cv-11730-DJC, 2018 WL 2170323 (D. Mass. May 9, 2018), a recent decision by a district court in the District of Massachusetts. That case involved claims based on alleged unlawful border searches, including among other things, a claim seeking expungement of cellphone data allegedly unlawfully acquired. *See id.* at *11. In addressing the plaintiffs' standing for an expungement remedy, the court concluded, without examination of *Calandra* or *Laird*, let alone any Third Circuit precedents, that expungement would redress the plaintiffs' claimed injury. *See id.* at *12-13. However, the court did not examine whether mere retention of data could even be an injury-in-fact. Rather, in analyzing redressability, the court appears to have merely assumed that retention of the data would be such an injury. *See id.* at *12. Accordingly, *Alasaad* is not persuasive authority contra the Government's standing arguments here.

4

anything else. *See, e.g.*, *id.* at 14 (invoking, without citation, "[t]he government's retention and searching of the Xi's [sic] private data and communications"); *id.* at 15 (invoking, without citation, "defendants' retention and routine searching of the Xis' communications"). Accordingly, this assertion is unfounded on its face and cannot support standing for prospective relief.

Plaintiffs essentially attempt to bootstrap an allegation that they are subject to ongoing searches to their allegation that the Government retains copies of their information and their allegation that the FBI "routinely" queries databases that contain information collected under FISA Section 702 as part of its investigations. *See* Pls. Opp. at 12. This feint is unavailing. First, to the extent Plaintiffs' argument is based on the Government's alleged retention of information collected through warrantless surveillance, Xi's contention that his communications were even acquired through warrantless surveillance is pure speculation. *See infra* Part III-A, C. He thus does not plausibly allege that the Government currently retains or uses such information. Second, the complaint does not even purport to allege that the communications of plaintiffs Qi Li and Joyce Xi were acquired through warrantless surveillance. Third, in any case, the complaint contains no allegation that the Government is currently querying law enforcement databases for information about Plaintiffs.[7] While the complaint does include the allegation that Plaintiffs "fear" future

---

[7] Moreover, Plaintiffs mischaracterize the few paragraphs from the complaint that they cite in the midst of their "querying" argument. For example, Plaintiffs cite paragraphs 84 and 86 in support of the proposition that "the unlawfully acquired private data belonging to [Xi] and his family remain stored in massive law enforcement and investigative databases." Pls. Opp. at 12. But in fact, those paragraphs do not mention law enforcement or investigative databases, and merely allege that copies of information acquired through the alleged unlawful searches and seizures remain in the Government's possession.

misuse of their information, Second Am. Compl. ¶ 82, such speculative "fear" is insufficient to confer standing. *See* Gov't Mem. at 17.

Finally, even if the Government's mere retention of copies of information were a legally cognizable injury, the declaratory judgment Plaintiffs seek would not redress that injury. *See* Gov't Mem. at 19-20. The suggestion of the court in *Doe* that "[a] court may properly assume that the government would respond to such a declaration by surrendering the retained copies and information," 812 F.2d at 740, is incorrect. Because the Government is not legally required to destroy or return copies of documents or data obtained through an illegal search, *see Calandra*, 414 U.S. at 347-52, a declaration that a search or seizure was unlawful would not "likely . . . redress[ ]" any injury that could be said to arise from the Government's retention of information acquired through an unlawful search. *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016); *see, e.g.*, *Mayfield*, 599 F.3d at 971.

While Plaintiffs contend that they seek to redress harms that are "concrete, immediate, and ongoing, and flow from the government's retention of illegally obtained information," Pls. Opp. at 14-15, the complaint does not seek a declaration that the Government is engaging in "ongoing" violations of their rights, but rather a "declaration that defendants *violated* the Fourth . . . Amendment rights of plaintiffs . . . by subjecting all plaintiffs to unlawful searches and seizures." Second Am. Compl. at 34 (emphasis added). And because the retrospective declaration sought, even if it had merit, would neither remedy those past searches or seizures nor render unlawful the Government's retention of copies of information obtained through such searches or seizures, such relief would not redress any of Plaintiffs' purported injuries.

