**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2798
_____

XIAOXING XI;
JOYCE XI;
QI LI,
Appellants

v.

FBI SPECIAL AGENT ANDREW HAUGEN;
JOHN DOES; UNITED STATES OF AMERICA;
DIRECTOR OF FEDERAL BUREAU OF
INVESTIGATION;
ATTORNEY GENERAL UNITED STATES OF AMERICA;
DIRECTOR NATIONAL SECURITY AGENCY
AND CHIEF OF THE CENTRAL SECURITY SERVICE

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-17-cv-02132)
District Judge:  Hon. R. Barclay Surrick

_____

Argued September 14, 2022

Before:   KRAUSE, BIBAS, and RENDELL, *Circuit Judges*.

(Filed  May 24, 2023)

David Rudovsky [ARGUED]
Jonathan H. Feinberg
Susan M. Lin
Kairys, Rudovsky, Messing, Feinberg & Lin LLP
718 Arch Street
Suite 501 South
Philadelphia, PA 19106

Patrick Toomey
Ashley Gorski
Sarah Taitz
American Civil Liberties Union Foundation
125 Broad Street
18th Floor
New York, NY 10004

Jonathan Hafetz
Seton Hall Law School
One Newark Center
Newark, NJ 07102
          *Counsel for Appellants*

Beth S. Brinkmann
Covington & Burling
850 10th Street NW
One City Center
Washington, DC 20001

Lawrence S. Lustberg

Gibbons
One Gateway Center
Newark, NJ 07102

Robert McNamara
Institute for Justice
901 N Glebe Road
Suite 900
Arlington, VA 22203

Adam Shelton
Goldwater Institute
500 East Coronado Road
Phoenix, AZ 85004
    *Counsel for Amicus Appellants*

Leif Overvold [ARGUED]
Brian M. Boynton
H. Thomas Byron III
Sharon Swingle
Attorneys, Appellate Staff
Civil Division, Room 7226
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
    *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

KRAUSE, *Circuit Judge*.

Not all rights have remedies, even when they are enshrined in the U.S. Constitution. So where Congress has opted to remedy specific rights in specific circumstances, we hesitate to interfere with that judgment by implying our own remedies or restricting those provided by Congress in ways it never intended. Here, we consider whether Appellant Xiaoxing Xi has a remedy available for two types of claims, both of which arise from the government's investigation, arrest, and later-dismissed indictment alleging—mistakenly—that he was a "technological spy" for China. Xi, joined by his co-Appellants, his wife, Qi Li, and daughter, Joyce Xi, filed a complaint that raised two types of claims: (1) federal constitutional claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), directed at FBI Special Agent Andrew Haugen, the lead agent, and other unnamed officials involved in the investigation,[1] and (2) malicious prosecution and other torts under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671–2680, asserted against the United States. The District Court dismissed both categories of claims on the Government's motion, and we agree, but only in part.

In view of evolving Supreme Court precedent declining to extend *Bivens* into the national security realm and the limited circumstances in which Congress has opted to provide a remedy, we will affirm the District Court's dismissal of Xi's *Bivens* claims. But his FTCA claims are another matter. The District Court held the Government immune from those claims because it determined that Xi and his family had failed to allege

---

[1] For ease of reference, this opinion refers to the claims against Haugen and the unnamed officials, collectively, as claims against Haugen.

"clearly established" constitutional violations and assumed that this threshold for liability, applicable to qualified immunity analysis, also applied to the FTCA's "discretionary function exception." We clarify today, however, that the "clearly established" threshold is inapplicable to the discretionary function analysis, and because the Government has no discretion to violate the Constitution, FTCA claims premised on conduct that is plausibly alleged to violate the Constitution may not be dismissed on the basis of the discretionary function exception. We will therefore vacate the District Court's dismissal of Appellants' FTCA claims and remand for further proceedings.

## I.  **Factual and Procedural Background**[2]

Appellant Xiaoxing Xi and his wife, Qi Li, immigrated to the United States from China in 1989, and over the next twenty-five years, lived out the American Dream. Xi, who is an internationally acclaimed expert in the field of thin film superconducting technology, was eventually appointed Chair of the Physics Department at Temple University. Qi Li, also an accomplished physicist, became a professor at Pennsylvania State University. And together, they settled in Pennsylvania and began raising their two daughters.

According to the Complaint, however, life as the family knew it came to a crashing halt on May 21, 2015. In the early morning hours, they were awakened by loud knocks. Startled and partially undressed, Xi answered the door, where he was

---

[2] In reciting the facts, we accept the well-pleaded allegations in the operative Second Amended Complaint ("the Complaint") as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009).

confronted by armed FBI agents who were wielding a battering ram and who proceeded to handcuff him. Without an explanation, the agents entered the house, held Qi Li and the couple's young daughters—including Joyce Xi—at gunpoint, and conducted an extensive search, seizing computers, travel records, and financial records. At the conclusion of the search, the agents released Qi Li and the daughters, but took Xi to the FBI's Philadelphia field office. There, he was subjected to DNA sampling and fingerprinting, before being interrogated for approximately two hours. Only then did the agents reveal the catalyst for the morning's events.

As it turned out, Xi had been indicted on four counts of wire fraud for allegedly providing Chinese entities with sensitive information about a "revolution[ary]" superconductor technology, known as a "pocket heater",[3] that belonged to an American company. *See* Indictment at ¶ 5, *United States v. Xi*, No. 15-cr-204 (E.D. Pa. May 14, 2015), ECF No. 1. Xi had obtained an early version of the pocket heater from Shoreline Technologies, a company owned by one of its two inventors, in 2004, and then leased the device in 2006 from its then-owner, Superconductor Technologies, Inc ("STI"). As described in the Indictment, Xi purported to procure the pocket heater for university research and agreed, as a condition of the 2006 lease, that he would not "reproduce,

---

[3] A "pocket heater" is described in the Complaint as a device for depositing magnesium diboride thin films on flat surfaces. Though disputed by Xi, the Indictment charged that this device "revolutionized the field of superconducting magnesium diboride thin film growth." *See* Indictment at ¶ 5, *United States v. Xi*, No. 15-cr-204 (E.D. Pa. May 14, 2015), ECF No. 1.

sell, transfer, or otherwise distribute" the technology "to any third party." *Id.* at 3. But he then violated the agreement by sending four emails related to the device to colleagues in China. *Id.* at 2–4.