**II.**   **Plaintiffs Have Not Plausibly Alleged That They Were Subjected to Any Search or Seizure Conducted Pursuant to a Warrant or FISA Order Issued Without Probable Cause on the Basis of a False Affidavit.**

Plaintiffs also have failed to demonstrate that they have plausibly alleged a Fourth Amendment claim based on searches or seizures conducted pursuant to warrants or FISA orders issued without probable cause.

The Fourth Amendment protects against "unreasonable searches and seizures" and specifies that warrants shall issue only upon a showing of "probable cause." U.S. Const. amend. IV. Accordingly, for a court to find that a plaintiff's allegations allow the reasonable inference that the defendant committed a Fourth Amendment violation, a plaintiff must plausibly allege not only that false statements in a warrant affidavit were made knowingly or in reckless disregard for the truth, but also, crucially, that such statements were material to the finding of probable cause. *Cf. Paszkowski v. Roxbury Twp. Police Dep't*, 581 F. App'x 149, 152 (3d Cir. 2014) (Submitted Under Third Circuit LAR 34.1(a)) (explaining that claim of false arrest based on a warrant "may survive a motion to dismiss if the plaintiff adequately pleads '(1) that the police officer knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause'" (quoting *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000))). Indeed, the three opinions cited by Plaintiffs recognize these requirements. *See Andrews v. Sculli*, 853 F.3d 690, 697 (3d Cir. 2017); *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012); *Chism v. Washington State*, 661 F.3d 380, 388-89 (9th Cir. 2011). Contrary to Plaintiffs' suggestion, none of these cases suggests that

"materially false, misleading, or fabricated allegations in a warrant application" suffice to

establish a Fourth Amendment violation. Pls. Opp. at 18.

Plaintiffs' terse, two-paragraph argument on this point fails to demonstrate that they

have plausibly alleged the elements of a Fourth Amendment claim. While Plaintiffs assert

that their "factual allegations make clear that the assertions in the search warrants and the

FISA orders were flawed just as the assertions in the indictment were flawed," *id.*, none of

the paragraphs from the complaint that they cite in fact identify which statements in the

affidavits at issue were allegedly false, let alone plausibly allege that such false statements

were made knowingly or with reckless disregard for the truth.[8]

Nor do Plaintiffs identify any allegations that would support a reasonable inference

that false statements in a warrant affidavit or application for a FISA order were material to

---

[8] Paragraph 55 alleges purported false statements and omissions, but even assuming *arguendo* that these allegations are sufficient to allege statements that were knowingly false or made with reckless disregard for the truth, the paragraph does not allege that any of these statements appeared in an application for a warrant or FISA order. Second Am. Compl. ¶ 55(a)-(g). Paragraphs 56 and 57 allege that Defendant Haugen "provided federal prosecutors with false scientific opinions and conclusions" and "made false statements and representations to federal prosecutors," but, again, even assuming such conclusory allegations are sufficient, the paragraphs do not allege that Defendant Haugen made false statements in a warrant affidavit submitted to a magistrate judge or in an application to the Foreign Intelligence Surveillance Court. *Id.* ¶¶ 56-57. Paragraph 59 includes the conclusory allegation that "[f]or each FISA order issued . . . there were known and/or reckless false statements and representations and material omissions of facts in the affidavits of probable cause and other submissions made in support of the orders," but does not allege what these purported statements were. *Id.* ¶ 59. Paragraph 67, similarly, merely includes the conclusory allegation that "defendant Haugen made or caused to be made known and/or reckless false statements and representations and material omissions of facts in an affidavit for a search warrant which led to the seizure of property of [Plaintiffs]." *Id.* ¶ 67. Further, even if the complaint in fact alleged that affidavits submitted in support of the relevant search warrants or FISA orders contained one or more of the statements listed in paragraph 55 of the complaint, and even if the complaint plausibly alleged that such statements were material to the finding of probable cause, for the reasons set forth in Defendant Haugen's own reply, Plaintiffs have made no showing that any of these statements were knowingly false or made with reckless disregard for the truth.

a finding of probable cause. The paragraphs the Plaintiffs cite assert, in a conclusory manner, that Defendant Haugen made "known and/or reckless false statements and representations and material omissions of facts" in a FISA order application and warrant affidavit, Second Am. Compl. ¶¶ 59, 67, and that "[t]he FBI, DOJ, and/or NSA made or caused to be made knowingly and recklessly false statements and representations or material omissions of facts in an affidavit for a search warrant" and "in applications for FISA orders" that "led to the search and seizure of [Plaintiffs'] private information and property," *id.* ¶¶ 127, 130. Such assertions are mere legal conclusions, and not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Thus, Plaintiffs have not alleged sufficient factual matter to state a Fourth Amendment claim under the governing *Franks v. Delaware* standard.  *See Franks v. Delaware*, 438 U.S. 154, 171-72 (1978); *United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).