It also turned out that these charges were based on an investigation led by Defendant Andrew Haugen, an FBI special agent assigned to the agency's Chinese Counterintelligence Unit. In the course of that investigation, as set forth in the Complaint, Haugen had interviewed the inventor of the pocket heater and learned that Xi's emails were "not related" to the STI pocket heater, but rather to a different process that Xi himself had invented. Nevertheless, according to the Complaint, Haugen averred in his affidavits, reports, and other communications with prosecutors that those emails did concern the pocket heater.

Eventually, the Prosecutors realized that—just as the inventor allegedly told Haugen—Xi's emails had nothing to do with the pocket heater and concerned an "entirely different" technology based on Xi's own research and publications. They also learned that the pocket heater was not a "revolutionary" device as the Indictment alleged; instead, it was well known since 2003 when details of its design were presented at an international conference. So the Government moved to dismiss the Indictment, acknowledging that "additional information came to [its] attention" warranting dismissal. Motion to Dismiss Indictment Without Prejudice at ¶ 2, *Xi*, No. 15-cr-204 (E.D. Pa. Sept. 11, 2015), ECF No. 29.

By that time, however, significant damage was already done. The U.S. Attorney's Office had issued a press release regarding Xi's arrest and indictment, and the case had received widespread media attention. As a result, Temple suspended Xi

as Chair of the Physics Department and placed him on administrative leave; he was barred from participating in research or communicating with his graduate students; and he and his family suffered both emotionally and financially.

After conducting their own investigation into how all this transpired, Appellants filed suit in the Eastern District of Pennsylvania. *See* Complaint, *Xi v. Haugen*, No. 17-cv-2132 (E.D. Pa. May 10, 2017), ECF No. 1. According to the Complaint, the emails on their face revealed that Xi did not share any information about the pocket heater with China, and the pocket heater was never even referenced in the emails. They instead referred to a SINAP tubular heating device invented by Xi himself that differs from the pocket heater in virtually every respect. The emails were, in short, "normal, scientific interactions no different from thousands of similar international collaborations among scientists." App. 82. And to the extent any doubt remained as to their contents, the Complaint alleged the pocket heater inventor had confirmed for Haugen that they were wholly unrelated to that device.

Based on these allegations, the Complaint asserted two groups of claims: (1) *Bivens* claims, brought by Xi, alleging violations of the Fifth Amendment right to equal protection, as well as the Fourth Amendment rights to be free from unreasonable search and seizure, malicious prosecution, and fabrication of evidence, and (2) FTCA claims, brought by all Appellants, for Haugen's alleged torts.[4]

---

[4] Counts I–III of the Complaint are *Bivens* claims brought by Xi alone for malicious prosecution and fabrication of evidence (Count I); denial of equal protection (Count II); and unreasonable search and seizure (Count III). Counts IV

As for the first group of claims, the District Court concluded a *Bivens* remedy was not available, and even if it were, Haugen was entitled to qualified immunity because Xi failed to establish that his conduct violated any "clearly established" constitutional rights. Specifically, the Court held that Haugen was immune from Xi's Fourth Amendment claims because the Complaint did not contain sufficient facts to support a finding that the Government lacked probable cause and there was no "clearly established right to expert validation of the technical or scientific evidence that was the basis of a probable cause determination in an investigation or prosecution." App. 57. It found no clearly established Fifth Amendment violation because while Xi alleged that Haugen

---

and VI are FTCA claims brought by Xi alone for malicious prosecution (Count IV) and invasion of privacy—false light (Count VI). Counts V, VII, and IX are FTCA claims brought by Xi, Qi Li, and Joyce Xi for invasion of privacy—intrusion upon seclusion (Count V); intentional infliction of emotional distress (Count VII); and negligence (Count IX). Count VIII is an FTCA claim brought by Qi Li and Joyce Xi for negligent infliction of emotional distress.

After determining that there was no just reason for delay, the District Court entered an order certifying its judgments on these claims for appeal. *Cf. Graber v. Doe*, 59 F.4th 603, 605 (3d Cir. 2023) (recognizing, in the absence of a Rule 54(b) certification, that an order denying a motion to dismiss a *Bivens* claim was not a final decision and was not appealable under the collateral order doctrine). A tenth claim seeking the return and expungement of information and property allegedly seized in violation of the Fourth Amendment has not been ruled upon by the District Court and is therefore not before us.

predicated his investigation "at least in part on the fact that . . . Xi is racially and ethnically Chinese," he alleged that Haugen did so "[a]s a Special Agent employed by the FBI working on Chinese counterintelligence," not because Haugen himself had a discriminatory purpose. App. 90.

The District Court dismissed the second group of claims, the FTCA claims, because it concluded they "f[e]ll squarely within the [Act's] discretionary function exception." App. 61. While the Court acknowledged that government officials do not possess discretion to violate the Constitution, it took the position that the "discretionary function exception" precluded suit for all but "clearly established constitutional rights." *Id.* Its determination that Xi failed to establish a "clearly established" violation for purposes of its qualified immunity analysis was therefore dispositive. *Id.*

Xi now brings this timely appeal.

## II.     **Jurisdiction and Standard of Review**

The District Court had jurisdiction under 28 U.S.C. § 1346(b) and 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

We review a district court's ruling granting a motion to dismiss *de novo*. *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020). We accept as true all factual allegations in the Complaint and view those facts in the light most favorable to the plaintiff. *Id.*

## III.    **Discussion**

We will first address Xi's *Bivens* claims and then turn to Appellants' FTCA claims.

A.      Xi's *Bivens* Claims

To assess Xi's *Bivens* claims, we consider, first, the Supreme Court's requirements to pursue a *Bivens* remedy, and second, how those requirements apply to this case.[5]

1.   *Bivens* Framework

In *Bivens*, 403 U.S. at 388, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials whose conduct was not encompassed by the statutory remedy available against state officials under 42 U.S.C. § 1983. *Bivens* arose in the unreasonable "search and seizure" context: federal narcotics agents forcibly entered and searched Bivens' home without a warrant, then arrested him on federal drug charges without probable cause. *See* 403 U.S. at 389.