Plaintiffs acknowledge *Franks v. Delaware* only in a footnote, and incorrectly state that, in citing this standard, the Government is suggesting that Plaintiffs must "*prove* their claims in the pleadings." Pl. Opp. at 18 n.13. In fact, the Government has argued only that the allegations of the complaint must allow the reasonable inference that Plaintiffs' Fourth Amendment rights were violated. *See* Gov't Mem. at 23. And where a plaintiff's theory is that his Fourth Amendment rights were violated because a search was conducted pursuant to a warrant issued without probable cause on the basis of a false affidavit, the plaintiff must plausibly allege that this occurred. *See, e.g.*, *Eaton v. Tosti*, Civ. No. 09-5248 (WJM), 2010 WL 2483318, at *6 (D.N.J. June 4, 2010) ("Under *Franks* and its progeny, to set forth a Fourth Amendment claim in this context, the plaintiff must plead: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements

or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.").

The case cited by Plaintiffs, *Hernandez-Cuevas v. Taylor*, 723 F.3d 91 (1st Cir. 2013), is not to the contrary. There, the U.S. Court of Appeals for the First Circuit concluded that the plaintiff had plausibly alleged the *Franks* factors, including that the warrant would not have been issued but for the alleged false statements. *See id.* at 101-05. Specifically, after painstakingly explaining the nature of the alleged false statements and the plausibility of the plaintiff's allegation that the statements were deliberately false or made with reckless disregard for the truth, the First Circuit concluded that the materiality element of the *Franks* analysis was satisfied because "the remaining facts linking [the plaintiff] to the conspiracy—that he was black and that he lived in an apartment complex close to where UNSUB # 3 was last seen—would be woefully insufficient to establish probable cause." *Id.* at 105. In other words, the court found that the well-pleaded allegations of the complaint supported a reasonable inference that the defendants were liable for the claimed Fourth Amendment violation. Here, in contrast, Plaintiffs have identified no allegations that would allow such an inference.

III. **Xi Has Not Plausibly Alleged That His Fourth Amendment Rights Were Violated By Surveillance Conducted Pursuant to Section 702 or EO 12,333.**

A. **Xi Has Not Plausibly Alleged That His Communications Were Acquired Through Surveillance Conducted Pursuant to Section 702 or EO 12,333.**

To the extent Xi claims the Official Capacity Defendants violated his Fourth Amendment Rights by conducting surveillance under FISA Section 702 or EO 12,333, his allegations fail to "raise a right to relief above the speculative level," *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007), first of all, because Xi's allegation that his communications were acquired through such surveillance is pure speculation.

Plaintiffs point to allegations in the complaint that the Government has obtained certifications under Section 702 related to Chinese governmental institutions, an allegation that the Government at some point engaged in some form of "bulk" collection of communications residing on the networks of particular Chinese universities, allegations regarding the Government's usage of information acquired through warrantless surveillance, and allegations that the Government acquired emails between Xi and scientists working at Chinese universities that were, during an unspecified time period, subject in some way to some sort of warrantless surveillance. Pls. Opp. at 19 (citing Second Am. Compl. ¶¶ 60-62). However, as explained in the Government's opening memorandum, Gov't Mem. at 26, 36, these allegations, even if taken as true, are at best merely "consistent with" the interception of Xi's communications through warrantless surveillance; they do not "allow[ ] the Court to draw the reasonable inference" that the communications were collected through such surveillance, as opposed to by some other means. *Iqbal*, 556 U.S. at 678.