In the fifty-two years since *Bivens* was decided, however, the Supreme Court has pulled back the reins to what appears to be a full stop and no farther. Initially, the Court

---

[5] Xi originally asserted his malicious prosecution and fabrication of evidence claims under both the Fourth and Fifth Amendments, but they implicate only the Fourth Amendment because they are founded on allegations that Xi was deprived of pretrial liberty without probable cause. *See Manuel v. City of Joliet*, 580 U.S. 357, 367  (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."); *Geness v. Cox*, 902 F.3d 344, 354 n.5 (3d Cir. 2018) (observing that a claim for reckless investigation under the Due Process Clause "could only arise under the Fourth Amendment") (citing *Manuel*, 580 U.S. at 367).

11

extended *Bivens* to two other contexts: a Fifth Amendment sex-discrimination claim brought by a former congressional staffer whose Congressman terminated her explicitly because he felt it "essential" that her position be held by "a man," *Davis v. Passman*, 442 U.S. 228, 230 (1979), and a claim for inadequate prison medical care brought under the Eighth Amendment's Cruel and Unusual Punishment Clause, *Carlson v. Green*, 446 U.S. 14 (1980).

Since then, however, it has repeatedly refused to extend the *Bivens* remedy to any other amendment, context, or category of defendant. Instead, it has clearly communicated that *Bivens* is a "disfavored judicial activity," *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 675), impinging on "separation-of-powers principles," *id.* at 133. Indeed, on no fewer than twelve occasions since *Bivens*, the Court has expressly considered and declined to apply a *Bivens* remedy,[6] and we, too, have refused

---

[6] *See Egbert v. Boule*, 142 S. Ct. 1793 (2022) (First and Fourth Amendment suit against Border Patrol agent); *Hernandez v. Mesa*, 140 S. Ct. 735 (2020) (Fourth and Fifth Amendment suit against Border Patrol agent); *Minneci v. Pollard*, 565 U.S. 118 (2012) (Eighth Amendment suit against prison guards at a private prison); *Hui v. Castaneda*, 559 U.S. 799 (2010) (suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel); *Wilkie v. Robbins*, 551 U.S. 537 (2007) (claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) (Eighth Amendment suit against private halfway house operator under contract with the Bureau of Prisons); *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994) (procedural due process suit against federal

to extend *Bivens* except in one of these three established contexts.[7]

Most recently, in *Egbert v. Boule*, 142 S. Ct. 1793 (2022), the Court went so far as to suggest that any extension to a new context may be *ultra vires*. The plaintiff in *Egbert* was a bed-and-breakfast operator and Border Patrol confidential informant, who claimed that a Border Patrol agent violated his Fourth Amendment rights by using excessive force while conducting a search of his property. *Id.* at 1801–02. Because that plaintiff's claims, like Xi's, implicated national

---

agency for wrongful termination); *Schweiker v. Chilicky*, 487 U.S. 412 (1988) (procedural due process suit against Social Security officials); *United States v. Stanley*, 483 U.S. 669 (1987) (substantive due process suit against military officers); *Bush v. Lucas*, 462 U.S. 367 (1983) (First Amendment suit against federal employer); *Chappell v. Wallace*, 462 U.S. 296 (1983) (race discrimination suit against military officers).

[7] *See, e.g.*, *Dongarra v. Smith*, 27 F.4th 174 (3d Cir. 2022) (declining to extend *Bivens* to Eighth Amendment failure-to-protect claim arising in different context than *Carlson*); *Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) (applying a *Bivens* remedy to Fifth Amendment failure-to-protect claim, but not to Fifth Amendment punitive detention claim or First Amendment retaliation claim); *Davis v. Samuels*, 962 F.3d 105 (3d Cir. 2020) (declining to extend *Bivens* remedy to right-to-marry claim); *Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) (declining to extend *Bivens* remedy to First Amendment retaliation claim); *Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017) (same).

security interests, the Supreme Court's reasoning bears particular significance for this appeal, so we summarize it here.

At the start, the Court recited its well-established two-part test for implying a *Bivens* remedy: first, we must ask "whether the case presents 'a new [] context'—i.e., is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action," *id.* at 1803 (quoting *Abbasi*, 582 U.S. at 139), and if it is a new context, we ask, second, whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed,'" *id.* (quoting *Abbasi*, 582 U.S. at 136). But the Court observed that these steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy"; if so, it may not expand *Bivens* to cover the claim. *Id.*

As applied to the law enforcement officer in *Egbert*, an agent carrying out U.S. Customs and Border Protection's mandate to "interdic[t] persons attempting to illegally enter or exit the United States or goods being illegally imported into or exported from the United States" pursuant to 6 U.S.C. § 211(e)(3)(A), the Supreme Court framed its inquiry as "whether a court is competent to authorize a damages action not just against Agent Egbert but against Border Patrol agents generally." *Id.* at 1806. And because such an action would implicate sensitive matters of foreign policy and national security that are "rarely proper subjects for judicial intervention," the Court declined to extend *Bivens* to the plaintiff's claim, even though it "present[ed] almost parallel circumstances to *Bivens* itself." *Id.* at 1805 (citations omitted). Instead, it cautioned: "the Judiciary's authority" to imply

additional causes of action under the Constitution "is, at best, uncertain." *Id.* at 1803.

Guided by *Egbert*, we now consider whether Xi's claims present a "new context," and if so, whether special factors counsel against allowing a *Bivens* remedy.

## 2. Whether Xi's Claims Arise in a New Context

Even before *Egbert*, the Supreme Court had made clear that the category of "new contexts" is "broad," *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020), and this threshold test is "easily satisfied," *Abbasi*, 582 U.S. at 149. A context may be regarded as new if it is different in any "meaningful way" from the three contexts where the Court has recognized a *Bivens* remedy, *id.* at 139, and even "a modest extension is still an extension," *id.* at 147. Below, we apply this test to Xi's Fourth Amendment and Fifth Amendment claims.

### i. Fourth Amendment Claims

Xi points to factual parallels with *Bivens*, where federal narcotics agents forcibly entered and searched the plaintiff's home without a warrant, handcuffed and arrested him in front of his wife and children, and subjected him to a strip search. 403 U.S. at 389. But *Egbert* tells us that "almost parallel circumstances" are not enough, and here, distinctions abound. 142 S. Ct. at 1805.