Xi's contention that the Third Circuit's holding in *Schuchardt* establishes the plausibility of his allegations misapplies that case. As noted in the Government's opening memorandum, the Third Circuit, in evaluating Schuchardt's standing to challenge Section 702's PRISM program generally, concluded that it was plausible that Schuchardt's own communications were subject to ongoing surveillance because Schuchardt alleged, with sufficiently detailed supporting factual matter, that, via PRISM, the Government was "intercepting, monitoring, and storying the content of *all or substantially all* of the e-mail

sent by American citizens." *Schuchardt*, 839 F.3d at 341. In this case, in contrast, there is no allegation—let alone a plausible one—that, during the relevant time period, the Government's Section 702 surveillance, or activities under EO 12,333, collected "all or substantially all" emails between, for instance, Americans and scientists at Chinese research institutions. Xi's suggestion that the PCLOB Report somehow fills this gap, Pls. Opp. at 23 n.15, is baseless. Xi points to the Report's observation that, in national security investigations and some criminal investigations, the FBI "will query previously acquired information from a variety of sources, including Section 702, for information relevant to the investigation or assessment." Privacy & Civil Liberties Oversight Board, *Report on the Surveillance Program Operated Pursuant to Section 702 of the FISA* ("PCLOB Report") at 59 (July 2, 2014). But that statement only describes contexts in which the FBI might access information collected under Section 702—it does not even address the scope or targets of Section 702 surveillance, let alone render plausible Xi's otherwise speculative assertion that his communications were acquired under that authority.

In sum, Xi has not identified allegations that, taken as true, establish that it is plausible, as opposed to merely conceivable, that his communications were collected through surveillance under Section 702 or EO 12,333. He is simply guessing that his information must have been acquired through surveillance under such particular authority. That is plainly not sufficient to state a claim. *See, e.g.*, *Barbieri v. Wells Fargo & Co.*, Civ. No. 09-3196, 2014 WL 7330461, at *4 (E.D. Pa. Dec. 22, 2014) (Surrick, J.) (to survive a Rule 12(b)(6) motion, plaintiff must state a "plausible claim for relief," as determined by

the court in a context-specific manner, drawing "on its judicial experience and common sense").[9]

### B. Xi Has Not Plausibly Alleged That Any Purported Warrantless Surveillance Violated the Fourth Amendment.

For the reasons explained above, Xi's speculation that the Government acquired certain of his emails through surveillance conducted under FISA 702 or EO 12,333 does not support the reasonable inference that such collection occurred at all. Accordingly, there is no basis to even reach the question of whether the complaint adequately pleads a Fourth Amendment violation through such surveillance. But even if Xi's well-pleaded factual allegations allowed the Court to draw the reasonable inference that Xi's communications were acquired through warrantless surveillance—which they do not—Xi would still fail to state a Fourth Amendment claim because he does not plausibly allege that any such surveillance constituted an unreasonable search or seizure under the Fourth Amendment.

First, Xi unconvincingly argues that the foreign-intelligence exception to the warrant requirement does not apply to collection under Section 702 or EO 12,333. Pls. Opp. at 25-29. As the Third Circuit explained in *Butenko*, the "efficient operation of the Executive's foreign policy-making apparatus depends on a continuous flow of information," and imposing a warrant requirement in the context of foreign intelligence

---

[9] The absence of well-pleaded allegations supporting the reasonable inference that Xi's communications were even collected through surveillance under Section 702 or EO 12,333, like the lack of well-pleaded allegations supporting the reasonable inference that Plaintiffs were subjected to searches or seizures conducted pursuant to warrants issued without probable cause, *see supra* Part II, is fatal to the Fourth Amendment claim. Contrary to Plaintiffs' suggestion in their Notice of Supplemental Authority (ECF No. 44), the decision in *Alasaad*, which involved entirely different factual allegations, *see* 2018 WL 2170323, at *1-8, offers no basis to find that Plaintiffs' allegations in this case are sufficient to state a plausible Fourth Amendment claim.

gathering would disrupt these processes. *United States v. Butenko*, 494 F.2d 593, 605 (3d Cir. 1974) (en banc); *accord United States v. Truong Dinh Hung*, 629 F.2d 908, 914 (4th Cir. 1980). The logic of the pre-FISA cases recognizing the foreign intelligence exception applies equally to surveillance under Section 702 or EO 12,333, which are both explicitly limited to foreign intelligence gathering. *See* Gov't Mem. at 29-30, 36-37; *see, e.g.*, [Redacted Caption], 2011 WL 10945618, at \*24 (noting that "[t]he Court has previously concluded that the acquisition of foreign intelligence information pursuant to Section 702 falls within the 'foreign intelligence exception' to the warrant requirement of the Fourth Amendment").