For one, Xi's claims concern a different breed of law enforcement misconduct. While *Bivens* involved a claim against federal agents for an illegal arrest and warrantless search, *see* 403 U.S. at 389, Xi alleges that federal agents made

15

false statements and material omissions of exculpatory evidence that led the Government to investigate, arrest, and prosecute him. Such "case-building activities are a different part of police work than the apprehension, detention, and physical searches at issue in *Bivens*." *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019). And under *Egbert*, that difference is material because it provides a "potential" reason to think that judicial intrusion in this context would be harmful or inappropriate. 142 S. Ct. at 1805. Specifically, evaluating Xi's claims would "invite a wide-ranging inquiry" into the agent's state of mind and "the evidence available to investigators, prosecutors, and the grand jury." *Farah*, 926 F.3d at 500.

Another distinction is that Xi seeks to hold accountable a "new category of defendant[]": a federal counterintelligence agent. *Egbert*, 142 S. Ct. at 1803 (citations omitted). We have considered the significance of this distinction before in *Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017). There, we analyzed "whether a First Amendment claim against a TSA employee for retaliatory prosecution . . . exists in the context of airport security screenings." *Id.* at 194. In concluding it does not, we observed that "TSA employees . . . are tasked with assisting in a critical aspect of national security—securing our nation's airports and air traffic." *Id.* at 207. The same is true here because counterintelligence agents like Haugen protect the nation from threats of foreign espionage.

Nor does it matter that Haugen is a "line-level" agent, like the officers in *Bivens*, rather than a "high-ranking or supervisory official." Opening Br. 45. While the "rank of the officers involved" is one way in which a case "might" differ from *Bivens*, it is hardly dispositive. *Abbasi*, 582 U.S. at 139–

40.  Indeed, the claim in *Egbert* was likewise against a rank-and-file officer, yet the Court concluded that other factual distinctions—most notably, the national security interests—rendered the context "new."  142 S. Ct. at 1804–07; *see also Hernandez*, 140 S. Ct. at 743 (concluding that although the claim involved a rank-and-file border patrol agent, it was "glaringly obvious" that his use of force in a cross-border shooting presented a new context).

In short, the differences between *Bivens* and this case make clear that Xi's Fourth Amendment claims arise in a context the Supreme Court has not previously countenanced.

## ii.  Fifth Amendment Claim

The context of Xi's Fifth Amendment claim is even further afield.  Xi contends that he was denied Equal Protection because he was investigated by "a Special Agent employed by the FBI working on Chinese counterintelligence" based "on the fact that . . . Xi is racially and ethnically Chinese."  Thus, *Davis*, 442 U.S. 228, provides the closest analog, but even at a high level, the cases are materially different.

Whereas *Davis* involved a claim of federal workplace sex discrimination brought by a congressional staffer, *id.* at 230, here, the claim is racial discrimination brought by the target of a federal counterintelligence investigation.  These distinctions, on their own, establish "a[] new context [and] category of defendant[]."  *Abbasi*, 582 U.S. at 135 (quotation marks omitted); *see also Tun-Cos v. Perrotte*, 922 F.3d 514, 525 (4th Cir. 2019) (holding that Plaintiffs' claims that ICE agents discriminated against them on the basis of their Latino ethnicity while enforcing the INA had "no analogue" in the Supreme Court's prior *Bivens* cases).

In addition, the plaintiff's injury in *Davis* resulted directly from the individual discriminatory attitude and actions of her Congressman-employer.  Xi, on the other hand, does *not* allege that Haugen harbored personal animus against the Chinese.  Rather, to the extent Xi alleges that Haugen's investigation was "predicated at least in part on the fact that [he] is racially and ethnically Chinese," App. 90, he attributes it solely to the FBI's counterintelligence policy and the mission of its Chinese counterintelligence unit.

The conduct that Xi challenges is also of a far broader scope than the discrete action in *Davis*.  The plaintiff there challenged a specific employment decision: her termination based on the view it was "essential" for a man to be hired.  442 U.S. at 230.  *Cf. Strickland v. United States*, 32 F.4th 311, 372–74 (4th Cir. 2022) (concluding that Plaintiff's sex-discrimination claim, brought under a retaliation theory, arose in a new *Bivens* context for this reason).[8]  Xi, in contrast, contests "Haugen's investigation and initiation of prosecution . . . based on impermissible racial and ethnic factors" that Xi believes informed the FBI's investigative priorities and charging recommendation.  App. 98.

---

[8] Xi attempts to circumvent these distinctions by arguing that his claim shares *Davis*'s "central feature" of intentional discrimination based on membership in a protected class and *Bivens*'s setting of a search and seizure.  Reply Br. 21.  But neither the Supreme Court nor this Court has adopted this piecemeal approach, and we decline to do so now.  *Cf. Perrotte*, 922 F.3d at 525 (rejecting Plaintiffs' analogous efforts to "wed the Fifth Amendment equal protection claim of *Davis* . . . with the Fourth Amendment claim of *Bivens*").

In short, Xi's Fifth Amendment claim—like his Fourth Amendment claims—presents a new context that requires us to advance to the next step: whether special factors preclude a *Bivens* extension.

### 3. Special Factors Counseling Against Extending *Bivens*

Because we are confronting claims in new contexts, we proceed to consider at step two whether "special factors counsel[] hesitation" in extending a *Bivens* remedy. *Abbasi*, 582 U.S. at 136 (quotation marks omitted). At this step, the existence of "even a single reason to pause before applying *Bivens*" forecloses relief, *Egbert*, 142 S. Ct. at 1803 (quotation marks and citation omitted), because "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts," *id.* at 1800. Such is the case here, where one overriding special factor counsels against the creation of a judicially-implied *Bivens* remedy: the implication of national security interests.

In arguing that malicious prosecution and other law enforcement misconduct claims are "standard and well recognized," Xi's focus is misplaced. Opening Br. 50. Xi is seeking relief against a federal counterintelligence official for alleged misconduct during an investigation into potential espionage. While malicious prosecution and civil rights claims may commonly follow the dismissal of charges, *Egbert* instructs us to concentrate not on the substance of a particular claim, but on the context in which it is brought. Put differently, the question is not "whether *Bivens* relief is appropriate in light of the balance of circumstances in the particular case," but whether "[m]ore broadly . . . there is any reason to think that judicial intrusion into a given field might be harmful or

inappropriate." *Egbert*, 142 S. Ct. at 1805 (quotation marks and citation omitted). And we see three reasons to think that judicial intrusion would be both harmful and inappropriate in the context of a case like Xi's, with "unquestionabl[e] national security implications." *Id.* at 1804 (citation omitted).