Contrary to Plaintiffs' suggestion, neither the Third Circuit in *Duka*, nor the district court in *Bin Laden* suggested that "the country's experience with FISA . . . has profoundly undermined the rationale of [cases like *Butenko*]." Pls. Opp. at 26. Rather, in *Duka*, the Third Circuit described a virtual consensus among courts to have examined the issue "that the important national interest in foreign intelligence gathering justifies electronic surveillance without prior judicial review," and observed that, "[g]iven the prevailing pre-FISA conclusion that the executive branch could conduct electronic surveillance for foreign intelligence purposes *without* a warrant, it was perhaps predictable" that courts would uniformly "conclude that FISA's standards and procedures for authorizing foreign intelligence surveillance orders are reasonable under the Fourth Amendment." *United States v. Duka*, 671 F.3d 329, 341 (3d Cir. 2011).

In *Bin Laden*, in turn, the court considered whether the foreign intelligence exception to the warrant requirement applied to searches conducted abroad that were directed at a U.S. citizen believed to be an agent of Al Qaeda. *United States v. Bin Laden*,

126 F. Supp. 2d 264, 269-70 (S.D.N.Y. 2000). The court concluded that the exception did apply, noting that "the power of the Executive to conduct foreign intelligence collection would be significantly frustrated by the imposition of a warrant requirement in this context." *Id.* at 277. While the *Bin Laden* court noted in a footnote that the cases recognizing a foreign intelligence exception that it considered "arose before the enactment of FISA" and were "probably now governed by that legislation," *id.* at 272 n.8, it did not suggest that FISA demonstrated that the rationale of existing case law was invalid. To the contrary, the court extended that rationale to find that the exception applied to a search conducted abroad directed at a U.S. citizen under EO 12,333. *Id.* at 277-78, 289.

Moreover, while the Supreme Court, since alluding to the issue in *Keith*,[10] has not explicitly addressed the existence of a foreign intelligence exception to the warrant requirement, it has held that aliens outside the United States who lack a "substantial connection" to this country do not enjoy the protections of the Fourth Amendment. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). That holding is significant for Xi's claim because Section 702 surveillance does not involve targeting of U.S. persons. *See* 50 U.S.C. § 1881a(b). Given this limitation and Section 702's explicit foreign intelligence

---

[10] In *Keith*, the Supreme Court concluded that the Fourth Amendment's warrant requirement applied in the context of domestic security surveillance. *See United States v. U.S. District Court* (*Keith*), 407 U.S. 297, 316-17, 321 (1972). Plaintiffs' suggestion that the logic of *Keith* "applies with equal force to surveillance directed at targets with a foreign nexus," Pls. Opp. at 26, is incorrect, as recognized by the *Keith* Court itself, which emphasized "the limited nature of the question before the Court" and expressly noted that the case "require[d] no judgment on the scope of the President's surveillance power with respect to the activities of foreign powers," 407 U.S. at 308. Indeed, courts that have addressed the issue of whether foreign intelligence collection is subject to a warrant requirement have expressly distinguished *Keith* in holding that it is not. *See, e.g.*, *In re Directives Pursuant to Section 105 B of the Foreign Intelligence Surveillance Act*, 551 F.3d 1004, 1010 (FISA Ct. Rev. 2008); *Truong*, 629 F.2d at 913.

purpose, *see id.* § 1881a(a), (h)(2)(A)(v), it is unsurprising that every court to have reached

the question has found that Section 702 surveillance falls within an exception to the warrant

requirement. *See* Gov't Mem. at 30-31; *United States v. Mohamud* ("*Mohamud II*"), 843

F.3d 420, 439 (9th Cir. 2016), *cert. denied*, 138 S. Ct. 636 (2018); *United States v.

Hasbajrami*, No. 11-cr-623 (JG), 2016 WL 1029500, at *7 (E.D.N.Y. Mar. 8, 2016);

*United States v. Mohamud* ("*Mohamud I*"), No. 3:10-CR-00475-KI-1, 2014 WL 2866749,

at *18 (D. Or. June 24, 2014), *aff'd*, 843 F.3d 420 (9th Cir. 2016); *United States v.