First, as a practical matter, counterintelligence officials, like Border Patrol agents, are on the front lines of responding to national security threats where the prospect of damages liability could cause them to "second-guess difficult but necessary decisions" with significant consequences for public safety and foreign policy. *Abbasi*, 582 U.S. at 142; *see also Vanderklok*, 868 F.3d at 207 (concluding that "[t]he threat of damages liability could indeed increase the probability that a TSA agent would hesitate in making split-second decisions about suspicious passengers"). In addition, the resolution of such claims might well require judicial review of executive counterintelligence policies and priorities—even in cases, like Xi's, where the plaintiff sues not the agency's policy makers, but rather those "employed by the [agency]" to implement its directives. App. 90.

Second, implying a *Bivens* remedy is a "significant step under separation-of-powers principles," *Abbasi*, 582 U.S. at 133, and an overstep when it comes to "[m]atters intimately related to foreign policy and national security," *Egbert*, 142 S. Ct. at 1804–05 (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). Those matters are "committed to the other branches," and courts are comparatively ill-suited to weigh the consequences of personal damages liability on our national security apparatus. *Abbasi*, 582 U.S. at 142 (citation omitted).

Xi counters that this should not count as a special factor because he did not, in fact, pose a national security threat. But

as the Supreme Court explained in *Hernandez*, that argument "misses the point." 140 S. Ct. at 746. Whether Haugen had a *bona fide* national security justification for his investigation of Xi is no more relevant to this inquiry than whether the "federal agent supposedly did not act pursuant to his law-enforcement mission" in *Egbert*, 142 S. Ct. at 1808, or whether the cross-border shooting of the Mexican national was actually justified by national security in *Hernandez*, 140 S. Ct. at 746. As the Court has explained, the question in such cases "is not whether national security requires such conduct—of course, it does not," but rather, "whether the Judiciary should alter the framework established by the political branches for addressing" that conduct. *Id.*

The third counterweight to a *Bivens* action here is the availability of alternative remedies. An alternative remedy "is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Egbert*, 142 S. Ct. at 1804 (quotation marks and citation omitted). And Congress allowed two such remedies in this context: 28 U.S.C. § 1495 and the Hyde Amendment, 18 U.S.C. § 3006A. The former permits an award of damages to "any person unjustly convicted of an offense against the United States and imprisoned." 28 U.S.C. § 1495. The latter allows courts to award attorney's fees and litigation costs to a prevailing criminal defendant "when the court finds that the position of the United States was vexatious, frivolous, or in bad faith." Pub. L. No. 105-119, tit. VI, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A note).

Understandably, Xi is not satisfied with these alternatives—presumably because he was never convicted and can only be made whole by monetary damages. But *Egbert* instructs that an alternative remedy need not provide "complete

relief" or be as "effective as an individual damages remedy" to foreclose *Bivens* relief. 142 S. Ct. at 1804, 1807 (quotation marks and citations omitted). In fact, the focus is not on the individual's recovery at all. It is on deterrence, and we must respect its decision when "Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence." *Id.* at 1807. Congress created such a remedial process for the kinds of claims brought by Xi and found sufficient deterrence in providing a remedy to one class of plaintiff—i.e., convicted defendants—and not to another—i.e., those whose indictments were dismissed. As a result, we will not "second-guess that calibration by superimposing a *Bivens* remedy." *Id.*

\* \* \*

Having found that Xi's Fourth and Fifth Amendment claims arise in a new context and implicate special factors counseling against a *Bivens* remedy, we will affirm the District Court's dismissal of Xi's *Bivens* claims.[9]

### B.    Xi, Qi Li, and Joyce Xi's Claims Under the Federal Tort Claims Act

That leaves us with Xi and his family's FTCA claims. The FTCA waives the federal government's sovereign immunity for the negligent actions of its employees. *See Berkovitz v. United States*, 486 U.S. 531, 535 (1988); 28 U.S.C. §§ 2671–2680. That waiver, however, is subject to certain exceptions, including the discretionary function exception, at

---

[9] Having so concluded, we need not decide whether Xi's Fourth and Fifth Amendment claims are also barred by qualified immunity.

22

issue in this case. This exception effectively retains the Government's immunity for "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). As a result, a claim concerning conduct that falls within this exception must be dismissed for lack of subject matter jurisdiction. *Berkovitz*, 486 U.S. at 533.

The Supreme Court has enunciated a two-part test for determining if the discretionary function exception applies. First, we consider the nature of the conduct and decide whether it "involv[es] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (citation omitted). Where it does not involve judgment or choice—such as where "a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow'"—the inquiry is at an end and the exception is inapplicable because the conduct is not discretionary; "the employee has no rightful option but to adhere to the directive." *Id.* (citation omitted). But where the employee does have a choice, we consider, at step two "whether that judgment is of the kind that the . . . exception was designed to shield." *Id.* at 322–23 (quotation marks omitted).

Essential for today's purposes, we—and nearly every circuit to have considered the issue—have held that "conduct cannot be discretionary if it violates the Constitution" because "[f]ederal officials do not possess discretion to violate constitutional rights." *U.S. Fid. & Guar. Co. v. United States*,

837 F.2d 116, 120 (3d Cir. 1988) (citation omitted).[10] And that is where we take issue with the District Court's reasoning.