Muhtorov*, 187 F. Supp. 3d 1240, 1254 (D. Colo. 2015); [Redacted Caption], 2011 WL

10945618, at *24 (FISA Ct. Oct. 3, 2011); *cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

421 (2013) (nothing that "Congress created a comprehensive scheme in which the Foreign

Intelligence Surveillance Court evaluates the Government's certifications, targeting

procedures, and minimization procedures, including whether the targeting and

minimization procedures comport with the Fourth Amendment" (citing 50 U.S.C.

§ 1881a(a), (c)(1), (i)(2), (i)(3))).

As the multiple decisions upholding the constitutionality of Section 702

surveillance indicate, Xi's contention that the logic of the pre-FISA foreign intelligence

exception cases may apply only if the Government surveillance program is explicitly

limited to foreign powers and agents of foreign powers, Pls. Opp. at 26, is incorrect. Indeed,

the core reasoning of the earlier precedents—the importance of the national interest in

intelligence gathering and the need for flexibility in the timely collection of intelligence,

*see, e.g*., *Butenko*, 494 F.2d at 605—applies with special force in the context of Section

702, which was enacted in part because the burdens imposed on the Government's limited

intelligence resources and the delays occasioned by the requirement under then-current law

to prepare individualized probable-cause FISA applications for foreign intelligence surveillance activities targeting non-United States persons located outside the United States were undermining the Government's ability to collect intelligence information. PCLOB Report at 18-20. Plaintiffs' suggestion that *In re Directives* supports their contention that the foreign intelligence exception applies only if the targets of a surveillance program are confined to "foreign powers or agents of foreign powers," Pls. Opp. at 28 (quoting *In re Directives*, 551 F.3d at 1012), overlooks crucial context: the Foreign Intelligence Surveillance Court of Review used that language in holding that the foreign intelligence exception applied to a program that "allowed the government to conduct warrantless foreign intelligence surveillance on targets (*including United States persons*) 'reasonably believed' to be located outside the United States.'" *In re Directives* 551 F.3d at 1006 (emphasis added). Here, Xi does not even purport to allege that his communications were acquired through warrantless surveillance that targeted United States persons.[11]

Second, Xi effectively concedes that, to the extent the foreign intelligence exception applies, he has not pleaded facts plausibly suggesting that any speculated warrantless surveillance was unreasonable.[12] Xi ultimately appears to acknowledge that surveillance conducted without a warrant under the authority of FISA Section 702 or EO

---

[11] Indeed, even if the foreign intelligence exception were limited in the manner suggested by Plaintiffs, that limitation would not affect the applicability of the exception here, as Xi's speculative theory appears to be that his communications were acquired when the Government was allegedly surveilling Chinese governmental actors. Second Am. Compl. ¶¶ 61-62.

[12] As explained in the Government's opening memorandum, courts assessing the merits of Fourth Amendment challenges to Section 702 surveillance have uniformly concluded that Section 702's safeguards and procedures sufficiently protect U.S. persons' privacy interests and satisfy the Fourth Amendment's reasonableness standard. *See* Gov't Mem. at 33; *Mohamud II*, 843 F.3d at 441-44; *Hasbajrami*, 2016 WL 1029500, at *10-13; *Muhtorov*, 187 F. Supp. 3d at 1254-58; *Mohamud I*, 2014 WL 2866749, at *19-27.

12,333 does not necessarily violate the Fourth Amendment. Pls. Opp. at 33-34. Xi thus pivots to a suggestion that, because surveillance under the cited authorities "is implemented in multiple ways," the Court "should . . . defer any reasonableness analysis" until Plaintiffs are permitted to conduct discovery. *Id.* at 33. But "[d]iscovery cannot serve as a fishing expedition through which plaintiffs search for evidence to support facts they have not yet pleaded." *Ogbin v. Citifinancial Mortg. Co., Inc.,* Civ. No. 09–0023NLH, 2009 WL 4250036 (D.N.J. Nov. 19, 2009) (citing *Twombly*, 550 U.S. at 563 & n.8); *see Twombly*, 550 U.S. at 563 n.8 ("[B]efore proceeding to discovery, a complaint must allege facts suggestive of illegal conduct")).[13] Accordingly, Xi's claim cannot survive a Rule 12(b)(6) motion.