---

[10] *See Nieves Martinez v. United States*, 997 F.3d 867, 877 (9th Cir. 2021) ("Even if the agents' actions involved elements of discretion, agents do not have discretion to violate the Constitution."); *Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) ("[T]he FTCA's discretionary-function exception does not provide a blanket immunity against tortious conduct that a plaintiff plausibly alleges also flouts a constitutional prescription."); *Limone v. United States*, 579 F.3d 79, 101 (1st Cir. 2009) ("It is elementary that the discretionary function exception does not immunize the government from liability for actions proscribed by federal statute or regulation. . . . Nor does it shield conduct that transgresses the Constitution."); *Raz v. United States*, 343 F.3d 945, 948 (8th Cir. 2003) ("We must also conclude that the FBI's alleged surveillance activities fall outside the FTCA's discretionary-function exception because Raz alleged they were conducted in violation of his First and Fourth Amendment rights."); *Medina v. United States*, 259 F.3d 220, 225 (4th Cir. 2001) (quotation marks and citations omitted) ("[W]e begin with the principle that federal officials do not possess discretion to violate constitutional rights or federal statutes."); *Myers & Myers, Inc. v. USPS*, 527 F.2d 1252, 1261 (2d Cir. 1975) (citations omitted) ("It is, of course, a tautology that a federal official cannot have discretion to behave unconstitutionally or outside the scope of his delegated authority."); *but see Shivers v. United States*, 1 F.4th 924 (11th Cir. 2021); *Linder v. United States*, 937 F.3d 1087 (7th Cir. 2019).

The District Court acknowledged that officials lack discretion to violate the Constitution, but it seems to have assumed, nonetheless, that the discretionary function exception immunized all but "clearly established" constitutional violations. After observing that judgments about whether and how to investigate a suspect are generally discretionary, the District Court harkened back to its alternative ground for dismissing Xi's *Bivens* claims—that Haugen also would be entitled to qualified immunity because any constitutional rights he violated were not "clearly established." On that basis, and without further discussion, the District Court held Xi's FTCA claims "fall squarely within the discretionary function exception." App. 61.

Below we consider (1) whether the discretionary function exception excludes all constitutional violations or only violations that are "clearly established," and (2) whether the allegations in Xi's Complaint were sufficient to state a constitutional claim.

### 1. The District Court's "Clearly Established" Requirement

In finding dispositive that Haugen's conduct, even if unconstitutional, did not violate "clearly established" rights, the District Court imported a requirement for qualified immunity into the discretionary function analysis. *See* App. 49 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)) (other citations omitted). As we clarify today, however, that "clearly established" requirement has no place there, where it is unmoored from both precedent and purpose.

As for precedent, over thirty years of binding circuit precedent holds that the discretionary exception does not apply

to conduct that violates the Constitution regardless of whether the constitutional rights at issue were "clearly established." *See, e.g.*, *U.S. Fid. & Guar. Co.*, 837 F.2d at 120 ("[C]onduct cannot be discretionary if it violates the Constitution, a statute, or an applicable regulation. . . ."); *Pooler v. United States*, 787 F.2d 868, 871 (3d Cir. 1986), *abrogated on other grounds by Millbrook v. United States*, 569 U.S. 50, 57 (2013) ("[I]f the complaint were that agents of the government in the course of an investigation had violated constitutional rights or federal statutes, the outcome would be different since federal officials do not possess discretion to commit such violations.").[11] The reason is simple: because government officials never have discretion to violate the Constitution, unconstitutional

---

[11] Defendants' argument that our ruling in *Bryan v. United States*, 913 F.3d 356 (3d Cir. 2019), broke this line of precedent is unpersuasive. There, the plaintiffs argued that certain border searches were impermissible under *United States v. Whitted*, 541 F.3d 480 (3d Cir. 2008)—a decision issued *the day before* the searches occurred. We held that the officers were entitled to qualified immunity because they could not reasonably have been informed about *Whitted*, and resolved Plaintiffs' FTCA claims in a single sentence stating "the CBP officers did not violate clearly established constitutional rights, [so] the FTCA claims also fail." *Bryan*, 913 F.3d at 364. We did so without briefing, analysis, or discussion of the issue. We did not adopt a new test for the discretionary exception or qualify the reach of our prior precedent—which did not impose a clearly established requirement. *See Holland v. N.J. Dep't of Corr.*, 246 F.3d 267, 278 n.8 (3d Cir. 2001) ("[T]o the extent that [a case within the circuit] is read to be inconsistent with earlier case law, the earlier case law . . . controls.").

26

government conduct is per se outside the discretionary function exception.[12]

Nor, in the discretionary function context, would such a requirement serve a purpose. The Supreme Court excluded clearly established constitutional violations from the protections of qualified immunity because it would be unfair to hold individual officers liable for "conduct not previously identified as unlawful," *Harlow*, 457 U.S. at 818, and the Court was mindful of the chilling effect and "social costs" of that liability. *Id.* at 813–15. But these concerns are absent in the FTCA context, where only the federal government—not individual officers—can be liable. *See* 28 U.S.C. § 2674; *see also Owen v. City of Independence*, 445 U.S. 622, 655–56 (1980) (holding that government entities are not entitled to qualified immunity and justifying qualified immunity for individual officers based on "the concern that the threat of *personal* monetary liability will introduce an unwarranted . . . consideration into the decisionmaking process . . . .").

Thus, the District Court erred in dismissing Xi's FTCA claims on the ground that Xi failed to demonstrate a violation of "clearly established" constitutional rights. At the motion-to-dismiss stage, all a plaintiff must do to negate the discretionary function exception is plausibly allege a

---

[12] While every action that violates a clearly established constitutional right violates the Constitution, the converse is not true. *See, e.g.*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (acknowledging it is "often beneficial" to break up these inquiries).

constitutional violation.  We consider, then, whether Xi has done so here.

### 2. Whether Xi Has Plausibly Alleged a Constitutional Violation

To determine whether Xi has plausibly alleged a constitutional violation, we accept the facts alleged in the Complaint as true and draw all inferences in Xi's favor. *Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022).  For the reasons set forth below, we conclude that the District Court correctly dismissed Xi's Fifth Amendment claim but erred in holding he failed to state a Fourth Amendment claim.

#### i.  Xi's Fifth Amendment Claim

To state a Fifth Amendment claim for selective enforcement, a plaintiff must demonstrate that the defendant targeted him "not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin." *Iqbal*, 556 U.S. at 677.  "[B]are assertions" that the defendant acted with discriminatory purpose will not suffice. *Id.* at 681.  The plaintiff must set forth "sufficient factual matter" to show that the defendant acted "'because of,' not merely 'in spite of'" a protected characteristic. *Id.* at 677, 681 (citation omitted); *see also Jewish Home of E. Pa. v. Ctrs. for Medicare and Medicaid Servs.*, 693 F.3d 359, 363 (3d Cir. 2012) (citation omitted) (to maintain selective enforcement claim, plaintiff must provide "evidence of discriminatory purpose, not mere unequal treatment or adverse effect"); *PG Publ'g Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013) (concluding plaintiffs failed to allege equal protection claim where allegations showed "no sign of 'clear and intentional

discrimination'" (quoting *Snowden v. Hughes*, 321 U.S. 1, 8 (1944))).