   **C.  Xi Has Not Plausibly Alleged that the Government Violated His Fourth Amendment Rights By Using or "Querying" Information Collected Through Surveillance Conducted Pursuant to Section 702 or EO 12,333.**

   Xi also has not plausibly alleged that the Government violated his Fourth Amendment rights by using or "querying" information it obtained through surveillance conducted pursuant to Section 702 or EO 12,333. *See* Pls. Opp. at 29-31, 34, 37-41. Again, as an initial matter, Xi has not plausibly alleged that his communications were acquired through surveillance conducted pursuant to those authorities. *A fortiori*, he has not plausibly alleged that the Government used or queried communications between Xi and Chinese scientists that it acquired through such surveillance. *See* Gov't Mem. at 37. But even if Xi had plausibly alleged that his communications were acquired through such surveillance, and even if he further plausibly alleged that the Government somehow used

---

[13] The Government further notes that any such discovery would immediately intrude into classified information, to include whether or not the speculated surveillance occurred and whether or not any discoverable information even exists.

or queried that information, he has not demonstrated that such access or use would violate the Fourth Amendment. Xi's argument that purported querying of databases containing information acquired through lawful surveillance violated his Fourth Amendment rights asks the Court to ignore decades of Fourth Amendment precedent and to recognize a constitutional warrant requirement that has not been held to exist by any court.

Xi contends that the Government must at least obtain a warrant to use information regarding U.S. persons that it incidentally collects through lawful surveillance under Section 702 or EO 12,333. Pls. Opp. at 29-32. But it is well-established that "incidental interception of a person's conversations during an otherwise lawful surveillance is not violative of the Fourth Amendment." *Bin Laden*, 126 F. Supp. 2d at 280 (citing *United States v. Figueroa*, 757 F.2d 466 (2d. Cir.1985); *United States v. Tortorello*, 480 F.2d 764 (2d Cir.1973)). Indeed, although Xi labors to distinguish "incidental overhear" precedents involving Title III wiretapping, and asks the Court to disregard the holdings of the courts in *Mohamud* and *Hasbajrami*, Pls. Opp. at 29-30, he is unable to cite a single case finding that the Fourth Amendment bars the Government from using communications incidentally collected in the course of lawful surveillance of a non-U.S. person. As the Ninth Circuit explained in *Mohamud*, "when surveillance is lawful in the first place—whether it is the domestic surveillance of U.S. persons pursuant to a warrant, or the warrantless surveillance of non-U.S. persons who are abroad—the incidental interception of non-targeted U.S. persons' communications with the targeted persons is also lawful." *Mohamud II*, 843 F.3d at 440–41 (quoting *Hasbajrami*, 2016 WL 1029500, at *9). Accordingly, no separate warrant requirement attaches to the incidental collection, *see id.*, or to subsequent querying of that information, *see, e.g.*, *Mohamud I*, 2014 WL 2866749, at *26. While Congress is

19

free to impose additional requirements for use of information acquired through lawful surveillance, that possibility does not expand the constitutional requirements imposed by the Fourth Amendment.

## CONCLUSION

For the foregoing reasons the Court should dismiss Plaintiffs' claims against the Official Capacity Defendants pursuant to Rule 12(b)(1) and Rule 12(b)(6).


Dated: May 22, 2018                                Respectfully submitted,

                                                   CHAD A. READLER
                                                   Acting Assistant Attorney General
                                                   Civil Division

                                                   ANTHONY J. COPPOLINO
                                                   Deputy Director
                                                   Civil Division, Federal Programs Branch

                                                      /s/  *Elizabeth Tulis*
                                                   ELIZABETH TULIS
                                                   (NY Bar, under LCvR 83.5(e))
                                                   Trial Attorney
                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   P.O. Box 883
                                                   Washington, D.C.  20044
                                                   (202) 514-9237 (phone)
                                                   (202) 616-8470 (fax)
                                                   E-mail: elizabeth.tulis@usdoj.gov

                                                   *Attorneys for Defendants Christopher A.*
                                                   *Wray, Jefferson B. Sessions III, and Paul M.*
                                                   *Nakasone.*