Here, the Complaint's allegations of discriminatory purpose are wholly conclusory and the circumstantial evidence to which Xi points does not support an inference of discrimination. The only direct allegations of discriminatory intent are that Haugen's "investigation . . . was predicated at least in part on the fact that Professor Xi is racially and ethnically Chinese," App. 90, and that Haugen "considered Professor Xi's race and ethnicity in providing false information" with the "intent to secure false charges," App. 91. But such "conclusory . . . allegations" are "not entitled to be assumed true." *Iqbal*, 556 U.S. at 681 (citations omitted). Xi also posits that the government had dismissed the indictments of three other Chinese-American scientists prior to trial, but the Complaint does not allege that Haugen had any involvement in those indictments, let alone explain the basis for their dismissal, so it sheds no light on the intent of the particular agent in this particular case.

We may not fill this gap in Xi's pleading with speculation. Xi posits that because "there was no factual basis" to indict him, "what motivated Haugen to ignore the lack of probable cause and falsify information" must have been racial or ethnic bias. Reply Br. 8. But there also may be non-discriminatory explanations for Haugen's investigation, and the *possibility* of a discriminatory motive is insufficient. Where, as here, the allegations are merely consistent with liability, the claim "stops short of the line between possibility and plausibility of entitlement to relief," *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted), so Xi's Fifth Amendment claim was properly dismissed.

ii.  Xi's Fourth Amendment Claims

Xi fares better with his Fourth Amendment claims, however.  Those claims—brought under the rubrics of malicious prosecution, fabrication of evidence, and unreasonable search and seizure—all turn on whether the Government investigated, searched, and prosecuted him without probable cause.  Because a grand jury indictment "constitutes prima facie evidence of probable cause to prosecute," *Rose v. Bartle*, 871 F.2d 331, 353 (3d Cir. 1989), and the search and seizure here were conducted pursuant to duly authorized warrants, we begin with the presumption that Haugen acted with probable cause, *see United States v. Yusuf*, 461 F.3d 374, 383 (3d Cir. 2006).  But that presumption may be rebutted by a plausible allegation that the indictment was "procured by fraud, perjury or other corrupt means," *Rose*, 871 F.2d at 353 (citations omitted), or that Haugen "knowingly and deliberately, or with a reckless disregard for the truth, made [materially] false statements or omissions" in the warrant application, *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

Xi has met that pleading standard here because the Complaint alleged at least seven discrete instances of Haugen intentionally, knowingly, and/or recklessly providing false information that led to Xi's prosecution.  It alleged, for example, that before charges were filed, the inventor of the pocket heater informed Haugen that the emails in question described an "entirely different" device from the pocket heater—one that Xi himself had invented, App. 83; and that the pocket heater technology was not "revolutionary," but "widely known," App. 84.  It also alleged that Haugen accused Xi of "a scheme to obtain the pocket heater technology" at a point in time when, as Haugen knew or recklessly disregarded, that

30

technology did not yet exist, *id.*, and that Haugen knew or recklessly disregarded that Xi never sent samples or test results from the pocket heater to colleagues in China, but only engaged with them in normal academic collaboration. Such detailed allegations are hardly the "naked assertion[s] devoid of further factual enhancement" that would justify dismissal. *George v. Rehiel*, 738 F.3d 562, 581 (3d Cir. 2013) (quotation marks and citation omitted).

In concluding otherwise, the District Court reasoned that the allegations were inadequate because Haugen may not have become aware of these falsehoods until *after* he conveyed them to prosecutors, and *after* the indictment was returned. But at this stage, we are required to accept plaintiff's allegations as true and draw all inferences in his favor, *see Univ. of the Scis.*, 961 F.3d at 208; and here, Xi has explicitly alleged that Haugen knew or recklessly disregarded evidence of Xi's innocence even "[b]efore the Indictment was sought and returned." App. 73. In other words, Xi has rebutted the presumption of probable cause and plausibly alleged a Fourth Amendment violation. So the discretionary function exception provides no bar to the pursuit of his FTCA claims premised on the same conduct.

## IV.   Conclusion

For the foregoing reasons, we will affirm the District Court's dismissal of Xi's *Bivens* claims, reverse its dismissal of Appellants' FTCA claims, and remand for further proceedings in accordance with this opinion.[13]

---

[13] Given the narrow issues before us, we have no occasion to reach other questions that may be raised before the

District Court, and that may provide alternative bases for dismissal.

BIBAS, *Circuit Judge*, concurring.

I join the Court's opinion in full. I write separately only to flag that it might be time for the Supreme Court to revisit the test for when the FTCA's discretionary-function exception applies. The Court last addressed this test more than thirty years ago. *See United States v. Gaubert*, 499 U.S. 315 (1991). Before that, courts were having "difficulty in applying [it]." *Id.* at 335 (Scalia, J., concurring). So *Gaubert* sought to clarify things. *See id.* at 322–25 (majority opinion).

But courts are still struggling. *See, e.g.*, 14 Charles Alan Wright, Arthur R. Miller & Helen Hershkoff, *Federal Practice & Procedure* §3658.1 (4th ed. 2023) (noting that the "exact boundaries of the exception remain unclear, despite an immense amount of precedent"). Similar facts have led to opposite conclusions. To give just a few examples, courts have disagreed about whether the discretionary-function exception covers the following conduct:

- The government's failure to maintain a road. *Compare Walters v. United States*, 474 F.3d 1137, 1140 (8th Cir. 2007) (exception applies), *Mitchell v. United States*, 225 F.3d 361, 366 (3d Cir. 2000) (same), *and Baum v. United States*, 986 F.2d 716, 722, 724 (4th Cir. 1993) (same), *with Bolt v. United States*, 509 F.3d 1028, 1033–35 (9th Cir. 2007) (exception does not apply), *Williams v. United States*, 2018 WL 3655901, at *6 (D. Md. Aug. 2, 2018) (same), *and Quigley v. United States*, 927 F. Supp. 2d 213, 224 (D. Md. 2012) (same).

- The government's failure to post warning signs on federal property. *Compare Rosebush v. United States*, 119

F.3d 438, 444 (6th Cir. 1997) (exception applies), *and Valdez v. United States*, 56 F.3d 1177, 1180 (9th Cir. 1995) (same), *with Duke v. Dep't of Agric.*, 131 F.3d 1407, 1412 (10th Cir. 1997) (exception does not apply), *and Parrish v. United States*, 157 F. Supp. 3d 434, 447 (E.D.N.C. 2016) (same).

- The government's management of tree hazards. *Compare Merando v. United States*, 517 F.3d 160, 174 (3d Cir. 2008) (exception applies), *and Autery v. United States*, 992 F.2d 1523, 1531 (11th Cir. 1993) (same), *with Walen v. United States*, 246 F. Supp. 3d 449, 466 (D.D.C. 2017) (exception does not apply).

- The government's failure to provide clean water at Camp Lejeune. *Compare In re Camp Lejeune N.C. Water Contamination Litig.*, 263 F. Supp. 3d 1318, 1356–57 (N.D. Ga. 2016) (exception applies), *aff'd*, 774 F. App'x 564 (11th Cir. 2019), *Snyder v. United States*, 504 F. Supp. 2d 136, 141 (S.D. Miss. 2007) (same), *aff'd*, 296 F. App'x 399 (5th Cir. 2008), *and Tate v. Camp Lejeune*, 2019 WL 7373699, at *2 (E.D.N.C. Dec. 30, 2019) (same), *with Pride v. Murray*, 595 F. Supp. 3d 453, 463 (W.D.N.C. 2022) (exception does not apply), *and Washington v. Dep't of the Navy*, 446 F. Supp. 3d 20, 29 (E.D.N.C. 2020) (same).

Though case-specific differences may partly explain these disagreements, there is also significant confusion about how to apply the test. *Compare, e.g.*, *Merando*, 517 F.3d at 172–75 (finding that tree management involves policy judgment), *with*

*Walen*, 246 F. Supp. 3d at 465–66 (finding that tree management involves professional rather than policy judgment).

And there are at least three longstanding, recurring circuit splits involving the discretionary-function exception:

- First, there is the split we weigh in on today: whether unconstitutional conduct necessarily falls outside the exception. *See* Maj. Op. 24 n.10.

- Second, there is a split over whether the exception applies when the challenged act was careless rather than a considered exercise of discretion. *Compare Willis v. Boyd*, 993 F.3d 545, 549 (8th Cir. 2021) (carelessness covered by exception), *Lam v. United States*, 979 F.3d 665, 682 (9th Cir. 2020) (same), *and Ball v. United States*, 967 F.3d 1072, 1077 (10th Cir. 2020) (same), *with Coulthurst v. United States*, 214 F.3d 106, 111 (2d Cir. 2000) (carelessness outside exception), *Rich v. United States*, 811 F.3d 140, 147 (4th Cir. 2015) (same), *and Palay v. United States*, 349 F.3d 418, 432 (7th Cir. 2003) (same).

- Finally, there is a split over whether claims that fall within the FTCA's law-enforcement proviso must also fall outside the discretionary-function exception. *Compare Nguyen v. United States*, 556 F.3d 1244, 1260 (11th Cir. 2009) (proviso trumps exception), *with Joiner v. United States*, 955 F.3d 399, 406 (5th Cir. 2020) (proviso "does not automatically trump" exception), *Linder v. United States*, 937 F.3d 1087, 1089 (7th Cir. 2019) (same), *Medina v. United States*, 259 F.3d 220, 224–26 (4th Cir. 2001) (same), *Gasho v. United States*, 39 F.3d

> 1420, 1433 (9th Cir. 1994), *and Gray v. Bell*, 712 F.2d
> 490, 507–08 (D.C. Cir. 1983) (same).

This longstanding confusion shows the need for more guidance on how to apply the exception.

The current test also seems divorced from the exception's text. The test asks whether the challenged "action" involved the "permissible exercise of policy judgment." *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988). But the text speaks of a discretionary "function or duty." 28 U.S.C. §2680(a). *Compare id.*, *with id.* §2680(e) (referencing an "act or omission"). These words suggest that courts should look at the *kind* of activity the officer was performing when the challenged action occurred, not the action itself.

This higher-level approach is confirmed by the ordinary legal meaning of the phrase "discretionary function" when the FTCA was enacted. The phrase was used to describe a public officer's immunity when sued for torts in his personal capacity. *See* William L. Prosser, *Handbook of the Law of Torts* §108, at 1075–79 (1941 ed.). Courts categorized certain kinds of government activities as either "ministerial" or "discretionary." *Id.* For example, the "care of prisoners" and "driving of vehicles" were ministerial. *Id.* at 1077. So a public officer could be held liable for any negligence or wrongdoing in their performance. *Id.* Other activities, like the "routing of a highway" or "assessment of property for taxation," were discretionary. *Id.* at 1076. So an officer was immune from suit even if he did those activities negligently. *Id.*

This approach is not only more consistent with the text, but can be applied earlier in a suit. The current test is fact- and

time-intensive. Courts must comb through and interpret federal regulations and policies, looking for anything that forbids the challenged conduct. *See, e.g.*, *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 334–36 (3d Cir. 2012) (reviewing various National Park Service policies). Sometimes, plaintiffs need discovery. *See Berkovitz*, 486 U.S. at 547–48. These burdens are particularly concerning because the application of the exception goes to whether the United States has waived its sovereign immunity; thus, the government must go through a mini-trial just to figure out whether it is in fact immune from suit. By contrast, the relevant category of officer activity should be apparent from the face of the complaint. And for guidance on how to categorize an activity, courts can look to how that activity (or an analogous one) was categorized in suits against public officials when the FTCA was enacted.

\* \* \* \* \*

With *Bivens* sharply limited, the stakes of clarifying the scope of the discretionary-function exception grow ever greater. Plaintiffs like Xi must increasingly rely on the FTCA to vindicate their constitutional rights. They, the government, and the courts would all benefit from clearer guidance.